IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0550-WJM-NRN

RACHEL BRAYMAN, on behalf of herself and all similarly situated persons,

    Plaintiff,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC., a Delaware corporation,

    Defendant.

---

## ORDER GRANTING IN PART PLAINTIFF'S
## MOTION FOR CONDITIONAL CERTIFICATION

---

Plaintiff Rachel Brayman ("Plaintiff") brings this action against Defendant KeyPoint Government Solutions, Inc., ("Defendant") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"). (ECF No. 1.) Plaintiff's FLSA claim concerns Defendant's alleged failure to properly compensate employees for overtime hours worked and an alleged policy of only permitting overtime in certain circumstances. (*Id.* ¶¶ 20–25.)

Currently before the Court is Plaintiff's "Motion for Conditional Certification and Court-Authorized Notice" (the "Motion"). (ECF No. 22.) Plaintiff seeks to have this matter conditionally certified as a collective action under the FLSA for "all persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties for Defendant" from March 8, 2015 to present.[1] (ECF No. 1 ¶12; ECF

---

[1] Plaintiff notes that the proposed collective action definition does not include investigators who worked for Defendant as independent contractors. (ECF No. 22 at 3.)

No. 22 at 2.)  Plaintiff also seeks to have her proposed notice approved by the Court.  Also before the Court is Defendant's Motion to Strike Portions of Plaintiff's Declaration ("Motion to Strike").  (ECF No. 64.)  For the reasons explained below, Defendant's Motion to Strike is denied and Plaintiff's Motion is granted as to conditional certification and denied as to the proposed notice.  The parties are instructed to meet and confer regarding the proposed notice, taking into account the Court's below instructions, and submit a revised proposed notice by November 16, 2018.

## I. BACKGROUND

Defendant provides investigative services and background screenings for the federal government and private sector.  (ECF No. 1 ¶¶ 4–5.)  Defendant is headquartered in Loveland, Colorado, and has employees throughout the United States, Puerto Rico, and Guam.  (*Id.* ¶¶ 3, 7.)  Background investigation services are performed by Defendant's Field Investigators, Background Investigators, or other similar positions (collectively, "Investigators").  (*Id.* ¶ 6; ECF No. 22 at 2.)  Investigators' job duties include "performing background investigations on individuals seeking to obtain [a] security clearance" and require Investigators to conduct interviews, collect documents and records, catalogue records obtained from law enforcement agencies, and compile reports.  (ECF No. 22-4 at 2; *see also* ECF No. 22-5 (job descriptions).)

Defendant explains that Field Investigators are divided among geographic regions, each of which has a Field Manager and a Logistics Analyst.  (ECF No. 29 at 2; ECF No. 29-1 at 2.)  Field Managers supervise the Field Investigators in the region and Logistics Analysts are responsible for assigning work to Field Investigators (though

Field Managers may occasionally assign work as well). (ECF No. 29 at 2; ECF No. 29-7 at 2.) Work is assigned to Field Investigators on a "source unit" basis; the number of source units depends on the task performed and the weekly source unit expectations for a Field Investigator depend on the individual's experience. (ECF No. 29-1 at 2.)

Plaintiff worked as a Field Investigator for Defendant from approximately September 2014 to June 2017. (ECF No. 1 ¶ 9; ECF No. 22-4 at 2.) Plaintiff worked remotely from her residence in New Jersey and covered a geographic territory in New Jersey. (ECF No. 1 ¶ 10; ECF No. 22-4 at 2.)

Plaintiff alleges that Defendant had a "common policy and/or practice" of encouraging or requiring Plaintiff and others to work unpaid overtime hours. (ECF No. 1 ¶ 16.) Specifically, Plaintiff contends that she regularly had to work unpaid overtime hours to meet Defendant's production requirements, but was not paid for those overtime hours. (*Id.* ¶¶ 17–18.) Plaintiff estimates for the week of November 13–19, 2016, she worked between 55 and 60 hours, but was not paid for her overtime hours. (*Id.* ¶ 19.) Although Plaintiff and others were required to record hours worked in an electronic timekeeping system, Plaintiff contends that the hours recorded do not reflect all the hours Plaintiff or other worked in part because Defendant instructed Plaintiff and other to underreport actual hours worked. (*Id.* ¶¶ 20, 22.) Plaintiff also claims that Defendant modified the time records of Plaintiff and others to reflect fewer overtime hours worked. (*Id.* ¶ 23.) Plaintiff states that her supervisor acknowledged "in emails and on teleconference calls that Plaintiff and other Investigators worked overtime hours, but refused to approve all the overtime hours that they worked." (*Id.* ¶ 24.) Plaintiff claims that Defendant's unlawful conduct is "widespread, repetitious,

