**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0550-WJM-NRN

RACHEL BRAYMAN, on behalf of herself and all similarly situated persons,

     Plaintiff,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC., a Delaware corporation,

     Defendant.

---

## ORDER RESOLVING PENDING MOTIONS

---

     Plaintiff Rachel Brayman ("Brayman") brings this action against Defendant KeyPoint Government Solutions, Inc., ("KeyPoint") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (ECF No. 1.) Brayman's FLSA claim concerns KeyPoint's alleged failure to properly compensate a certain class of employees known as "Investigators" for overtime hours worked, and an alleged policy of unlawfully prohibiting overtime in certain circumstances. (*Id.* ¶¶ 20–25.) Although the Court has yet to authorize notice to KeyPoint employees who might join Brayman in a collective action, roughly fifty of them have opted in to this lawsuit through notices of consent to join filed by Brayman's counsel.

     Currently before the Court is KeyPoint's Motion for Reconsideration, or in the Alternative, Certification of an Interlocutory Appeal ("Motion to Reconsider"). (ECF No. 73.) KeyPoint asks the Court to reconsider certain portions of its prior order granting conditional certification of this lawsuit as a collective action. (*See* ECF No. 69.)

Also before the Court is Brayman's Motion for Equitable Tolling. (ECF No. 72.) Brayman requests that the Court toll the FLSA statute of limitations from the time she moved for conditional certification.

Finally, before the Court are eight motions to compel arbitration filed by KeyPoint against twenty-seven opt-in plaintiffs who are subject to arbitration agreements (collectively, "Motions to Compel"). (ECF Nos. 84, 93, 106, 110, 124, 128, 129, 130.)

For the reasons explained below, the Court grants the Motion to Reconsider as to the question of whether collective action notice should be transmitted to potential collective action members subject to an arbitration agreement. In addition, the Court strikes the notices of consent to join filed by current opt-in plaintiffs subject to arbitration agreements, and in turn denies the various Motions to Compel as moot. Finally, the Court grants the Motion for Equitable Tolling.

## I. BACKGROUND

### A. The Arbitration Agreement

Brayman filed this lawsuit on March 8, 2018. (ECF No. 1.) On March 16, 2018, KeyPoint's counsel e-mailed a letter to Brayman's counsel announcing that one of the opt-in plaintiffs (Tschiffely) had signed an arbitration agreement. (ECF No. 29-21 at 2.)[1] KeyPoint's counsel asked Brayman's counsel to "[p]lease let us know if Mr. Tschiffely will voluntarily withdraw his consent to join. Please be advised that if you will not agree to do so, we will proceed with a motion to compel arbitration and will seek our fees in doing so." (*Id.* at 3.)

---

[1] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination, particularly in exhibits with unnumbered cover pages.

The arbitration agreement in question "applies, without limitation," to essentially any conceivable dispute between the employee and KeyPoint, specifically including disputes about "compensation, classification, minimum wage, . . . overtime, [and] breaks and rest periods."  (ECF No. 84-2 § 1.)  For good measure, it also specifically embraces "claims arising under the Fair Labor Standards Act."  (*Id.*)  "Additionally," the agreement continues, "the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement.  However, the preceding sentence shall not apply to the 'Class Action Waiver' described below."  (*Id.*)

The Class Action Waiver reads,

> Both KeyPoint and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis; there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding. . . . Disputes regarding the validity or enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

(*Id.* § 5.)

Concerning the monetary aspects of arbitration, the agreement states,

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  However, in all cases where required by law, KeyPoint will pay the Arbitrator's and arbitration fees.  If under applicable law KeyPoint is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

(*Id.* § 6.)

Finally, the agreement contains a severability clause: "[I]n the event that any portion of this Agreement is deemed unenforceable, only the unenforceable language will be severed from this Agreement and the remainder of this Agreement will be enforceable." (*Id.* § 9.)

