IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0550-WJM-NRN

RACHEL BRAYMAN, on behalf of herself and all similarly situated persons,

    Plaintiff,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC., a Delaware corporation,

    Defendant.

## ORDER ON PENDING MOTIONS REGARDING SCOPE OF NOTICE

Plaintiff Rachel Brayman ("Brayman") brings this action against Defendant KeyPoint Government Solutions, Inc. ("KeyPoint"), for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (ECF No. 1.) Brayman's FLSA claim concerns KeyPoint's alleged failure to properly compensate a certain class of employees known as "Investigators" for overtime hours worked, and an alleged policy of unlawfully prohibiting overtime in certain circumstances. (*Id.* ¶¶ 20–25.)

This case has been mired in disputes over conditional collective action certification. The latest disputes come to the Court through two pending motions: (1) the parties Joint Motion for Clarification of Scope of Notice List ("Motion to Clarify") (ECF No. 157); and (2) Brayman's Motion to Enforce Court Order ("Motion to Enforce") (ECF No. 198). For the reasons explained below, the Motion to Clarify (which contains both sides' arguments in a single motion) is granted in favor of Brayman, and the Motion to Enforce is granted. The Court will also reformulate the collective action definition.

## I. BACKGROUND

Brayman filed this lawsuit on March 8, 2018. (ECF No. 1.) She asked that the Court certify an FLSA collective action defined as follows: "All persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant at any time during the last three years prior to the filing of this Complaint through the entry of judgment." (*Id.* ¶ 12.) Brayman moved for conditional collective certification on April 6, 2018, proposing the same definition. (ECF No. 22 at 2–3.)

The Court granted conditional collective certification on November 1, 2018. *See Brayman v. KeyPoint Gov't Sols., Inc.*, 2018 WL 5776373 (D. Colo. Nov. 1, 2018) (ECF No. 69) ("*Brayman I*"). The Court adopted Brayman's proposed definition, except that (i) the Court filled in a specific beginning date, rather than relying on "three years prior to the filing of this Complaint"; (ii) the Court named the defendant, rather than relying on a generic reference to "Defendant"; and (iii) the Court substituted "to present" for "through the entry of judgment." Thus, the Court-approved definition reads as follows: "All persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant KeyPoint Government Solutions Inc. at any time from March 8, 2015 to present." *Id.* at *8.

In the same order, the Court ruled that notice of conditional certification could be sent to those within the collective definition who had signed arbitration agreements with class/collective action waivers. *Id.* at *6–7. That prompted KeyPoint to move for reconsideration. (ECF No. 73.)

On August 7, 2019, the Court resolved KeyPoint's motion for consideration. *See*

*Brayman v. KeyPoint Gov't Sols., Inc.*, 2019 WL 3714773 (D. Colo. Aug. 7, 2019) (ECF No. 149) ("*Brayman II*").  The Court granted reconsideration to the extent the Court held that potential collective action members who had signed arbitration agreements should *not* receive notice of conditional certification, because it had become clear that their challenges to their arbitration agreements were directed at matters other than the class/collective action waiver.  *Id.* at *6–7.  As for everyone else, the Court ordered the parties to submit a proposed notice and consent-to-join form by August 23, 2019.  *Id.* at *9.  The Court also ordered that the two/three-year FLSA statute of limitations would be tolled "from April 6, 2018, through the end of the opt-in period (to be established when the Court approves the notice procedures)."  *Id.* at *10.

On the appointed date, the parties submitted an agreed-upon proposed notice and consent-to-join form.  (ECF No. 155.)  The proposed notice addresses itself to "[a]ny individual who works or worked for KeyPoint Government Solutions, Inc. as a Field Investigator, Background Investigator, or in other positions with similar job duties from April 6, 2015 to the present."  (ECF No. 155-1 at 1.)  It also establishes a sixty-day window in which those interested in joining the lawsuit must return their consent-to-join forms.  (*Id.* at 2.)

The parties apparently agreed on April 6, 2015 as the relevant start date (three years before the beginning of equitable tolling), rather than March 8, 2015 (the start date certified by the Court in *Brayman I*, calculated as three years before Brayman filed the complaint), because, practically speaking, any claim accruing before April 6, 2015 would already be time-barred.

On August 28, 2019, the Court approved the parties' proposed forms with only a

minor modification that is not relevant here. (ECF No. 156.) In that same order, the Court required KeyPoint to produce contact information by September 18, 2019 for those employees within the collective action definition who did not sign an arbitration agreement. (*Id.*)

On August 30, 2019, the parties filed the Motion to Clarify. (ECF No. 157.) The basic dispute framed in this motion is what the phrase "who worked as" means in the conditional collective definition announced in *Brayman I* (*i.e.*, "All persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant . . ."). According to Brayman, it means something like "who had been hired to be." (*Id.* at 2–4.) According to KeyPoint, it means "who had clocked in as." (*Id.* at 5–8.) The parties say that this dispute affects at least 1,300 potential collective action members. (*Id.* at 2, 7.)

