IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-cv-00550-WJM-NRN

RACHEL BRAYMAN, individually
and on behalf of all other similarly
situated individuals,

        Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS,
INC., a Delaware corporation,

        Defendant.

## DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S AMENDED OPPOSITION TO MOTION FOR RULE 23 CLASS CERTIFICATION

The Motion for Rule 23 Class Certification ("Motion") (ECF No. 336) filed by named Plaintiffs Adriana Ponce ("Ponce") and Dana McCarthy ("McCarthy") (including the members of the putative class, the "Plaintiffs") for unpaid wages for "off the clock" work, meal period violations, and rest break violations fails. Plaintiffs cannot show any common, unlawful policy of KeyPoint Government Solutions, Inc. ("KeyPoint") justifying class treatment, and marshal only anecdotal and discrepant evidence to support their California claims; in doing so establishing, ironically, that individualized issues predominate over common issues.

As a threshold matter, Plaintiffs' theory of an unlawful "off the clock" policy rests on assertions that Plaintiffs' *belief* that they were tasked with a "heavy workload" and held to KeyPoint's accuracy and timeliness performance standards forced employees to work unrecorded time. Individualized subjective and unsubstantiated perceptions do not a policy, or even an

inference of a policy, make, as the disparities in Plaintiffs' proffered evidence make clear. Further, Plaintiffs' assertions that KeyPoint should have known employees failed to report all their work time, notwithstanding KeyPoint's repeated and consistent directions to the contrary, do not stand up to even cursory scrutiny. Plaintiffs' evidence is purely anecdotal and should not be relied upon.

In its Motion for Decertification (ECF No. 332), KeyPoint demonstrated that employees understood nationwide that KeyPoint required them to record **all** time worked. Plaintiffs have not produced any evidence of an unwritten KeyPoint policy preventing or even discouraging them from reporting their hours accurately. KeyPoint also demonstrated that Plaintiffs' disparate explanations for why they individually chose to allegedly work off the clock preclude class treatment. Similarly, the California class overtime claims should not be certified under Rule 23.

Plaintiffs also seek certification of meal period and rest break class claims, and derivative wage statement and waiting time penalty claims under California law. However, KeyPoint's policies with respect to these claims were compliant with California law—which may explain why *Plaintiffs did not even submit those policies with their motion*. California meal period and rest break claims are generally **not** certified in the absence of an unlawful policy, and here, no unlawful policy exists. Remarkably, Plaintiffs' entire factual discussion of the meal period *and* rest break claims are combined *into a single sentence*. (ECF No. 336, p. 7.)  In the absence of any evidence of an unlawful policy or class-wide wrongdoing, Plaintiffs' class claims amount to anecdotes that vary by Plaintiff, which only underscores the impropriety of class treatment.

I.      FACTUAL BACKGROUND

A.      **KeyPoint's Investigators Were Required to Record Time Accurately.**

KeyPoint provides specialized investigative services to government agencies. (ECF No.

2

332 at 4.) KeyPoint's Field Investigators ("FIs") work remotely from their homes and are managed by Field Managers ("FMs"). (*Id.*) An FM oversees the performance of the FIs assigned to his or her area. (*Id.*) The 64 current Plaintiffs from California worked under the supervision of at least 15 different FMs. (Ex. A, ECF No. 343-1 at ¶ 4.)

The distribution of work assignments and requirement to report all time worked in California were consistent with the national practice. (*See* ECF No. 332, pp. 4-5.) Specifically, KeyPoint's written policies and practices unequivocally require all employees to record all hours worked. (ECF No. 332 at 6-8.) Plaintiffs affirmed their compliance with the timekeeping requirements. (*Id.* at 8-11.) Additionally, all FIs could arrange their schedule to take a meal or rest break in the middle of the day for non-work-related activities. (Ex. B, ECF No. 343-2 at 11-12 (63:23-64:20); Ex. C, ECF No. 343-3 at 8-9 (131:23-132:19).) The Handbook explicitly provides for meal periods and rest breaks in compliance with California law.[1] (*See* Ex S., ECF No. 332-19 at B-9 (pending Court permission to refile corrected exhibit per ECF No.357); Ex. D, ECF No. 343-4 at 11-13 (G-3).) KeyPoint required California FIs to certify the accuracy of their time entries, including meal periods and rest breaks.[2]