3

and consistent" as well as "willful and in bad faith." (*Id.* ¶¶ 25–26.)

In support of the Motion, Plaintiff submits her own declaration as well as declarations from six other former Investigators, namely Desiree Gaudet, Tasha George, Ebony Holmes, Catiana Munoz, DeAijha Perry, and Paul Tschiffely. (ECF No. 22-4.) These individuals have all opted to join the case. (ECF Nos. 1-2; 8-1; 17-1; 18-1.) These declarations demonstrate that Investigators covered specific geographic territories in various parts of the United States (District of Columbia, Louisiana, Maryland, New Jersey, and Virginia) in substantially similar positions. (ECF No. 22-4.) The declarations each state that the individual was not paid for all of the overtime hours worked, could only record overtime if the production quota was met, and was discouraged from reporting all overtime hours worked. (*Id.*)

In response, Defendant submits a declaration from Marci Haabestad, Defendant's Chief People Officer, stating that Defendant's official policy is that all hours worked, regular or overtime, must be recorded. (ECF No. 29-1 at 2–3; *see* ECF No. 29-2.) Defendant also submits the declaration of Ryan Haunfelder, Defendant's Head of Data Science, which states that 66% of the time when an Investigator recorded overtime, the same Investigator was, on average, 2.76 source units behind their production quota. (ECF No. 29-17 at 2.) Of the 19 individuals who filed consents to join, 12 had not met his or her production quota when he or she recorded overtime. (*Id.* at 3–7; ECF No. 29 at 5.) By implication, the other seven individuals always met their production quota when they asked for overtime.

Defendant also notes that a number of Field Investigators signed dispute resolution agreements in October 2015, and estimates that approximately 2,596

4

individuals of the 4,231 in the putative collective action are bound to litigate any claim for unpaid wages under the FLSA in individual, binding arbitration.  (ECF No. 29 at 5–6; ECF No. 29-1 at 4.)

Defendant also notes that approximately 54% of the individuals employed as Field Managers and Logistics Analysts since March 2015 also served as Field Investigators on or after March 2015 and are thus potential members of the putative collective action.  (ECF No. 29 at 5; 29-1 at 4.)  Defendant does not state the total number of persons who have served in both capacities since March 2015.

## II. LEGAL STANDARD

The FLSA permits collective actions when allegedly aggrieved employees are "similarly situated."  29 U.S.C. § 216(b).  Whether employees are similarly situated is judged in two stages: a preliminary or "notice stage" (at issue here) and then a more searching, substantive stage, usually after the close of discovery.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001).  At the notice stage, a plaintiff requires "nothing more than substantial allegations that the putative [collective action] members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (internal quotation marks omitted); *see also Boldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005) (applying *Thiessen* standard).

If the plaintiff meets this standard, the Court may order the defendant to provide contact information for all employees and former employees that may be eligible to participate in the collective action, and the Court may approve a form of notice to be

5

sent to all of those individuals. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–74 (1989). Such notice is often necessary because, unlike class actions under Federal Rule of Civil Procedure 23, collective actions under the FLSA require a party to opt in rather than opt out. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Obviously current or former employees cannot opt in if they do not know about the pending action.

## III. ANALYSIS

Defendant claims that, for various reasons, the collective action should not be conditionally certified. The Court will address these arguments in turn.