## B. Representations About Arbitrating Opt-In Plaintiffs' Claims

On March 22 and 23, 2018, KeyPoint's counsel followed up in the same e-mail thread in which she had sent the March 16 letter regarding Tschiffely's arbitration agreement. (ECF No. 29-20.) KeyPoint's counsel attached materially identical arbitration agreements for opt-in plaintiffs Betton, George, Jones-Rose, and Perry. (ECF No. 29-20 at 1–2; ECF Nos. 84-3 through 84-6.)

On April 2, 2018, KeyPoint's counsel—having apparently heard nothing from Brayman's counsel—continued the e-mail thread: "I would appreciate receiving an update on the issue regarding the opt-ins who are subject to the dispute resolution agreement. Please advise." (*Id.* at 1.) The following day, Brayman's counsel replied, "No need to file a motion to compel arbitration. We will pursue these claims in arbitration. What do you know about the recent opt-ins? Do you have a proposal that you want me to consider for sending them to arbitration?" (*Id.*)

## C. Conditional Certification Proceedings

### 1. Brayman's Conditional Certification Motion

Brayman moved for conditional certification on April 6, 2018 ("Certification Motion"). (ECF No. 22.) As part of that motion, Brayman predicted that KeyPoint "will likely argue that the scope of any notice should be limited to those Investigators who did not sign an arbitration agreement." (*Id.* at 13.) Brayman asserted that "such an argument should be rejected" because "[t]hose who did sign arbitration agreements

should still be notified about the existence of this lawsuit and be provided with the opportunity to protect their claims from expiring.  This is true even if it is later determined that certain collective members must arbitrate their claims." (*Id.*)  Later in the same brief, however, Brayman offered assertions suggesting that there would be no "later determin[ation]" about arbitrability because it was a given as to those who had signed arbitration agreements:

> After Investigators are timely notified of the lawsuit and individuals make a claim, the parties can sort out whether [those] who actually join the case have arbitration agreements, as they have cooperatively done thus far.  To explain, shortly after Plaintiff filed her Complaint, Defendant's counsel informed Plaintiff's counsel that while Named Plaintiff Rachel Brayman had not signed an arbitration agreement, several other current Opt-in Plaintiffs had.  Plaintiff's counsel subsequently made clear that for those Opt-in Plaintiffs with signed arbitration agreements, they would voluntarily arbitrate their claims without the need for Defendant to file a motion to compel arbitration.  In short, all Investigators are entitled to notice of their potential overtime claims regardless of the forum in which they may ultimately be required to assert them.

(*Id.* at 15 (citation omitted).)

2. <u>Negotiations Over a Stipulation Regarding Arbitration</u>

On April 12, 2018—after the filing of the Certification Motion but before KeyPoint's deadline to respond—KeyPoint's counsel submitted a draft stipulation regarding arbitration to Brayman's counsel.  According to Brayman's counsel (in a declaration submitted in opposition to the Motion to Reconsider), "The parties' negotiations on that stipulation ultimately broke down after multiple rounds of red-lined edits because the parties could not agree on the terms of the stipulation.  As part of the parties' negotiations on the proposed stipulation, Plaintiff specifically sought to preserve her right to make any enforceability arguments."  (ECF No. 79-1 ¶ 5.)  According to

KeyPoint's counsel (in a declaration submitted with KeyPoint's reply in support of the Motion to Reconsider), "In reviewing the correspondence exchanged between counsel, I see no statements reflecting an intention or indication by Plaintiff that she believed the agreements were not enforceable in the first place, or that she intended to subsequently challenge the enforceability of the arbitration agreement before this Court." (ECF No. 80-1 ¶ 6.)