On October 31, 2019, Brayman filed the Motion to Enforce. (ECF No. 198.) There, Brayman's counsel recounts receiving a communication directly from a KeyPoint employee that had heard of the collective action through a coworker but had not received a notice or consent-to-join form. (*Id.* at 4.) Brayman's counsel believed that this employee fit the definition of the conditionally certified collective action, and so asked KeyPoint why no notice or consent-to-join form had been mailed to him. (*Id.*) KeyPoint responded that the employee in question was hired after November 1, 2018— the date the Court issued *Brayman I*—and so, in KeyPoint's view, had not worked for KeyPoint "from April 6, 2015 to the present"—interpreting "the present" to mean November 1, 2018. (*Id.*) The Motion to Enforce thus raises the issue of what "present" means in *Brayman I*.

## II. ANALYSIS

On the surface, the parties' disputes center around *Brayman I*. But both disputes also intersect with two important clauses of the relevant arbitration agreement. One clause says that "this Agreement does not apply to any class, collective, or other representative action proceeding that is currently pending and to which you are a current or purported class member as of the day this Agreement is signed by Employee." (ECF No. 157-1 at 5.) The Court will refer to this as the "Pending Litigation Exception." The other clause says that "the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement." (*Id.*) The Court will refer to this as the "Arbitrator Decides Clause."

### A. Effect of the Arbitrator Decides Clause

KeyPoint argues that the disputes at issue in the Motion to Clarify and Motion to Enforce both fall under the Arbitrator Decides Clause, and so this Court should leave those matters to arbitration. More specifically, KeyPoint says that the meaning of "who worked as" and "to present" in the collective action definition decides whether the Pending Litigation Exception applies, because the definitions of "who worked as" and "to present" in turn define the scope of "current or purported class member as of the day [the Arbitration Agreement] is signed"; and since the question of whether the Pending Litigation Exception applies is delegated to the arbitrator, the arbitrator must decide the meaning of "who worked as" and "to present." (ECF No. 157 at 5.)

To the Court's great surprise, Brayman entirely ignores this argument, and so the Court could deem it conceded. Solely in the interest of justice, however, the Court will not deem it conceded because of the significant consequences of allowing KeyPoint's

5

argument to stand.  KeyPoint's argument is really that, through linguistic happenstance, the Arbitrator Decides Clause now requires potentially hundreds of individual arbitrations to decide whether the Pending Litigation Exception applies, which turns on interpreting what this Court meant when it said "who worked as" and "to present."

"No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."  *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016).  An agreement would need to be highly specific and explicit to convince the Court that the parties intended either that (a) arbitration would be the necessary gateway to invoking the Pending Litigation Exception (effectively making the Exception a farce), or (b) an arbitrator will resolve the parties' disputes about the meaning of the Court's prior orders.  The arbitration agreement at issue here falls well short of that standard.

Furthermore, "*any order or other decision*, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Thus, absent a proper pending appeal, this Court always retains jurisdiction to interpret its own orders.

For these reasons, the Court rejects KeyPoint's claim that it is up to individual arbitrators to decide the applicability of the Pending Litigation Exception in these circumstances.  As it must be, this is a decision for only this Court to make.  The Court thus turns to the substantive disputes over the meaning of "who worked as" and "to present."

**B.     "Who Worked As"**

To repeat, the Pending Litigation Exception says that the requirement to arbitrate "does not apply to any class, collective, or other representative action proceeding that is currently pending and to which you are a current or purported class member as of the day this Agreement is signed by Employee." (ECF No. 157-1 at 5.)  The parties agree that this action was "pending" as of March 8, 2018, when Brayman filed the complaint. (ECF No. 157 at 3.)  The parties also agree that whether an employee is a "purported class member" on or after March 8, 2018 turns on the Court-approved definition of the collective action.  (*See* ECF No. 157 at 3, 5.)[1]

As stated above, *Brayman I* approved a collective action definition embracing "[a]ll persons who worked as Field Investigators, Background Investigators, or in other positions with similar job duties, for Defendant KeyPoint Government Solutions Inc." within a certain time period.  2018 WL 5776373, at *8.  As it turns out, there are approximately 1,300 persons who signed an employment offer letter on or after March 8, 2018, but whose employment remained expressly conditioned on "(1) submission of acceptable proof of U.S. Citizenship; (2) successful completion of a full Single Scope Background Investigation (SSBI); (3) sufficient workload in the hired area at the time of favorable interim review is granted." (ECF No. 157-2 at 16.)  "If these conditions are not met," the offer letter continues, "the offer will be null and void." (*Id.*)  Nonetheless, these employees (or prospective employees, depending on one's perspective) signed the

---

[1] Because an action becomes "pending" when the plaintiff files the complaint, "purported class member" could conceivably refer to the definition proposed by the plaintiff in the complaint, rather than the definition approved by the Court.  However, this Court approved Brayman's proposed definition without material alteration.  Thus, the Court need not decide whether "purported class member" refers to the definition proposed in the complaint or the definition approved by the Court.

arbitration agreement on the same day they accepted their employment offer letter. (*See* ECF No. 157-2 at 1–2.)