### B. KeyPoint Authorized and Permitted Meal Periods and Rest Breaks.

Plaintiffs' sole evidence to support their meal and rest break claims consists of nearly

---

[1] KeyPoint's California meal period policy provides for an uninterrupted unpaid meal period of at least 30 minutes in a workday over five hours, and a second uninterrupted unpaid meal period if they work more than 10 hours. (Ex. D, 343-4 at 11-13 at G-3.) The policy requires "uninterrupted and duty-free" meal periods, and FIs must notify supervisors of missed breaks. (*Id.*) The Handbook provides rest breaks, noting: "Field or other remote employees are responsible for scheduling and coordinating their day in a manner to allow them to take breaks in compliance with this policy." (*Id.*)

[2] FIs must certify the accuracy of their time sheets, meal and rest breaks. (Ex. V, ECF No. 332-22 at 2; Ex. B, ECF No. 343-2 at 2-3 (35:13-36:4), 5 (40:4-10), 7-8 (47:16-48:8); Ex. E, ECF No. 343-5 at 5 (62:3-20), 7-8 (102:20-103:19), 9 (108:1-17); Ex. F, ECF No. 343-6 at 3 (49:12-22).)

3

identical interrogatory responses bereft of key details but which still reveal disparate experiences. For example, putative class member Cracchiolo states that he took "an uninterrupted meal break of **60 minutes once per work day**," and **15-minute rest breaks.** (Ex. 58, ECF No. 336-15, pp. 78-79 (emphasis added).)[3] Though Plaintiffs' interrogatory responses all state in boilerplate fashion that "Defendant's heavy workload and unrealistic productivity expectations forced Plaintiff to miss legally required [meal/rest] periods," they leave salient details to the imagination. They do not state that *every* meal period or rest break missed was due to a "heavy workload." They do not state whether they *voluntarily* chose to skip breaks, and how often that occurred. Indeed, some putative class members contradicted their interrogatory responses during depositions. (Ex. F, ECF No. 343-6 at 9 (89:4-22) (admitting to receiving two rest breaks per day); Ex. C, ECF No. 343-3 at 8-9 (131:16-132:19) (admitting to daily taking care of children, cooking breakfast, and transporting children during work hours).) It is clear that KeyPoint both "permitted" meal periods and "authorized" rest breaks.

    **C. There Is No Common Proof Of Keypoint's Alleged Knowledge Of Off-The-Clock Work Or Missed Meal And Rest Breaks.**

In deposition, several California Plaintiffs admitted they never complained[4] about or reported "off-the-clock" work to anyone at KeyPoint, effectively concealing their unreported

---

[3] FI Jacob Caroll admits he took five meal periods per week but claims he did not take rest breaks, whereas Tyson Blair admits he took four rest breaks per week "during the two days per work week that he typically spent at home writing reports." (Ex. 58, ECF No. 336-15 p. 35.) Ponce claimed in her interrogatory responses that she did not take meal breaks and took only one rest break per day. (*Id.* at 215-216.) McCarthy claims that she did not take meal breaks, and took rest breaks "about 2 times per work week on days that she spent working on reports at home." (*Id.* at 171-172.)

[4] FI Natalie Mendez ironically complained about a **lack** of work but **not** off-the-clock work. (Ex. F, ECF No. 343-6 at 5 (52:15-19).)

overtime.[5] Yet the crux of Plaintiffs' case is that KeyPoint "should have known" of their off-the-clock work and missed meal and rest breaks. However, Plaintiffs and putative class members offer only speculation. (*E.g.,* Ex. F, ECF No. 343-6 at 4 (50:2-25); Ex. B, ECF No. 343-2 at 16-17 (103:23-104:1), 19 (106:2-9).). Plaintiff Ponce testified that she holds a vague belief that her claims are typical of others because "everybody was given too much work," but she admitted that she never raised the issue with KeyPoint and that others may have met KeyPoint's expectations and reported all of their time. (*Id.* at 17 (104:2-6).) When asked how KeyPoint would know about hours that she did not record, she testified, "**I don't know**." (*Id.* at 18-9 (105:20-106:9) (emphasis added).) FIs, all of whom are remote employees who set their own work schedules, also cannot prove that KeyPoint should have known about unreported hours through emails or calls outside of "normal" business hours. (ECF No. 332 p. 14.)

### D. No Representative Proof of Alleged Hours Worked or Damages Exists.

Plaintiffs' claims for unrecorded work time and meal and rest break violations cannot be proved by records because all relevant time reports confirm they *were* paid accurately and received breaks. Indeed, there are no records of the unreported overtime hours or missed breaks.[6]

In the absence of any records to establish their claims, Plaintiffs resort to speculation and conjecture, effectively conceding that the precise number of unreported hours cannot be calculated.

---

[5] Ex. GG, ECF No. 332-33 at 23 (78:7-21), 26-27 (87:21-88:2), 28 (93:1-8), 29-30 (95:18-96:11); Ex. E, ECF No. 343-5 at 3 (50:7-10), 4 (52:11-15), 6 (71:6-12); Ex. F. ECF No. 343-6 at 6-7 (54:22-55:2), 8 (57:7-10); Ex. B, ECF No. 343-2 at 9 (60:19-22), 10 (62:5-12), 15 (99:15-22), 16-17 (103:18-104:1); *see also* ECF No. 332 at pp 12-14.

[6] *See* Ex. GG, ECF No. 332-33 at 26 (87:3-15); Ex. E, ECF No. 343-5 at 10 (123:1-10); Ex. F, ECF No. 343-6 at 10 (93:3-21). Further, Plaintiff Ponce admitted that she created but has since destroyed records that could have helped determine the hours they claim to have worked. (Ex. B, ECF No. 343-2 at 6 (44:18-21), 13-14 (78:21-79:6).) *See also* ECF No. 332 at pp. 14-16.

(*E.g.*, Ex. GG, ECF No. 332-33 at 31 (101:8-19); Ex. B, ECF No. 343-2 at 19-20 (106:12-107:4).)[7] Accordingly, proof of the putative class members' off-the-clock work, or missed meal periods and rest breaks, will have to proceed employee-by-employee on an inherently individualized basis, setting up hundreds of "mini trials."

## II.  ANALYSIS

Rule 23(a) permits class certification only where Plaintiffs can show (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. District Courts must "conduct[] a 'rigorous analysis' . . . addressing the rule's requirements 'through findings,' regardless of whether these findings necessarily 'overlap with issues on the merits.'" *Vallario v. Vandehey*, 554 F.3d 1259, 1266-67 (10th Cir. 2009); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim").

Importantly, in *Dukes*, the Supreme Court held that Rule 23(a)(2)'s "commonality" requirement could not be satisfied simply by raising common questions, "even in droves." 564 U.S. at 350. Instead, a class action plaintiff must raise a common question that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* The class action plaintiff must establish such "commonality" through "***significant proof***." *Id.* at 353 (emphasis added).

"A party seeking class certification must affirmatively demonstrate his compliance with

---

[7] Nonetheless, Plaintiffs' counsel has attempted (in vain) to construct a calculation of solely "off-the-clock" damages based on Plaintiffs' interrogatory answers, or what Plaintiffs' counsel refers to as Plaintiffs' "good-faith estimate." Alexander Wise, a "Data Analytics Manager" employed by Plaintiffs' counsel, created a spreadsheet attributing a dollar amount in damages to each Plaintiff. (Ex. W, ECF No. 332-48 at 3-4 (8:24-9:3).) He did not perform any due diligence himself to determine if Plaintiffs' estimates are accurate. (*Id.* at 5-8 (16:11-18:16).) Notably, these damages do not include any calculation for meal and rest period violations because there is simply no way to make such calculations.

6

the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court may "probe behind the pleadings before coming to rest on the certification question." *Id. Dukes* thus "provides a forceful affirmation of a class action plaintiff's ***obligation to produce common proof of class-wide liability*** in order to justify class certification." *Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 2682967 at *5 (N.D. Cal. 2011) (emphasis added); *see also Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645 at *4-5 (C.D. Cal. 2018) (decertifying meal and rest period class).[8,9] Plaintiffs fail to meet these standards.

### A. Plaintiffs' Off-the-Clock Claim Is Not Based on an Unlawful Policy or Uniform Company-Directed Practice.

Plaintiffs cannot show any common issue of liability appropriate for classwide resolution "in one stroke," or that predominates over individual issues. *See* Rule 23(a)(2) and 23(b)(3); *see also Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 181 (D. Colo. 2016).

#### 1. There Was No Policy Requiring Off-The-Clock Work.

Under California wage law, class treatment of off-the-clock claims is generally untenable because the claim turns on whether the employer knew about it. *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007). Without "substantial evidence point[ing] to a uniform, companywide policy, proof of off-the-clock liability . . . ha[s] to continue in an employee-by-employee fashion" and class certification is not appropriate. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051-52 (2012) ("*Brinker*").

To establish an off-the-clock claim, Plaintiffs "must present substantial evidence of a

---

[8] Federal courts addressing California wage claims have reaffirmed "the impropriety of relying on representative testimony where plaintiffs have provided no reliable means of extrapolating that testimony to the class as a whole." *Cruz*, 2011 WL 2682967 at *5; *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011).
[9] Even if all Rule 23(a) prerequisites are met, Plaintiffs also must satisfy Rule 23(b)(3), which requires that common issues predominate over individual issues, and that a class action is the superior method of adjudicating the controversy.

7

common policy, plan, or scheme of permitting or requiring uncompensated off-the-clock work." *Reed v. Cty. of Orange*, 266 F.R.D. 446, 458 (C.D. Cal. 2010). Accordingly, "[a]n allegation of an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy or plan." *Id.*; *see also Braun v. Safeco Ins. Co. of Am.*, 2014 WL 9883831, at *14 (C.D. Cal. 2014); *Collins v. ITT Educ. Serv., Inc.*, 2013 WL 6925827, at *4–6 (S.D. Cal. 2013) ("[because] the only uniform policy Plaintiffs have shown is Defendant's written policy requiring employees to report all time worked (even if not pre-approved), and prohibiting off-the-clock work . . . Plaintiffs must establish that they were uniformly required to work overtime and not report it.").

Plaintiffs' argument is *not* that KeyPoint's written policies permitted off-the-clock work. Instead, Plaintiffs argue that the *effect* of KeyPoint's *lawful* policies was that employees failed to report all work time. Numerous courts have rejected this type of reasoning as insufficient evidence of a common policy, especially where employees *were* paid for overtime work.[10] *See, e.g., Koike v. Starbucks Corp.*, 2008 WL 7796650 at *7-8 (N.D. Cal. 2008), *aff'd*, 378 Fed. Appx. 659 (9th Cir. 2010) (rejecting claim that incentives to work off the clock proved the employer had knowledge of off-the-clock work); *Amey v. Cinemark USA Inc*, 2015 WL 2251504, at *12 (N.D. Cal. May 13, 2015) ("class certification is inappropriate when faced with similar arguments [in spite of employer policies against off-the-clock work]"); *Collins*, 2013 WL 6925827, at *4 (rejecting certification despite claim that "performance benchmarks are impossible to meet without working overtime"); *In re Bank of Am. Wage & Hour Emp. Litig.*, 286 F.R.D. 572, 590 (D. Kan.

---

[10] Ex. G, ECF No. 343-7 at ¶¶ 3-4, 5-567 (as indicated, all of these pages contain overtime payments).; Ex. C, ECF No. 343-3 at 3-7 (105:7-109:24). *Dudley v. Brookdale Senior Living Comms., Inc.*, 2015 WL 12426082 (C.D. Cal. Mar. 24, 2015) (denying class certification, noting overtime payments).

2012) ("individualized assessments would be required to determine whether in fact the [employer] is liable to each putative class member despite the alleged existence of an unofficial policy requiring off-the-clock work. Class treatment is simply not workable in this context.").[11]

*Amiri v. Cox Communs. Cal., LLC*, 272 F. Supp. 3d 1187 (C.D. Cal. 2017) is instructive on this point. There, faced – as here – with an employer's written policy prohibiting off-the-clock work, on the one hand, and plaintiff's "personal anecdotes" of uncompensated overtime, the court struck a California representative claim for off-the-clock work. *Id.* at 1197. The plaintiff could not prove that "*all*" the employees worked off the clock or that "their supervisors knew or should have known about it through common proof." *Id.* Further, "proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether [Defendant] knew or should have known of their work." *Id.*[12] Not only do Plaintiffs not present evidence of any unlawful California-wide directive, they also do not demonstrate a common practice regarding off-the-clock work. (ECF No. 332 pp. 11-12.)

### 2. Plaintiffs Fail to Establish a Uniform Practice of Off-The-Clock Work.

Anecdotal testimony -- all that has been offered by Plaintiffs here -- is insufficient for

---

[11] *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 349 (W.D.N.Y. 2011) ("claims were too highly individualized" where they "essentially concern the indirect *effect* of certain policies—as they were enforced or abused to varying degrees"); *see also Oldershaw v. DaVita HealthCare Partners, Inc.*, 2019 WL 427650, at *7 (D. Colo. Feb. 4, 2019) (decertifying FLSA nationwide collective action for failure to show uniform unlawful policy where plaintiffs merely pointed to "a vague 'culture' of suppressing overtime" and "understandings or atmospheres or inferences") (quotations omitted).

[12] Similarly, in *Flores v. CVS Pharmacy, Inc.*, 2010 WL 3656807 at *3-6 (C.D. Cal. 2010), the court rejected the argument that "corporate culture" warranted class treatment of an off-the-clock claim, reasoning that the employees' varying experiences demonstrated the individualized nature of the inquiry. The court in *Mateo v. V.F. Corp.*, 2009 WL 3561539 at *6 (N.D. Cal. 2009) also denied certification because the claims were based on "allegations of an unwritten practice, as opposed to a written policy, and therefore the putative class members would have to prove individual elements in order to show … liability."

"common proof" of a supervisor's knowledge of off-the-clock work. *Ortiz v. CVS Caremark* 2014 WL 1117614 at *4 (N.D. Cal. 2014) ("Proof of this claim would be unmanageable, and could not be done with statistical or survey evidence but only with detailed inquiries about each employee…and her manager's knowledge thereof."); *Amiri*, 272 F. Supp. 3d at 1197 (no common evidence could demonstrate supervisors knew or should have known about off-the-clock work).

Plaintiffs present no evidence they (or any putative class members) were ever explicitly instructed to clock out and continue working. Although some FIs allegedly interpreted supervisors' instructions not to work overtime as implicit direction to work unreported time, this is insufficient to warrant class certification. *See Kimoto v. McDonalds*, 2008 WL 4690536 at *7 (C.D. Cal. 2008); *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465 at *5 (C.D. Cal. 2006) (no certification where claims "will focus on each [employee's] own specific conversation with his specific manager or supervisor"). The question remains "how each employee interpreted the instruction." *Howard v. Gap, Inc.*, 2009 WL 3571984 at *5 (N.D. Cal. 2009) ("There was no common script. Each class member would have his or her own individual story to tell. This goes to liability, not damages. Clearly individual issues would overwhelm any common issues. This is a show stopper."); *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637-38 (N.D. Cal. 2010).

Accordingly, there is no commonality of practice, policy or process that would encompass or explain supervisors' alleged knowledge of off-the-clock work. As a result, class treatment remains inappropriate because "even if [the evidence] created an inference that [employees] would be inclined or incentivized to work off the clock, significant individual fact determinations would be required to establish that in fact this occurred for it does not follow that simply because [employees] had an incentive to work off the clock that they actually did so and that [the employer]

knew of such off-the-clock work." *Koike,* 2008 WL 7796650 at *8.

### B. Plaintiffs' Meal Period Claim Is Not Based on an Unlawful Meal Period Policy Or Unlawful Systematic Practice.

Preliminarily, KeyPoint notes Plaintiffs' counsel's statement to this Court at the March 6, 2020 hearing on their motion to amend, "if plaintiffs lose on their FLSA overtime claim, then the jury is saying these employees were paid for all hours worked. If they're paid for all hours worked, their wage statements are accurate, so there is no liability under that claim. They've been paid for their final wages due, no liability again. They've been paid for their meal and rest break periods under California law." Plaintiffs' counsel thus bound their meal period claim to their FLSA claim. Accordingly, to the extent class certification is denied on the FLSA claim, this entire motion should fail. Plaintiffs' California claims also should not be certified for the reasons set forth below.

#### 1. Plaintiffs Fail to Show a Uniform Policy Denying Meal Periods.

The California Supreme Court authored the seminal case on meal period claims in *Brinker*, 53 Cal. 4th at 1034. Under *Brinker*, "an employer must relieve the employee of all duty for the designated [meal] period, but need not ensure that the employee does no work." *Id.* In California, an employer is only required to *permit* its employees to take meal periods, not to "police" meal breaks and ensure that they are taken. *Id.* at 1038-40. Accordingly, to prevail on their meal period claim, Plaintiffs must establish through "significant proof" that Defendants had an illegal, systematic policy that prohibited them *and the proposed class* from taking meal periods. *See Brinker*, 53 Cal. 4th at 1051.

In *Brinker*, the California Supreme Court rejected "the view than an employer must ensure that no work is done during meal breaks." *Id.* at 1038. "[W]ork by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability

11

for premium pay under [the law]." *Id.* at 1040-41; *see also In re Bank of Am.*, 286 F.R.D. at 591-92. If an employee missed a meal period, individual inquiries are necessary to determine whether a meal period was "provided" that the employee chose not to take for personal reasons.

California federal courts have repeatedly held that this type of individualized analysis does not lend itself to class treatment.[13] Against this framework, Plaintiffs' evidence misses the mark. First, KeyPoint's meal period policies are plainly compliant with California law. Plaintiffs do not show a common "unwritten policy" because there is no evidence that supervisors interfered with FIs' meal periods. *See Kimoto*, 2008 WL 4690536 at *7 (whether a supervisor's "instruction could be viewed as the employer not 'providing' a meal break … is an individual question that cannot be resolved class wide"). Here, Plaintiffs again pivot to their "heavy workload" argument—*i.e.,* that the pressure of finishing their work required them to skip their meal periods. Tellingly, the entirety of Plaintiffs' evidence supporting their meal period claim is found in two footnotes citing to a 277-page set of interrogatory responses. Even those employees who alleged that they did not take all their meal periods did not claim that all the missed meal periods were due to factors outside their control. For example, putative class member Carroll paradoxically posited in an interrogatory response that he *did take* meal periods "about 5 times per week," but that his "heavy workload and unrealistic productivity expectations forced Plaintiff to miss legally required meal periods." (Ex. 58, ECF No. 336-15 pp. 69-70.) The latter sentence was plainly a copy-and-paste from the other 60 interrogatory responses in ECF No. 336-15, almost each of which includes that ***identical*** sentence, regardless of whether the employee indicated taking full meal periods on a regular

---

[13] *Dilts v. Penske Logistics, LLC*, 315 F.R.D. 591, 594 (S.D. Cal. 2016) (denying certification where "the opportunity and decision to take a timely meal break was dependent on facts unique to each employee and each shift"); *Brown v. Fed. Exp. Corp.,* 249 F.R.D. 580, 587 (C.D. Cal. 2008) (denying certification); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (same); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007) (same).

basis.[14] Accordingly, this sentence, as it appears in each interrogatory response, is wholly unreliable. Notably, there is no indication that *every* missed meal period was missed due to "workload."

Plainly, employees *could* take meal periods, and could even control their schedules to do so. Accordingly, under *Brinker*, each employee must be asked *why* he or she missed meal periods. *In re AutoZone, Inc., Wage and Hour Emp't Practices Litig.*, 289 F.R.D. 526, 542 (N.D. Cal. 2012), aff'd (9th Cir. 2019) (denying certification).[15] There is no evidence—none—that KeyPoint's performance metrics *required* employees to forgo breaks.

### 2. Individual Inquiries Predominate as to the Meal Period Claim.

As KeyPoint has a compliant written policy, there are various reasons why an employee may not have taken a break that do not result in liability. *See, e.g., Sultan v. Medtronic, Inc.,* 2012 WL 3042212, *2 (C.D. Cal. 2012) (denying certification of meal period claim because of possibility of varying reasons); *Brown*, 249 F.R.D. at 587 (plaintiff claimed "pressure" led to missed breaks, but "propose[d] no means of proving this claim on a class-wide basis"). Plaintiffs were consistently provided the opportunity to take meal periods, and often did so. This claim then cannot proceed on a class basis. (*See generally* Ex. 58, ECF No. 336-15.)[16]

If a class is certified, this Court must then engage in a host of individual inquiries to establish the circumstances surrounding each employee's meal period decisions, rendering a meal period class completely unmanageable. *See, e.g., Rai v. CVS Caremark Corp.*, 2013 WL 10178675

---

[14] Plaintiffs Timothy Benter and Christopher Peirce do not state they ever missed any meal periods. (Ex. 58, ECF No. 336-15 at 30, 210, .)
[15] Plaintiffs' argument also fails because a "heavy workload" will impact employees differently. *See Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (C.D. Cal. 2008) (being "in high-pressure jobs is not, by itself, sufficient to [establish liability]"); *Chavez v. Lumber-Liquidators, Inc.*, 2012 WL 1004850 at *8 (N.D. Cal. 2012).
[16] *Cole v. CRST, Inc.*, 317 F.R.D. 141, 145-46 (C.D. Cal. 2016); *In re AutoZone, Inc.*, 289 F.R.D. at 539.

13

at *9 (C.D. Cal. 2013) (declining certification because of need for individual inquiries). Plaintiffs consistently recorded meal periods by *certifying that they took them*, requiring an individualized inquiry as to why they falsified their time reports.

### C. Plaintiffs' Rest Break Claim Is Unsuitable For Class Treatment.

California's seminal *Brinker* case sets forth a similar standard for rest breaks. As with meal periods, "an employer is not required to make an employee take a rest break, it just must authorize the employee to do so." *Hernandez v. Sysco Corp.*, 2020 WL 533005 at *6 (N.D. Cal. 2020) (citing *Brinker*). KeyPoint's policy authorizes rest breaks at the rate required by California law.

Plaintiffs again hang this claim on the "heavy workload" theory rather than KeyPoint's lawful rest break policy. Indeed, KeyPoint's policies permit employees to take *longer* than ten-minute breaks if desired. (*See* Ex. 58, ECF No. 336-15 p. 79.) Plaintiffs' evidence establishes that employees were consistently provided compliant rest periods, even if employees sometimes chose to skip their breaks for unstated reasons. (*See generally* Ex. 58, ECF No. 336-15.) These facts preclude Plaintiffs from certifying their rest period claim on the "heavy workload" theory for the same reasons that theory fails for off-the-clock and meal period claims.[17] The "heavy workload" theory suffers from the notable flaw that individual performance and preferences varied. (ECF No. 332 p. 5.) Accordingly, to the extent that *the effect of* performance metrics can be considered analogous to a "common policy" regarding rest breaks, that nebulous "policy" is necessarily inconsistently applied, and therefore inappropriate for certification. (*See generally* Ex. 58, ECF No. 336-15 (plaintiffs took rest breaks at different intervals, and some never experienced

---

[17] Most authorities cited above as to meal period claims also addressed (and rejected certification of) rest break claims.

14

violations)[18].) *Murray v. Scelzi Enters.*, 2019 WL 6045146, *8-9 (E.D. Cal. 2019) (denying motion to certify rest break claim based on allegedly unlawful policy where it "was not uniformly applied"); *Ritenour v. Carrington Mortg. Servs., LLC*, 2018 WL 5858658 at *6-7 (C.D. Cal. 2018) (same); *see also Rai*, 2013 WL 10178675 at *8-9 (same).

### D. Plaintiffs' Derivative Claims Are Not Suitable For Class Treatment.

Plaintiffs' proposed waiting time and wage statement subclasses are entirely derivative of claims not suited for class treatment. *See, e.g., Delgado v. MarketSource, Inc.*, 2018 WL 6706041 at *7 (N.D. Cal. 2018) (willful finding under California Labor Code § 203 "would require individualized inquiries"); *Kimoto*, 2008 WL 4690536 at *7 (refusing to certify derivative wage statement claim when underlying meal and rest break claims were not certified). And, Plaintiffs have failed to submit a single inaccurate wage statement (let alone evidence of the inaccuracy). Plaintiffs have not justified certification of their wage statement claim.

Plaintiffs failed to support their requested certification of a California Labor Code Section 203 claim, which applies only to *willful* failure to pay employees all wages *at the time of termination*. Plaintiffs have submitted no information regarding how many employees were impacted and so have not satisfied the numerosity requirement. Rule 23(a)(1). Plaintiffs also have shown no method for showing *with common proof* KeyPoint's alleged "willful" failure to pay wages, as the claim hinges on individual supervisors' "knowledge" of off-the-clock work.

---

[18] Jamie Bartz, Megan Hagan, Adrienn Howard, Joseph Jaramillo, Christopher Magdael, Rebecca Mojarro, Julie Molina, Angelica Navarro, Michael O'Connor, Spencer Qattan, Diann Rowland, Marika Staton, and Donnie Thompson did not allege they *ever* missed rest breaks. (*See* Ex. 58, ECF No. 336-15 at 22, 105, 123, 127, 155, 184, 188, 192, 206, 219, 232, 249, 262. ) Hagan took three 10-minute rest breaks per day. (*Id.* at p. 105.) Many others took rest breaks once per day, or multiple times per week. (*See id.* at 22, 105, 123, 127, 155, 184, 188, 192, 206, 219, 232, 249, 262.)

### E. Plaintiffs Have Not Shown That Class Treatment is a Superior Method.[19]

Plaintiffs must show the "class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018); *see also Hanlon v. Dataproducts,* 150 F.3d 1011, 1023 (9th Cir. 1998). Importantly, if class members have to litigate "substantial separate issues" to recover individually, a class action is not "superior." *See Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1198 (9th Cir. 2001). Further, many FIs have arbitration agreements; and, any FI can file with the California Labor Commissioner *in an expedited hearing at no cost*. *See* Cal. Lab. Code § 98.[20] That would be superior to participating in a class action roughly 1,000 miles away.

### III. CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

---

[19] Plaintiffs are also not "typical" of the *entire* proposed class because they are not typical of class members who signed arbitration agreements. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 958-960 (N.D. Cal. 2017); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825 at *8 (N.D. Cal. Dec. 21, 2018).Some putative class members have arbitration agreements, whereas Plaintiffs do not. ( ECF No. 258-1 at ¶3). Plaintiffs' motion fails to define the class and the proposed class notice definition (Ex. 61, ECF No. 336-17 p. 5) does not carve out employees with arbitration agreements. As evidenced by the agreement roll out in October 2015, at minimum, any new employee in California from October 2015 through March 8, 2018 must arbitrate their claims. *See* ECF No. 149 ("[i]t would not be appropriate, therefore, to inform persons subject to the arbitration agreement that they have a right to join a collective action when they have prospectively waived that right.").

[20] *See also Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1131 (2013); *Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 253 (C.D. Cal. 2006).

Dated:  January 14, 2022     By:   *s/Margaret Parnell Hogan*
                                                Margaret Parnell Hogan
                                                Jennifer S. Harpole
                                                Michelle L. Gomez
                                                Thomas W. Carroll
                                                Danielle VanKatwyk
                                                LITTLER MENDELSON, P.C.
                                                1900 16th Street, Suite 800
                                                Denver, CO  80202
                                                Telephone:  303.629.6200
                                                Facsimile:  303.629.0200
                                                Email:  mphogan@littler.com
                                                          jharpole@littler.com
                                                          mgomez@littler.com
                                                          tcarroll@littler.com
                                                          dvankatwyk@littler.com

                                                Jacqueline E. Kalk
                                                LITTLER MENDELSON, P.C.
                                                80 South 8th Street, Suite 1300
                                                Minneapolis, MN  55402
                                                Tele:  (612) 313-7645
                                                Fax:  (612) 677-3139
                                                Email:  JKalk@littler.com

                                                Matthew J. Ruza
                                                LITTLER MENDELSON, P.C.
                                                321 North Clark Street, Suite 1000
                                                Chicago, IL 60654
                                                Telephone: 303.629.6200
                                                Facsimile: 303.629.0200
                                                Email: mruza@littler.com

                                                Steven Kaplan
                                                LITTLER MENDELSON, P.C.
                                                815 Connecticut Avenue, NW Suite 400
                                                Washington, DC 20006
                                                Telephone: 202.842.3400
                                                Facsimile: 202.842.0011
                                                Email: skaplan@littler.com

                                                ATTORNEYS FOR DEFENDANT KEYPOINT
                                                GOVERNMENT SOLUTIONS INC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of January, 2022, a true and correct copy of the foregoing **DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S AMENDED OPPOSITION TO MOTION FOR RULE 23 CLASS CERTIFICATION** was filed and served via CM/ECF on the following:

| | |
|---|---|
| Rachhana T. Srey<br>Caroline Elizabeth Bressman<br>H. Clara Coleman<br>Reena I. Desai<br>NICHOLS KASTER, PLLP<br>4600 IDS Center, 80 South 8th Street<br>Minneapolis, MN  55402<br>srey@nka.com<br>cbressman@nka.com<br>ccolemanb@nka.com<br>rdesai@nka.com | Daniel S. Brome<br>Matthew Helland<br>NICHOLS KASTER, PLLP<br>234 Montgomery Street, Suite 810<br>San Francisco, CA 94104<br>dbrome@nka.com |

Benjamin L. Davis, III
George E. Swegman
Kelly A. Burgy
THE LAW OFFICES OF PETER T. NICHOLL
36 South Charles Street, Suite 1700
Baltimore, MD  21201
bdavis@nicholllaw.com
gswegman@nicholllaw.com
kaburgy@nichollaw.com

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE FLSA COLLECTIVE CLASS

*s/Patricia Perez*_____<br>Patricia Perez

4863-9434-6505.1 / 097550-1001