### A.     Plaintiff's Declaration

Defendant moves to exclude certain statements from Plaintiff's March 30, 2018 declaration submitted in support of conditional certification as conflicting with her August 21, 2018 deposition testimony. (ECF No. 64.) Specifically, Defendant contends that Plaintiff's deposition testimony contradicted three material statements in her declaration regarding Plaintiff's personal knowledge of whether other Investigators worked unpaid overtime hours, whether Plaintiff could only record overtime hours if she met her production quota, and whether Defendant paid Plaintiff for all overtime hours worked.[2]

---

[2] Defendant also contends that Plaintiff misstated the number of hours she worked per week in her declaration and subsequently lowered her estimate in her deposition. (ECF No. 64 at 6.) Defendant tacitly acknowledges that this issue is not material to Plaintiff's request for certification and goes solely to damages and Plaintiff's credibility. In any event, the Court does

Plaintiff's deposition statements do not contradict or undermine her affidavit in the manner suggested by Defendant, and the Court finds no reason to strike or disregard the statements. First, Plaintiff's affidavit states "[b]ased on my personal knowledge, observations, and experiences, I believe that other Investigators . . . worked unpaid overtime hours because of KeyPoint's policy. . . ." (ECF No. 22-4 at 3, ¶ 17.) Defendant seeks to strike Plaintiff's declaration statement based on her statement at her deposition that she had no knowledge of any other field investigator working unpaid overtime hours. (ECF No. 64 at 3, 9.) However, Plaintiff did not retract or contradict her statements regarding her *belief* that others were subject to the same policy. And pleading on belief does not undermine Plaintiff's allegation that others were subject to the same policy. Defendant has failed to establish lack of an actual dispute, that is, whether others were in fact subject to the same alleged policy as Plaintiff. Therefore, the Court will not strike this statement.

In addition, Defendant argues that Plaintiff was unable to confirm whether the statement "I could only record overtime hours if I had already met my production quota" as accurate. However, the deposition transcript shows that she stated that the statement was accurate "[t]o the best of my knowledge at the time when this was generated." (ECF No. 65-1 at 16.) She later stated that she did not know whether the sentence was accurate when asked about instances when she recorded overtime and had not met her production quota. (*Id.*) However, Plaintiff also pleads that she was

---

not make merits or credibility determinations at the conditional certification stage. *Bryant v. Act Fast Delivery of Colo., Inc.*, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015). Therefore, the Court will not consider Plaintiff's revised statement of hours worked, strike the statement from the declaration, nor strike the declaration as a whole on this basis.

discouraged from recording such time by her managers, and that there was a policy against recording certain types of overtime hours. (*Id.*) Thus, Plaintiff's statement does not materially contradict her general premise, such that it would be appropriate to strike or disregard Plaintiff's statement.

Finally, Plaintiff testified that she would not have necessarily used the word "all" in her statement that she "was not paid for all of the overtime hours I worked." (ECF No. 64-3 at 4; *see* ECF No. 22-4 at 2, ¶ 12.) Plaintiff's statement could reasonably be read to mean that she was paid for some overtime that she work. For instance, under Plaintiff's theory of the case, she may have been paid overtime when she met her production quota and recorded her overtime hours. Here, Plaintiff's deposition statement does not contradict or undermine the affidavit in such a way that the Court should refuse to consider it in support of conditional certification.

Accordingly, the Court denies Defendant's Motion to Strike.

**B.    Existence of a Decision, Policy or Plan**

Defendant argues that Plaintiff is not "similarly situated" to the putative collective action members within the meaning of 29 U.S.C. § 216(b) because the Field Investigators did not suffer the same harm as the result of the same decision, policy, or plan. (ECF No. 29 at 6–7.) At the notice stage, a plaintiff is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.3d at 1102. The standard is lenient and typically results in conditional certification. *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011). A plaintiff

must establish a reasonable basis for the claim that other employees are similarly situated. *Id.* At this stage, the court may "rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff." *Stallings v. Antero Res. Corp.*, 2018 WL 1250610, at *3 (D. Colo. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 2561046 (D. Colo. Apr. 16, 2018); *see Daugherty*, 838 F. Supp. 2d at 1132 (granting conditional certification where the allegations in the amended complaint were supported by two affidavits). Again, however, at this stage of the litigation, the Court does not resolve factual disputes, decide substantive issues, or make credibility determinations. *Stallings*, 2018 WL 1250610, at *3.

The parties do not dispute that the Investigators share similar job duties. However, they do disagree as to whether the Investigators were victims of a single decision, policy, or plan. *See Peterson v. Nelnet Diversified Solutions, LLC*, 2018 WL 3470604, at *6 (D. Colo. Apr. 25, 2018). Plaintiff contends that Defendant has a common policy of not paying Investigators for certain overtime hours worked by instructing Plaintiff and others to underreport actual hours worked, modifying Investigators time records, and refusing to approve all overtime hours. (ECF No. 36 at 2–3.) She asserts that "reliance on production quotas was a method Defendant used to discourage Investigators from getting paid for all overtime hours." (*Id.* at 3.) In response, Defendant claims that Plaintiff has failed to provide substantial allegations of any widespread policy or plan, much less one that applies nationwide, and cites its express policy that all hours be recorded. (ECF No. 29 at 6–11.)

While Defendant points to its policy that all hours be recorded, a written policy

9

"does not negate the possibility of an unwritten policy or general practice to the contrary." *Peterson*, 2018 WL 3470604, at *7 n.7 (quoting *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1304 (D. Kan. 2010)). Here, Plaintiff has provided several declarations that support her claim that Defendant has an unwritten practice of not paying certain overtime hours. Given the role of the Court at the conditional certification stage, the Court will not make factual determinations based on testimony submitted by Defendant. While Plaintiff certainly could have provided more detail in her complaint and statistics and declarations submitted in support of the Motion regarding the details of Defendant's alleged practice, the allegations in the complaint are sufficiently substantial to allow conditional certification and notice to potential collective action members. *See Daugherty*, 838 F. Supp. 2d at 1133 ("The Court makes this finding without expressing any opinion as to whether discovery will identify any others who are similarly situated, whether plaintiff would be able to make a sufficient showing to avoid decertification of the conditional class, or whether plaintiff's claims in this case have merit.").

## C. Potential Conflict Among Conditional Action Members

Defendant relies on *Ellerd v. County of Los Angeles* to argue that collective treatment is not warranted because the managers who are putative conditional action members have allegedly implemented the *ad hoc* policy being challenged, and thus there is a conflict with other putative members of the collective action. 2009 WL 98077, at *5 (C.D. Cal. Apr. 9, 2009). (ECF No. 29 at 11–12.) Plaintiff argues that courts do not inquire into potential conflicts at the conditional certification stage and that only a

modest factual showing of a common plan is required. (ECF No. 36 at 7.) *See Lee v. Children's Place Retail Stores, Inc.*, 2014 WL 5100608, at *5 (N.D. Ill. Oct. 8, 2014) (declining to follow *Ellerd*).

The Court finds that *Ellerd* is factually distinguishable. In that case, one of the named plaintiffs alleged that he was not compensated for overtime hours worked in his role as supervisor, and plaintiffs sought to represent both social workers and their supervisors. *Ellerd*, 2009 WL 982077, at *4 (denying conditional certification without prejudice to allow plaintiffs to bring a motion to certify a class of supervisors or social workers). Here, Plaintiff seeks only to represent Investigators, some of whom subsequently became managers in the relevant time period. (ECF No. 1 ¶ 12.)

While a close call, the Court finds that any potential conflict should not preclude conditional certification at this point in the litigation.

**D.     Willfulness**

Generally, claims under the FLSA are subject to a two-year statute of limitations, except for when a plaintiff alleges a willful violation. 29 U.S.C. § 255(a). When a plaintiff alleges a willful violation, a three-year statute of limitations applies. *Id.* At the conditional certification stage, a plaintiff must allege willfulness on the part of the defendant. *See Stallings*, 2018 WL 1250610, at *7.

Here, Defendant argues that Plaintiff has made only "conclusory allegations" that Defendant's alleged violations of the FLSA were willful and focuses on Defendant's policy and reminders to employees to record all hours worked. (ECF No. 29 at 14.) Plaintiff summarily responds in a footnote, citing seven paragraphs from her complaint

11

and two cases from this District.

Defendant overlooks Plaintiff's allegations that Defendant modified or altered time entries of Plaintiff and others to reflect fewer overtime hours, and that Plaintiff's supervisor acknowledged but refused to approve overtime hours worked. (ECF No. 1 ¶¶ 23–24.) These allegations, which are not addressed by Defendant, if true, would support a finding of willfulness on the part of Defendant. Therefore, the Court finds that Plaintiff has sufficiently alleged willful conduct for purposes of conditional certification of a 3-year putative class. *See Stallings*, 2018 WL 1250610, at *7 (citing *Fernandez v. Clean House,* 883 F.3d 1296, 1298–99 (10th Cir. 2018)).

### E. Arbitration Contracts

The parties also disagree whether notice should be sent to Field Investigators whose contracts contained arbitration clauses, or indeed whether those individuals should included in the collective action. (ECF No. 22 at 3, 13; ECF No. 29 at 12–13.)

The U.S. District Court for the District of Columbia addressed this issue in a recent decision. *See Meyer v. Panera Bread Co.*, 2018 WL 5020461, at *7 (D.D.C. Oct. 16, 2018) (collecting cases). In that case, the court observed that "courts have generally found that the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage." *Id*.; *see also D'Antuono v. C&G of Groton, Inc.*, 2011 WL 5878045, at *2 (D. Conn. Nov. 23, 2011) (certifying a collective action despite the existence of an arbitration agreement and collecting cases). This Court agrees with this analysis and conclusion. The purpose of

conditional certification is to notify putative collective action members of their right to join the lawsuit. See *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1114 (D. Colo. 2017). Though Defendant may have an affirmative defense to litigating opt-in plaintiffs' FLSA claims, such a defense does not negate the right of potential collective action members to join the litigation.

Cases cited by Defendant do not require a contrary result. In *Sanchez v. Q'Max Solutions, Inc.*, the court denied conditional certification when all potential members were already covered by a certified class action, and thus an identical FLSA action would be redundant. 2018 WL 1071133, at *1 (D. Colo. Feb. 27, 2018). Here, there is no similar risk of redundancy because there is no parallel action. In *Bracamontes v. Bimbo Bakeries U.S.A., Inc.*, the court rejected a proposal to give notice to individuals who did not meet the FLSA collective action definition. 2017 WL 4621276, at *1 (D. Colo. Aug. 3, 2017). Here, there is no dispute about whether those with arbitration provisions meet the proposed collective action definition; Defendant simply argues that those with arbitration provisions should be excluded from the collective action definition. Finally, in *Hudgins v. Total Quality Logistics, LLC*, the Court found the arbitration agreements of potential opt-in plaintiffs were enforceable, and thus limited notice to potential members who had not signed arbitration agreements. 2017 WL 514191, at *4 (N.D. Ill. Feb. 8, 2017); *see also Daugherty,* 838 F. Supp. 2d at 1133 (excluding those with arbitration provisions from the collective action definition where the court had already compelled arbitration of those with arbitration provisions). Here, the Court has made no determination as to arbitrability.

The Court thus grants the Motion as to conditional certification for all persons who fit the proposed collective action definition, including those with arbitration provisions.

F.  **Substance and Procedure of Notice**

Defendant also objects to both the substance and procedure of the proposed notice. (ECF No. 29 at 14–15.) The Court will review the merits of these objections and provide guidance to counsel on these issues.

1. Contents of notice

The Court has reviewed the proposed notice. As currently drafted, the notice does not provide a description of the theory of the case to allow individuals to assess whether they have a potential claim, explain the implications of not joining the lawsuit, describe potential discovery obligations, or instruct recipients not to contact the Court directly. The Court therefore denies that portion of the Motion pertaining to the proposed notice.

For the parties' reference, this Court generally approves FLSA notices to potential opt-in plaintiffs that are substantially similar to those notices in class actions. *See, e.g.*, *Lira v. Commercial Constr., Inc.*, No.16-cv-1566, Order Granting Conditional Collective Action Certification, ECF No. 25 (D. Colo. Mar. 30, 2017); *Clark v. Strad Energy Services USA Ltd.*, No. 17-cv-1242, Order Granting Plaintiff's Motion for Approval of *Hoffman-LaRoche* Notice, ECF No. 67 (D. Colo. July 9, 2018); *Shahlai v. Comcast Corp.*, No. 16-cv-2556, Order Approving Proposed FLSA Notice and Consent to Join Form, ECF No. 75 (D. Colo. Oct. 17, 2018).

The Court also provides the following comments on the parties' disputes regarding the contents of the notice:

*Discovery obligations*. As currently drafted, there is no indication regarding potential discovery obligations. Plaintiff should provide notice regarding the impact of joining the law suit and potential discovery obligations. *See Grady v. Alpine Auto Recovery LLC*, No. 15-CV-00377-PAB-MEH, 2015 WL 3902774, at *3 (D. Colo. June 24, 2015) (adding language to *Hoffman-LaRoche* notice regarding impact of joining suit and potential discovery obligations). The Court has previously approved the following language: "While this lawsuit is proceeding, you may be required to respond under oath to written questions, have your deposition taken, produce documents, and/or testify in court at a trial or hearing in the United States Federal Courthouse in Denver, Colorado. This may or may not be likely depending on your circumstances." *See Clark*, 17-cv-1242, ECF No. 67.

*Defense counsel contact information*. There is a split among district courts as to whether inclusion of defense counsel's contact information is appropriate. *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (citing cases). Courts refusing to include such information cite ethical concerns about contact between represented opt-in plaintiffs and defendants. *See Gambo v. Lucent Techs., Inc.*, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005) ("there is no basis in law or logic for this request"); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("Including contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion."); *Fuentes*

*v. Compadres, Inc.*, 2018 WL 2126840, at *5 (D. Colo. May 9, 2018) (finding no reason to include defense counsel's information). This Court agrees and will not require Plaintiff to include such information in the notice.

*Retaliation*. Counsel should refer to previous language approved by the Court on the issue of retaliation. The notice should not, however, include information about contacting an attorney if an individual believes retaliation has occurred, as this could be interpreted at unsolicited legal advice. *See Furlow v. Bullzeye Oilfield Serv., LLC*, 2016 WL 7616704, at *2 (W.D. Tex. May 4, 2016).

*Other Items*. The parties should include a sentence which indicates that those individuals with arbitration agreements likely must pursue their claims in arbitration. Implicit in the right to opt-in is the concomitant right not to join; therefore, no additional statement about the right not to join is required.

2. Form and frequency of notice

There is a split of authority of whether reminder notices are appropriate or necessary. *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012) (citing cases). In *Guzelgurgenli*, the court recognized that "most plaintiffs do not request permission to send reminder notices, and . . . there has been no great harm resulting from this practice." *Id.*; *see Cannon v. Time Warner NY Cable LLC*, 2014 WL 401313 (D. Colo. Sept. 5, 2014) (J., Watanabe) (denying plaintiffs' request to send email notices). Plaintiff has not established good cause to show why a reminder notice is necessary here. The Court therefore denies Plaintiff's request to send a reminder notice. All notices must at least be sent by U.S. Mail; they may in

16

addition be sent via electronic mail.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Strike (ECF No. 64) is DENIED;

2. Plaintiff's Motion for Conditional Certification and Court-Authorized Notice (ECF No. 22) is GRANTED IN PART as to conditional certification, as set forth above;

3. This action is CONDITIONALLY CERTIFIED as a collective action under 29 U.S.C. § 216(b) with the eligible collective action class members defined as: "All persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant KeyPoint Government Solutions Inc. at any time from March 8, 2015 to present.";

4. Plaintiff's Motion is DENIED IN PART WITHOUT PREJUDICE as to approval of the form of notice submitted at ECF No. 22-2. The parties should attempt to stipulate to a notice and file a joint motion to approve a notice and consent to join form no later than **November 16, 2018**. If the parties are unable to agree, they may file separate motions by that same date; and

5. No later than **November 16, 2018** Defendant shall provide to Plaintiff's counsel a list of all potential collective action members, which shall include each such employee's or former employee's name, position, dates of employment, last known mailing address, last known e-mail address, and last known telephone number.

Dated this 1st day of November, 2018.

BY THE COURT:

William J. Martínez
United States District Judge