The parties redlined drafts are in the record, along with the cover e-mails transmitting them. (ECF Nos. 89-3, 89-4.) These documents show that the parties' major disagreements centered around Brayman's proposal that KeyPoint stipulate to pay for the arbitrator's fees and costs and Brayman's proposal that this action be stayed, rather than dismissed, as to the opt-in plaintiffs subject to an arbitration agreement. (*See id.*)

### 3. KeyPoint's Response Brief

In its response to the Certification Motion, KeyPoint estimated that about 2,600 of the potential collective members, out of a total of about 4,200, are subject to "identical" arbitration agreements. (ECF No. 29 at 6.) KeyPoint further stated, "Counsel for Plaintiff has agreed that [potential collective action members] who have executed arbitration agreements will submit those claims individually to individual arbitration, and the parties are in the process of discussing a stipulation regarding the same." (*Id.*)

KeyPoint went on to argue that providing notice even to those who cannot join an FLSA collective action, simply because they might have an FLSA claim through an arbitral forum, is an improper use of the notice process. (*Id.* at 12–13.) KeyPoint asserted that "there is no dispute here as to the enforceability of the arbitration agreements," referring to Brayman's counsel's April 2, 2018 e-mail quoted above. (*Id.*

at 13.) "Thus[,] issuing notice to individuals with arbitration agreements for the purpose of inviting them to join this lawsuit would be futile and would contravene the purposes of the FLSA." (*Id.*)

        4.    <u>Brayman's Reply Brief</u>

In her reply brief, Brayman nowhere contested KeyPoint's representations about the identical nature of the arbitration agreements, about her counsel's agreement to submit certain parties' claims to individual arbitration, or about the ongoing nature of discussions to reach a stipulation. Brayman instead focused on whether those with arbitration agreements should nonetheless receive notice regarding this lawsuit, emphasizing cases from various jurisdictions holding that whether a party must arbitrate is irrelevant to whether he or she should receive notice of the collective action. (ECF No. 36 at 8–9.) "Following notice," Brayman concluded, "any collective members who opt in and are subject to arbitration can later proceed in arbitration if they so choose. Sending notice allows this decision to be made efficiently." (*Id.* at 9.)

        5.    <u>The Court's Order</u>

By order dated November 1, 2018, the Court granted the Certification Motion to the extent that the Court defined and conditionally certified a collective action ("Certification Order"). *See Brayman v. KeyPoint Gov't Sols., Inc.*, 2018 WL 5776373, at *8 (D. Colo. Nov. 1, 2018) (ECF No. 69). Specifically, the Court conditionally certified the following collective action: "All persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant KeyPoint Government Solutions Inc. at any time from March 8, 2015 to present." *Id.* at *8.

Regarding the arbitration agreements, the Court agreed with the United States

District Court for the District of the District of Columbia that "'the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage.'" *Id.* at *6 (quoting *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 206 (D.D.C. 2018)).  The Court further stated, "The purpose of conditional certification is to notify putative collective action members of their right to join the lawsuit.  Though Defendant may have an affirmative defense to litigating opt-in plaintiffs' FLSA claims, such a defense does not negate the right of potential collective action members to join the litigation." *Id.*

The Court also distinguished the cases cited by KeyPoint, including *Hudgins v. Total Quality Logistics, LLC*, 2017 WL 514191 (N.D. Ill. Feb. 8, 2017), and *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127 (D. Colo. 2011), as cases where the Court had already decided that the arbitration agreements were enforceable. *Brayman*, 2018 WL 5776373, at *8.  "Here," by contrast, "the Court has made no determination as to arbitrability." *Id.*

The Court, however, found that Brayman's proposed notice to potential opt-in plaintiffs was deficient. *Id.* at *7–8.  The Court therefore ordered the parties to "attempt to stipulate to a notice and file a joint motion to approve a notice and consent to join form no later than November 16, 2018.  If the parties are unable to agree, they may file separate motions by that same date[.]" *Id.* at *8 (emphasis removed).

## D.  Proceedings Since

Neither party filed a motion on November 16, 2018.  Rather, KeyPoint filed its Motion to Reconsider on November 14, along with a Motion to Stay.  (ECF Nos. 73–74.) The Court granted a stay "pending resolution of Defendant's Motion to Reconsider."

(ECF No. 75.)  Presumably, then, no notice has ever been sent to the collective.

The Court will address the parties' arguments for and against reconsideration in greater detail below.  For present purposes, the Court notes Brayman's response to the Motion to Reconsider, filed November 20, 2018, which contains a narrative from Brayman's counsel about the discussions concerning a stipulation to send the opt-in plaintiffs with arbitration agreements to arbitration.  (ECF No. 79.)  After recounting the breakdown in negotiations back in April 2018, Brayman's counsel states, "Defendant has not moved to compel arbitration and only recently—just 1 day after [the Certification Order]—attempted to restart discussions on moving certain current Opt-in Plaintiffs with signed arbitration agreements into arbitration."  (ECF No. 79-1 ¶ 7.)  Taking the invitation, KeyPoint filed its first motion to compel arbitration on December 5, 2018.  (ECF No. 84.)  That motion addresses the five opt-in plaintiffs who had been the subject of the parties' discussions in March and April 2018.  (ECF No. 84.)

Brayman has since filed additional opt-in consents—it is not clear how these new opt-in plaintiffs learned about the lawsuit—and KeyPoint, in lock-step, has filed additional motions to compel arbitration as to those new opt-in plaintiffs who signed arbitration agreements.  As noted previously, there are now eight pending motions to compel arbitration.  All eight are materially identical, as are Brayman's eight response briefs.  Brayman argues that the cost-sharing provision in the arbitration agreements makes arbitration prohibitively expensive, and therefore a barrier to effective vindication of the opt-in plaintiffs' FLSA rights; or, if the Court nonetheless compels arbitration, that the Court should stay this lawsuit, rather than dismiss it.  (*See, e.g.*, ECF No. 89.)

## II. ANALYSIS

The basic question posed by the Motion to Reconsider is whether the Court should permit Brayman to send notice of the conditional certification of the collective action to employees or former employees subject to an arbitration agreement. As it turns out, however, the question is not truly independent from questions raised by other pending motions. The Court will therefore analyze all pending motions together.

### A. Reconsideration Standard

District courts have broad discretion to reconsider their interlocutory rulings before entry of judgment. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). Thus, a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied. *See Laird v. Stilwill*, 982 F. Supp. 1345, 1353–54 (N.D. Iowa 1997).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.*

### B. Reconsideration, Part One

Having thoroughly reviewed the docket and the basis for the Certification Order,

the Court concludes that three factors justify revisiting that order.

First, briefing regarding the Certification Motion discussed the existence of the arbitration agreement, and, if one followed an indirect cross reference, one could find the arbitration agreement itself in the record (*see* ECF No. 29 at 5–6 (citing to ECF No. 29-1 ¶ 11, in turn citing to ECF No. 29-5)), but nowhere was the agreement's language actually quoted (*see id.* at 5–6, 12–13). As explained below, the Court finds certain language highly significant in the present circumstances.

Second, had KeyPoint brought a motion to compel arbitration in time for the Court to decide it before, or together with, the Certification Motion, it likely would have influenced the Court's deliberation on the question of whether notice should be sent to potential collective action members who are subject to arbitration agreements.

Third, KeyPoint's failure to bring such a motion is primarily attributable to Brayman's counsel's statements to KeyPoint's counsel, not to a lack of diligence on KeyPoint's part. Although KeyPoint's thinking on this issue is unclear during the not-quite-six months between the day the Certification Motion became ripe (May 11, 2018) and the day the Court issued the Prior Order (November 1, 2018), there is also nothing in the record to show that Brayman's counsel had withdrawn her agreement that opt-in plaintiffs with arbitration agreements would be sent to arbitration without the need for a motion to compel. To be clear, the alleged breakdown in negotiations over a stipulation—and the Court makes no ruling on whether there was a breakdown—is not the same as a repudiation of the underlying premise that opt-in plaintiffs with arbitration agreements would be sent to arbitration without the need for a motion. In other words, Brayman's counsel's statements justify KeyPoint's inaction. Indeed, it is probably for

this reason that KeyPoint never felt it necessary to emphasize the language of the arbitration agreement when responding to the Certification Motion, as mentioned above.

For all these reasons, the Court exercises its discretion to reconsider the Certification Order. The Court further finds that the scope of reconsideration must be informed by the arbitrability question raised directly through KeyPoint's eight motions to compel arbitration. The Court therefore turns to those motions.

## C. Arbitrability

### 1. General Standard

Pursuant to § 2 of the Federal Arbitration Act ("FAA"), a written agreement to submit a controversy to arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to statutorily enshrine a "liberal federal policy favoring arbitration" in response to judicial hostility to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). An arbitration agreement stands on equal footing with other contracts and a court is required to enforce such an agreement according to its terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). Such an agreement is generally enforced as written, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Grounds for invalidation of an arbitration agreement include contract defenses, such as fraud, duress, or unconscionability. *Rent-A-Center*, 561 U.S. at 68.

Of particular note here, arbitration clauses that that prohibit bringing claims on a classwide or collective basis are generally valid, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621–32 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), and can only be disregarded if the clause itself is demonstrated to be the product of fraud, duress, or similarly generic contractual defenses, *see Rent-A-Center*, 561 U.S. at

72; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Although unconscionability is a generic contract defense, class and collective action waivers are not unconscionable solely on account of being class and collective actions waivers because, according to the Supreme Court, arbitration is bilateral by default and any judicial rule that interferes with that is a rule aimed at arbitration, and therefore preempted by the FAA. *See Concepcion*, 563 U.S. at 344–52; *see also Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1184–86 (D. Colo. 2016).

      2.    <u>Effect of Class Action Waiver</u>

Again, the Class Action Waiver reads in relevant part as follows:

> Both KeyPoint and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis; there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding. . . . Disputes regarding the validity or enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

(ECF No. 84-2 § 5.) The Court has received eight materially identical response briefs setting forth the opt-in plaintiffs' objections to being forced to arbitration. (ECF Nos. 89, 102, 111, 113, 127, 136, 137, 138.) Each of these briefs raises only two questions: (1) whether the cost-shifting provision of the arbitration agreement (*see* Part I.D, above) prevents effective indication of the plaintiffs' rights; and (2) whether the appropriate outcome, if arbitration is ordered, is dismissal or a stay. Nowhere do the opt-in plaintiffs raise any challenge to the Class Action Waiver. Accordingly, they are deemed to confess its validity and that they are bound by it.

Importantly, then, the parties have indisputably agreed that that "there will be no

right or authority for any dispute to be brought[] [or] heard . . . as a member in any purported . . . collective . . . proceeding." (ECF No. 84-2 § 5.) The Court therefore holds that it is an inappropriate use of 29 U.S.C. § 216(b) to opt in to a putative or certified collective action and then use that status as an opt-in plaintiff to resist arbitration on grounds *not* related to a class/collective waiver.

The Court finds that the appropriate remedy is to strike the relevant notices of consent to join the lawsuit, and, in turn, the Court will deny Keypoint's eight Motions to Compel Arbitration as moot. The parties' dispute over whether this action should be stayed or dismissed as to these opt-in plaintiffs is likewise moot in light of this disposition.

To be clear, the Court does not agree with KeyPoint's argument that all disputes about the arbitration agreement's cost-shifting provision must be decided by an arbitrator. (See ECF No. 92 at 5–6.) A federal court's power to strike a portion of an arbitration clause that prevents "effective vindication" of rights (such as certain cost-shifting provisions) is a power the federal courts inherently possess, regardless of a clause delegating all disputes to the arbitrator. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 378 (10th Cir. 2016). The Court only holds that when persons subject to an arbitration agreement have already conceded that they have validly disavowed the collective action procedure, it is inappropriate to nonetheless opt in so that all decisions regarding effective vindication (generally requiring individualized inquiry into each person's circumstances[2]) will be addressed through a single judge, as if in a collective

---

[2] *See, e.g.*, *Mantooth v. Bavaria Inn Rest., Inc.*, 2018 WL 2241130, at *8 (D. Colo. May 16, 2018); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *11 (D. Colo. July 15, 2011).

action.

3.    <u>KeyPoint's Request for Sanctions Under 28 U.S.C. § 1927</u>

KeyPoint's first Motion to Compel Arbitration, but not any of the subsequent seven, asks the Court to assess attorneys' fees against Brayman, contending that her counsel "overtly misled KeyPoint by representing that individuals subject to arbitration agreements with class waivers would voluntarily submit their claims to arbitration." (ECF No. 84 at 13.) "In fact," KeyPoint continues, "it appears that [Brayman's counsel's] discussions regarding a stipulation were nothing more than a delay tactic." (*Id.* at 14.)

KeyPoint invokes 28 U.S.C. § 1927, which reads,

> Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under this statute "are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc). Subjective bad faith is not required, although a lack of it is among the factors a court may consider. *Id.* Ultimately, whether to award § 1927 sanctions is a matter committed to this Court's discretion. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278–79 (10th Cir. 2005).

Although a close question, the Court finds that it does not have a sufficient basis to find conduct worthy of § 1927 sanctions. KeyPoint's theory is that Brayman's counsel intentionally lulled KeyPoint into not filing a motion to compel so that this Court could be shielded from the arbitrability question, and therefore (the argument goes) the Court

would be more likely to authorize collective action notice to all potential collective members, regardless of whether he or she is subject to an arbitration agreement. The Court sees no evidence of such intent, particularly in the several months after the Certification Motion came ripe and the parties did not communicate at all about the proposed stipulation to send certain opt-in plaintiffs to arbitration. In addition, the parties' communications about that proposed stipulation in April 2018 show that Brayman's counsel was concerned about the specific issues she raised in opposition to the various motions to compel arbitration—the cost-shifting provisions, and whether the relevant opt-in plaintiffs would be dismissed as opposed to having the action stayed as against them. (*See* Part I.C.2, above.)

The Court in no way condones Brayman's counsel's approach to the arbitrability issue. However, the Court finds that § 1927 sanctions are not warranted on this record. The Court therefore denies KeyPoint's request for relief in this regard.

**D.     Reconsideration, Part Two**

1.     <u>Notice</u>

The Court now returns to the question most directly posed by the Motion to Reconsider: Should collective action notice be sent to all Investigators even if they are subject to an arbitration agreement? Considering the analysis in Part II.C.2, above, it is appropriate for the Court to reverse its ruling on this matter in the Certification Order. *See* 2018 WL 5776373, at *6 (ECF No. 69 at 12–14). In other words, on the expanded record, it is clear that Brayman has no challenge to the arbitration agreement other than matters outside the Class Action Waiver. It would not be appropriate, therefore, to inform persons subject to the arbitration agreement that they have a right to join a collective action when they have prospectively waived that right.

The Court's concerns remain the same regarding the contents and form of notice to Investigators *not* subject to an arbitration agreement, *see id.* at *7–8 (ECF No 69 at 14–17), save for the Court's direction that "[t]he parties should include a sentence which indicates that those individuals with arbitration agreements likely must pursue their claims in arbitration," *id.* at *8 (ECF No. 69 at 16).  The Court will again order the parties to attempt to stipulate, or, failing that, to file separate motions for approval of the notice.

2.     Third-Party Administrator

KeyPoint's Motion to Reconsider raises another issue, separate from arbitration-related matters, namely, whether notice should be sent through a third-party administrator.  (ECF No. 73 at 11–13.)  This matter was raised in KeyPoint's response to the Certification Motion through a single sentence followed by a single citation to an unpublished opinion.  (ECF No. 29 at 14.)  The Court's Certification Order said nothing about it explicitly, but implicitly rejected it when ordering KeyPoint to provide Brayman's counsel with a list of all potential collective action members.  *See* 2018 WL 5776373, at *8 (ECF No. 69 at 17).

It is inappropriate for KeyPoint now to assert, by way of reconsideration, a more elaborate version of an argument the Court already rejected.  *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256.  Accordingly, the Court denies this portion of the Motion to Reconsider.

However, the Court notes Brayman's response to the Motion to Reconsider, in which she says that a third-party administrator should not be required due to the expense, *and* because Brayman "has a separate right to discover a list of investigators who worked for [KeyPoint] for the past three years as they are fact witnesses to the claims and defenses in this litigation."  (ECF No. 79 at 12.)  Brayman cites no authority

for this proposition and the Court rejects it.  Requiring KeyPoint to produce a list of potential collective action members is not the equivalent of forcing KeyPoint to make a Rule 26(a)(1)(A)(i) disclosure or other discovery response.  If Brayman believes that the contact information for every potential collective action member is relevant as a matter of *discovery*, she must make the discovery request and—if challenged—justify it as "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Moreover, the Court has looked dimly on letters sent to potential collective action members for the ostensible purpose of seeking information when it was plain that the plaintiff's attorney was really seeking additional opt-ins.  (*See Cooper v. Noble Casing, Inc.*, Civil Action No. 15-cv-1907-WJM-CBS, ECF No. 126 (D. Colo., Oct. 27, 2017).)  Brayman's counsel is thus warned.

## E.    Equitable Tolling

Finally, the Court turns to Brayman's Motion for Equitable Tolling.  (ECF No. 72.)  A two-year statute of limitations governs FLSA claims for unpaid wages, unless the violation was "willful," in which case a three-year statute of limitations applies.  *See* 29 U.S.C. § 255.  As to opt-in plaintiffs, these limitations periods are measured against the date on which each plaintiff's opt-in notice is filed with the Court.  *Id.* § 256(b).  In other words, an FLSA plaintiff can recover wages only if those wages were unlawfully withheld in the two (or perhaps three) years preceding the complaint's filing (for named plaintiffs) or the opt-in notice's filing (for opt-in plaintiffs).  Understanding this, Brayman argues that the FLSA statute of limitations should be equitably tolled as of the date Brayman filed the Certification Motion.  (ECF No. 72 at 1–2.)

The Court has found that equitable tolling in circumstances such as these is appropriate given that the information needed for the named plaintiff to inform other

employees of their opportunity to opt in is largely in the defendant's hands. *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181–82 (D. Colo. 2012). Moreover, aware of the FLSA's statute of limitations, Brayman moved quickly for conditional certification—about a month after filing the lawsuit. (*See* ECF Nos. 1, 22.) Also, the time during which the Certification Motion was pending, together with the time the Motion to Reconsider has been pending, has created delay that should not, in the interest of justice, count against the potential members of the collective action.

For these reasons, the Court will grant the Motion for Equitable Tolling from the date of the Certification Motion (April 6, 2018) through the end of the opt-in period.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. KeyPoint's Motion for Reconsideration, or in the Alternative, Certification of an Interlocutory Appeal (ECF No. 73) is GRANTED to the extent that the Court reverses its prior ruling that collective action notice will be sent to potential collective action members who are subject to an arbitration agreement, but is otherwise DENIED;

2. The parties shall attempt to stipulate to a notice and consent-to-join form and file a joint motion to approve those documents no later than **August 23, 2019**. If the parties are unable to agree, they may file separate motions by that same date;

3. The Court will establish a date for KeyPoint to turn over information to Brayman regarding potential collective action members by separate order when the Court approves the notice and consent-to-join forms;

4. The notices of consent to join as to opt-in plaintiffs An (ECF No. 27-1 at 1), Baker

(ECF No. 58-1 at 1),[3] Betton (ECF No. 8-1 at 3), Biggers (ECF No. 37-1 at 1),
Bobinger (ECF No. 100-1 at 1), Ana Cruz (ECF No. 37-1 at 2), Arnaldo Cruz
(ECF No. 86-1 at 1), DeMarco (ECF No. 52-1 at 1), Dyson (ECF No. 112-1 at 2),
Gaudet (ECF No. 17-1 at 1), George (ECF No. 8-1 at 2), Greenstein (ECF No.
105-1 at 1), Hall (ECF No. 38-1 at 1), Harper (ECF No. 90-1 at 1), Islas (ECF No.
49-1 at 1), Jones-Rose (ECF No. 9-1 at 1), Linen (ECF No. 49-1 at 2), Magee
(ECF No. 28-1 at 1), Mosley ECF No. 25-1 at 1), Perry (ECF No. 8-1 at 1), Terry
(ECF No. 25-1 at 3), Tschiffley (ECF No. 1-2 at 2), Tyner (ECF No. 20-1 at 2),
Ward (ECF No. 97-1 at 1), Wheeler (ECF No. 53-1 at 1), Whitener (ECF No. 59-1
at 1), and Wood (ECF No. 119-1 at 1) are STRICKEN;

5.      Each of the following motions is DENIED AS MOOT:

   a.      Keypoint's Motion to Compel Arbitration of Claims by Opt-ins Paul
           Tschiffley, DeAijha Perry, Shawn Betton, Alicia Jones Rose, and Tasha
           George, or in the Alternative, to Dismiss (ECF No. 84);

   b.      Keypoint's Motion to Compel Arbitration of Claims by Opt-ins Ahmiyah
           Mosley, Albert Islas, Ana Cruz, Desiree Gaudet, Dorothy Terry, Edward
           Demarco, Endy Sevilla, Harold Baker, Johnny An, Kathleen Magee, Kevin
           Tyner, Laurie Hall, Moses Linen, Sean Whitener, Sibyl Biggers, William
           Wheeler and Arnaldo Cruz, or in the Alternative to Dismiss (ECF No. 93);

---

[3] There are two consent-to-join forms attributed to "Harold D. Baker," the first filed on
August 31, 2018 (ECF No. 58-1 at 1), and the second—with a completely different signature—
filed on October 8, 2018 (ECF No. 66-1 at 1). KeyPoint only specifically moves against the
party who signed the August 31, 2018 consent to join. (*See* ECF No. 93 at 5.)  The Court will
therefore give Brayman the benefit of the doubt (*e.g.*, that no one is forging signatures) and
presume that the later "Harold D. Baker" is a different person *without* an arbitration agreement
who coincidentally has the same name as the "Harold D. Baker" *with* an arbitration agreement.

c. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Mathew Harper, or in the Alternative to Dismiss (ECF No. 106);

d. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Barbara Greenstein, or in the Alternative to Dismiss (ECF No. 110);

e. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Lindsey Bobinger, or in the Alternative to Dismiss (ECF No. 124);

f. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Alia Ward, or in the Alternative, to Dismiss (ECF No. 128);

g. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Lekeisha Dyson or, in the Alternative, to Dismiss (ECF No. 129); and

h. Keypoint's Motion to Compel Arbitration of Claims by Opt-in Sydney Wood or, in the Alternative, to Dismiss (ECF No. 130); and

6. Brayman's Motion for Equitable Tolling (ECF No. 72) is GRANTED. The FLSA statute of limitations will be told from April 6, 2018, through the end of the opt-in period (to be established when the Court approves the notice procedures).

Dated this 7th day of August, 2019.

BY THE COURT:

William J. Martinez
United States District Judge