If "who worked as" means "who actually clocked in as" (KeyPoint's position), then the Pending Litigation Exception could never apply in these circumstances because there is no KeyPoint employee who works for KeyPoint in the relevant sense as of the date they sign the arbitration agreement. This results not from some clever manipulation of the litigation process by KeyPoint, but from Brayman's counsel's proposal of the language "who worked as," rather than "who had been hired to be" (Brayman's current interpretation).

"Who worked as" does not naturally embrace "who had been hired to be." Now that the parties have framed the dispute in this way, however, the Court finds it contrary to substantial justice to place the consequences of Brayman's counsel's lack of foresight on the potential collective action members. Accordingly, the Court will reformulate the collective action definition to embrace both those who worked as, and those who had been hired to be, Field Investigators, Background Investigators, or other positions with similar job duties within the relevant time frame.[2] Now the Court must determine that time frame.

**C.    "To Present"**

The Court never meant "to present" to mean November 1, 2018, the date of

---

[2] The Court recognizes KeyPoint's argument that persons who had not clocked any hours for KeyPoint could not possibly have become eligible for overtime. (ECF No. 157 at 8.) But the consent-to-join form requires the opt-in plaintiff to represent that, "[d]uring the past three years, there were occasions when I worked over 40 hours per week for KeyPoint Government Solutions as a field investigator, background investigator, or in a similar job title, and did not receive proper compensation for all of the overtime hours I worked." (ECF No. 155-1 at 4.) If this is not true as to any recipient of the collective action notice, that recipient cannot consent to join this action in good faith.

8

*Brayman I*. On the other hand, the Court rejected Brayman's proposal of a collective definition that remained open through entry of judgment.

The Court also acknowledges KeyPoint's argument that, logistically speaking, KeyPoint requires time to assemble contact information for transmittal to Brayman—meaning that, for example, the Court's original September 18, 2019 deadline to disclose contact information could not mean that KeyPoint was required to disclose every employee who fell within the collective action definition through and including September 18, 2019. (ECF No. 207 at 9 n.3.) And the Court acknowledges that, practically speaking, the opt-in period must have an end or the parties could never adequately prepare for the second step of the collective certification inquiry. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001).

Under the circumstances, the Court finds that September 18, 2019 should be the last day for which KeyPoint is required to disclose relevant contact information. When the Court originally set that deadline, KeyPoint could not have realistically disclosed information up through and including September 18, 2019, but almost three months have passed since then. The Court accordingly finds it appropriate to set that date as the cut-off of KeyPoint's disclosure obligation. The Court will reformulate the collective action definition accordingly.[3]

---

[3] KeyPoint argues that extending "to present" beyond November 1, 2018 is inequitable because it essentially penalizes KeyPoint for having brought a motion to reconsider *Brayman I*'s ruling regarding notice to those bound by arbitration agreements. (ECF No. 207 at 10.) In other words, if KeyPoint had stayed silent and this case had proceeded as normal after *Brayman I*, the cut-off date for disclosing contact information would have been November 1, 2018 or shortly thereafter. KeyPoint therefore feels that, in retrospect, it has been put "in a lose-lose situation: either forego a motion to reconsider and have a class larger than it should be, or move to reconsider and have a class larger than otherwise would have been." (*Id.*) But being ordered to disclose contact information regarding potential collective action members is just a procedural step in the notice process, not a "loss." If an employer has no good faith defense on the merits, the Court can see how the employer would *perceive* it as a loss if the strategy is to keep as

**D. Synthesis**

Accounting for what the Court has decided in this Order, and for the practical effect of the Court's ruling on equitable tolling, the conditionally certified collective action is hereby redefined as follows:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or another position with similar job duties, for Defendant KeyPoint Government Solutions Inc., at any time from April 6, 2015 to September 18, 2019, inclusive.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The parties' Joint Motion for Clarification of Scope of Notice List (ECF No. 157) is GRANTED in favor of Brayman;

2. Brayman's Motion to Enforce Court Order (ECF No. 198) is GRANTED;

3. No later than **January 3, 2020**, KeyPoint shall disclose to Brayman the relevant contact information, to the extent not previously disclosed, for persons within the redefined conditional collective action definition; and

4. No later than **January 17, 2020** Brayman shall cause copies of the Court-approved notice and consent-to-join forms (*see* ECF Nos. 155–56) to be sent by U.S. mail, and by e-mail if available, to the persons included on KeyPoint's most recent list. For clarity, Brayman is *not* authorized to send a notice and consent-to-join form to any person to whom such forms have already been transmitted once.

---

many potential collective action members in the dark as possible so the employer can limit the number of opt-in plaintiffs and then settle for a proportionally smaller sum. But the Court trusts that KeyPoint and its counsel are not violating their duties under Federal Rule of Civil Procedure 11 (among other authorities) by continuing to litigate without at least a colorable defense.

Dated this 16th day of December, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge