UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-cv-00550-WJM-NRN

RACHEL BRAYMAN, DANA
McCARTHY, AND ADRIANA PONCE,
individually and on behalf of all other
similarly situated individuals,

       Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS
INC., a Delaware corporation,

       Defendant.

**AMENDED REPLY TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

**INTRODUCTION**

Defendant does not dispute the existence and uniform enforcement of its common policies and practices that resulted in Plaintiffs' unpaid overtime hours and missed meal and rest breaks; rather, Defendant simply argues that its uniform policies and practices are lawful by—ironically—relying on common evidence. But, this Court is not deciding whether Plaintiffs or Defendant will ultimately prevail. It is merely deciding whether Plaintiffs' claims should be tried on a class-wide, rather than individual, basis. Plaintiffs have established that they have satisfied the requirements of Rule 23, particularly that common questions predominate, making a class action, rather than hundreds of individual actions, the superior method for trying Plaintiffs' state law claims. Plaintiffs' motion should be granted.

**ARGUMENT**

**A.   Defendant Does Not Dispute Numerosity for All Claims Except Failure to Pay Final Wages Claim.**

Defendant's opposition does not dispute that numerosity is met for the unpaid overtime, meal and rest break, inaccurate wage statement, and unfair competition claims. Defendant only disputes whether the class is sufficiently numerous for Plaintiffs' failure to pay final wages claim. (*See* Def.'s Am. Br., ECF No. 358 at 15.) Numerosity for this claim is met with the same evidence as the other claims: each of the 63 California Opt-in Plaintiffs is a former employee who was not compensated for all overtime hours or for all missed meal and rest breaks with Defendant's knowledge and thus not paid all wages at the time of termination. (*See* Ex. 58, Cal. Pls.' Irog. Resp. No. 1, ECF No. 336-15 at 3-4, 8-9, 13-14, 17-18, 21-22, 25-26, 30-31, 34-35, 38-39, 43-44, 48-49, 53-54, 57-58, 61-62, 65-66, 69-70, 73-74, 78-79, 83-84, 87-88, 91-92, 95-96, 99-100, 104-05, 109-10, 114-15, 118-19, 122-23, 126-27, 130-31, 135-36, 139-40, 144-45, 149-50, 154-55, 159-60, 163-64, 167-68, 171-72, 175-76, 179-80, 183-84, 187-88, 191-92, 195-96, 200-01, 205-06,

1

209-10, 214-15, 218-19, 222-23, 227-28, 231-32, 235-36, 239-40, 243-44, 248-49, 253-54, 257-58, 261-62, 266-67, 270-71, 274-75.)

### B. Plaintiffs Have Shown that Common Questions Predominate.

The Tenth Circuit has held that the question to be decided on a class certification motion is not whether the defendant's policies are lawful or unlawful (that determination will later be made by a jury), but rather, whether a common question drives the resolution of the claims. *See Felps v. Mewbourne Oil Co.*, 336 F.R.D. 664, 672 (D.N.M. 2020) (finding that the court need not reach the merits of the common question of whether defendant's policies and practices established that plaintiffs worked more than 40 hours per week and whether management knew or should have known that they did so); *see also Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation omitted). Defendant's opposition ignoring this principle should be rejected.

#### 1. *Common Questions Predominate in Plaintiffs' Unpaid Overtime Claims*

Contrary to Defendant's argument, courts have certified unpaid overtime claims where there is representative evidence of company-wide policies and practices that effectively pressure plaintiffs to work unpaid overtime hours[1] and of the company's actual or constructive knowledge of the unpaid work.[2] *See, e.g.*, *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015)

---

[1] Defendant relies on *White v. Starbucks Corp.* on this point, but that case is inapposite because that decision involved a summary judgment motion against an individual plaintiff's claims, not a class certification motion. 497 F. Supp. 2d 1080 (N.D. Cal. 2007).

[2] Defendant misrepresented Plaintiff Ponce's testimony regarding its knowledge of her unpaid overtime hours. The cited deposition testimony does not ask how Defendant would have knowledge of her unpaid overtime hours, but instead, asked, "[H]ow was KeyPoint supposed to accurately include those hours that were not reported to them in the wage statement or in the pay stub" as it related to the inaccurate wage statement claim. Ex. 64, Ponce Dep. 106:5-9, ECF No. 347-2 at 37.

2

(finding that the question of whether defendant had an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours was capable of class-wide resolution); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165–66 (9th Cir. 2014) (finding that common questions related to defendant's unofficial policy of discouraging the reporting of overtime supported class certification); *Moore v. Int'l Cosmetics & Perfumes, Inc.*, 2016 WL 7644849, at *17 (C.D. Cal. Mar. 17, 2016) (finding that plaintiffs established common questions relating to defendant's policies and practices which effectively pressured employees to meet demanding sales quotas by working off-the-clock); *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 551 (E.D. Cal. 2010) (finding that whether enrollment counselors worked unpaid overtime hours and whether defendants had at least constructive knowledge of it were common questions suitable for class certification); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App.4th 1286, 1302–1303 (finding that whether plaintiffs worked unpaid overtime hours was not "impossible" in the absence of timesheets because plaintiffs could attest to the typical amount of overtime they worked each day and any such variation went to damages).

Similarly, Plaintiffs in this case may proceed as a class action because their claims are tied together by common policies and practices—Defendant's over-assignment of work and minimum performance expectations that drove Plaintiffs to underreport their hours worked. (*See* Pls.' Am. Mot., ECF No. 355 at 4–7 (citing Ex. 58, Cal. Pls.' Irog. Resp. No. 1, ECF No. 336-15 at 3, 8, 13, 17, 21, 25, 30, 34, 38, 43, 48, 53, 57, 61, 65, 69, 73, 78, 83, 87, 91, 95, 99, 104, 109, 114, 118, 122, 126, 130, 135, 139, 144, 149, 154, 159, 163, 167, 171, 175, 179, 183, 187, 191, 195, 200, 205, 209, 214, 218, 222, 227, 231, 235, 239, 243, 248, 253, 257, 261, 266, 270, 274 (stating Plaintiffs commonly worked for longer than 8 hours in a day and referencing common allegations that Plaintiffs regularly worked unpaid overtime hours to complete their workload and to keep up

3

with KeyPoint's production expectations and job requirements in Ex. 17); *see also* Ex. 17, Pls. J. McCormack & McElvene Irog. Resp. No. 1, ECF No. 336-8 at 1025-1027, 1040-1042 (same)).) Specifically, the minimum performance expectations were intertwined with the number of overtime hours recorded, because as the number of recorded hours increased, so did productivity expectations, which Defendant strictly enforced. (*See id.* (citing Ex. 19, ECF No. 334-7 at 3; Ex. 17, Pls. Cameron, Han, & Smith Irog. Resps. No. 1, ECF No. 336-8 at 246, 646, 1424-1425 (alleging common instructions from FMs that Plaintiffs' overtime requests would not be approved unless Plaintiffs exceeded minimum production expectation or that Plaintiffs' overtime requests were denied because Plaintiffs must complete regular workload within 40 hours); Ex. 17, Pls. Bautista, Benter, H. Brown, Cracchiolo, Dariso, Hagan, Jaramillo, Kilpatrick, Lewis, McCarthy, Molina, O'Connor, Qattan, & Thompson Irog. Resp. No. 1, ECF No. 336-8 at 92, 121, 202, 321, 350, 638-639, 775, 844, 904, 1018, 1103-1104, 1200, 1272-1273, 1497 (alleging that Plaintiffs were discouraged from reporting all hours worked because it would affect their source unit per hour statistics); Ex. 4, Mendez Dep. 37:18-38:13, ECF No. 336-5 at 110-111 (testifying that the more hours Plaintiff recorded, more production was required).) Defendant's argument that it must interrogate each Plaintiff about how they interpreted their FM's "instructions" does not predominate because the record demonstrates that the common policy directed FMs on how to treat overtime approval and lies at the core of Plaintiffs' claim. (*See id.* (citing Ex. 37, ECF No. 336-14 at 2 ("I'm OK if you work up to 5 hours of OT a week as long as your production supports it."); Ex. 32, ECF No. 334-12 at 2 ("Remember that [overtime] must remain productive."); Ex. 31, ECF No. 334-11 at 2 ("I want to remind everyone that overtime is not used to catch up! OT has the same source unit expectation as your normal work hours (.375 for level 1 investigators)."); Ex. 59, ECF No. 334-25 at 2 ("Let's make sure OT from this point forward is productive."); Ex. 17,

Pls. Arvizu, Bautista, Bland, Bradford, H. Brown, Buggs, Cracchiolo, Dariso, Hagan, Kilpatrick, Lewis, McCarthy, Molina, P. Norton, O'Connor, Qattan, Smith, Thomas, & Thompson Irog. Resp. No. 1, ECF No. 336-8 at 39, 93, 158, 203, 224, 321-322, 350, 639, 844, 903, 1018, 1104, 1192, 1200, 1272, 1424, 1490, 1497 (alleging that Plaintiffs did not record all of their overtime hours because their field managers would not approve all of the overtime hours needed).) Defendant does not dispute the company's uniform performance metrics or its enforcement of them.

Defendant misrepresents Plaintiffs' theory of liability as simply a "heavy workload" based on "purely anecdotal" and "subjective" evidence. As discussed in Plaintiffs' motion, Plaintiffs' claims are bound by the same policies and practices that resulted in unpaid work.[3] Again, Defendant's company-wide performance-based metric system encouraged or pressured them to underreport all of their hours worked, and the company enforced this system with real, not perceived, consequences, conditioned overtime approval on increased productivity, and disciplined or terminated Plaintiffs for failure to meet expectations. (*See* Pls.' Am. Mot., ECF No. 355 at 8–10 (citing Ex. 49, KeyPoint Progressive Counseling Policy, ECF No. 334-19 at 9, 13, 16; Ex. 2, Corp. Dep. 215:2-14, ECF No. 336-3 at 25; Exs. 53-54, Pls.' Discipline & Termination Documents, ECF No. 334-21 at 2, 5-6, 9, 12, 14, 17, 19, 22-23, 26, 30, 33, 36, 38-39, 43-44, 48-49, 53, 56, 58, 62, 66, 71, 74, 78, 80, 83, 86, 90 & ECF No. 334-22 at 2–47; *see also* Ex. 4, Blair Dep. 49:11-50:1, 52:5-53:1, ECF No. 336-5 at 26-29; Ex. 17, Pls. Arvizu, Benter, H. Brown, Hagan, Howard, Jaramillo, Koontz, McCarthy, & Molina Irog. Resp. No. 1, ECF No. 336-8 at 39, 121, 202-203, 638-639, 735, 775, 867, 1017, 1103-1104 (describing common pressure or threats

---

[3] Defendant also mischaracterizes Plaintiff Mendez's deposition testimony in an attempt to distinguish her claim from the class. Mendez testified that she complained to one of her FMs that she did not have enough work that would allow her to meet her minimum performance metrics within 40 hours, not that she did not have enough work assigned in general. Ex. 64, Mendez Dep. 37:18-40:13, 52:15-3, ECF No. 347-2 at 21-25.

from FMs to maintain minimum performance metrics or else face discipline or termination).) *Cf. Alberts v. Aurora Behav. Health Care*, 241 Cal.App.4th 388, 407 (2015) (finding that plaintiffs did not rely too much on anecdotal evidence because plaintiffs presented evidence of defendant's own practices, policies, and internal correspondence).

Finally, individualized differences in the number of unpaid overtime hours worked per week (i.e., damages) does not defeat class certification. *See Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1084 (D. Colo. 2016) ("The Tenth Circuit has observed, however, that individualized damages issues do not defeat class certification and class-wide proof is not required for all issues.") (quoting *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) (internal quotation marks omitted)); *see also Felps*, 336 F.R.D. at 672 (citing cases rejecting that commonality is defeated by individualized questions related to the number of unpaid overtime hours worked because those differences go to damages).[4] [5]

## 2. *Defendant's Legal Authority Is Inapplicable*

Defendant's cases are distinguishable. *Amiri v. Cox Comm'cns Cal., LLC*, 272 F. Supp. 3d 1187, 1192 (C.D. Cal. 2017) does not support Defendant's suggestion that every off-the-clock case needs to be decided on an individual basis. Instead, based on that case's particular factual record, the court simply reasoned that because the PAGA representative plaintiff only submitted evidence

---

[4] As explained in Plaintiffs' Opposition to Defendant's Motion for Decertification, Alexander Wide's spreadsheet is simply a summary using Defendant's voluminous payroll data and Plaintiffs' individual overtime estimates. (Pls.' Am. Br., ECF No. 360 at 26.) The spreadsheet does not contain information on the putative class's damages because despite repeated requests, Defendant has not provided information on the specific size of the putative class.

[5] Defendant's footnote about Plaintiff Ponce's "destruction" of records is misleading and implies she intentionally spoliated relevant evidence. As Ponce clearly explained in her deposition, she got rid of her daily planner when she ended her employment in October 2016 (and before she joined this action in October 2019). Ex. 64, Ponce Dep. 44:22-45:6, ECF No. 347-2 at 33-34; *see also* Consent Form, ECF No. 175.

of his individual, personal experiences of working off-the-clock and presented no common evidence of defendant's knowledge, his PAGA claims should be stricken. *Id.* at 1196.

*In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572 (D. Kan. 2012) is also distinguishable. There, defendant established an "FTE" (fulltime equivalent) hours budget and daily work schedule for a variety of workers at its banks. *Id.* at 581. Those plaintiffs failed to present common proof that would establish overtime violations; for instance, plaintiffs did not present any evidence of discipline or termination for failing to adhere to the FTE schedule, did not present common evidence that managers treated overtime in a similar way, and presented varying reasons for working unrecorded overtime that had nothing to do with the FTE scheduling system. *See id.* at 588–89. Unlike there, Plaintiffs here have demonstrated that Defendant's over-assignment of work and minimum performance expectations triggered discipline or termination for under-performers, guided FMs' treatment of overtime approval, led to the underreporting of overtime hours, and were directly influenced by the number of overtime hours that Plaintiffs recorded on their timesheets. (*See* Pls.' Am. Mot., ECF No. 355 at 4–10 (citing Ex. 49, KeyPoint Progressive Counseling Policy, ECF No. 334-19 at 9, 13, 16; Ex. 2, Corp. Dep. 215:2-14, ECF No. 336-3 at 25; Exs. 53-54, Pls.' Discipline & Termination Documents, ECF No. 334-21 at 2, 5-6, 9, 12, 14, 17, 19, 22-23, 26, 30, 33, 36, 38-39, 43-44, 48-49, 53, 56, 58, 62, 66, 71, 74, 78, 80, 83, 86, 90 & ECF No. 334-22 at 2–47; Ex. 4, Blair Dep. 49:11-50:1, 52:5-53:1, ECF No. 336-5 at 26-29; Ex. 17, Pls. Arvizu, Benter, H. Brown, Hagan, Howard, Jaramillo, Koontz, McCarthy, & Molina Irog. Resp. No. 1, ECF No. 336-8 at 39, 121, 202-203, 638-639, 735, 775, 867, 1017, 1103-1104 (describing common pressure or threats from FMs to maintain minimum performance metrics or else face discipline or termination); Ex. 37, ECF No. 336-14 at 2; Ex. 32, ECF No. 334-12 at 2; Ex. 31, ECF No. 334-11 at 2; Ex. 59, ECF No. 334-25 at 2; Ex. 17, Pls. Arvizu, Bautista,

7

Bland, Bradford, H. Brown, Buggs, Cracchiolo, Dariso, Hagan, Kilpatrick, Lewis, McCarthy, Molina, P. Norton, O'Connor, Qattan, Smith, Thomas, & Thompson Irog. Resp. No. 1, ECF No. 336-8 at 39, 93, 158, 203, 224, 321-322, 350, 639, 844, 903, 1018, 1104, 1192, 1200, 1272, 1424, 1490, 1497 (alleging that Plaintiffs did not record all of their overtime hours because their field managers would not approve all of the overtime hours needed); *see generally* Ex. 17, Pls.' Irog. Resp. No. 1, ECF No. 336-8 at 32, 39, 54, 61, 76, 92, 121, 144, 158, 172, 202, 224, 246, 254, 269, 321, 350, 374, 532, 586, 616, 638, 646, 706, 728, 735, 775, 789, 805, 844, 867, 903, 941, 957, 972, 987, 1017, 1025, 1040, 1063, 1079, 1095, 1103, 1139, 1185, 1192, 1200, 1237, 1244, 1272, 1280, 1295, 1372, 1379, 1387, 1431, 1452, 1483, 1490, 1497, 1514, 1552, 1581, 1610).)

*Koike v. Starbucks Corp.* is also inapposite. There, although the class representative alleged that defendant's business pressures forced him and others to work off-the-clock, the court determined that he intentionally hid his off-the-clock work and individualized questions regarding how supervisors exerted business pressure and handled overtime approval predominated. 2008 WL 7796650, at *2–4 (N.D. Cal. June 20, 2008). Again, here, Defendant's performance metrics and resultant overtime predominate over all else. *Accord Jimenez*, 2012 WL 1366052, at *18–19 (distinguishing *Koike* and finding the defendant's common policy discouraging overtime predominated over individualized issues concerning how supervisors enforced that policy).

### 3. *Common Question Predominate in the Meal and Rest Breaks Claims*

As a threshold matter, Defendant misstates its legal obligations to provide meal and rest breaks under California law. To explain, Defendant frames the relevant question as whether class members "*voluntarily* chose to skip breaks," which misstates Defendant's obligation "to relieve its employees of all duty" during meal and rest breaks. *Compare* Def.'s Am. Br., ECF No. 358 at 4 (emphasis in original), *with Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1017 (2012) *and Alberts*, 241 Cal.App.4th at 411 (reasoning that notwithstanding defendant's written policy

8

providing breaks, if defendant actually operated a scheme that rendered class members' ability to take breaks illusory, it cannot argue that individual issues predominate because some putative class members "chose" to forego meal and rest breaks).

More pertinent to this motion, Defendant misrepresents Plaintiffs' common evidence underlying the meal and rest break claims. Without any factual support, Defendant speculates that Plaintiffs must have missed breaks due to personal reasons that evade management as a class. The factual record, however, demonstrates that common questions abound and go to whether Defendant had a policy or practice to relieve putative class members of all duty during meal and rest breaks; whether Defendant had a policy or practice to relinquish control over their activities during such breaks; whether Defendant had a policy or practice to permit them a reasonable opportunity to take uninterrupted breaks; and whether Defendant's heavy workload and minimum performance expectations pressured putative class members to perform their duties in ways that omit breaks. (Ex. 58, Cal. Pls.' Irog. Resp. Nos. 2-3, ECF No. 336-15 at 3-4, 8-9, 13-14, 17-18, 21-22, 25-26, 30-31, 34-35, 38-39, 43-44, 48-49, 53-54, 57-58, 61-62, 65-66, 69-70, 73-74, 78-79, 83-84, 87-88, 91-92, 95-96, 99-100, 104-05, 109-10, 114-15, 118-19, 122-23, 126-27, 130-31, 135-36, 139-40, 144-45, 149-50, 154-55, 159-60, 163-64, 167-68, 171-72, 175-76, 179-80, 183-84, 187-88, 191-92, 195-96, 200-01, 205-06, 209-10, 214-15, 218-19, 222-23, 227-28, 231-32, 235-36, 239-40, 243-44, 248-49, 253-54, 257-58, 261-62, 266-67, 270-71, 274-75.) *See Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 441–42 (C.D. Cal. 2014); *see also Jaimez*, 181 Cal.App.4th at 1304 (describing common questions in missed break claim as whether plaintiffs were often not able to take required rest breaks, whether plaintiffs' delivery schedules made it difficult to complete their work and take all required rest breaks, and whether they received compensation for

9

missed rest breaks). All of these common questions can be answered on a class-wide basis in one fell swoop.[6]

Defendant incorrectly argues that some California Opt-in Plaintiffs took some breaks defeats class certification. Indeed, courts have reasoned that such a rule would prevent certification of virtually any wage and hour lawsuit. *See Alberts*, 241 Cal.App.4th at 407 (citing cases). Instead, whether some Plaintiffs were provided some breaks is a question for damages, or the extent of their harm. *See id.* at 408 ("[T]he fact that some employees may have taken some breaks is an issue that goes to damages. It is not a proper basis on which to deny certification."); *see also Brinker*, 53 Cal.4th at 1033 (requiring a class proponent to show a "consistent" application of a policy, *not* a universal or identical application).[7]

Finally, Defendant's argument that Plaintiffs merely proffer copy-and-paste interrogatory responses in support of their claims is false. Several California Opt-in Plaintiffs' deposition testimony confirms the common evidence that will establish Defendant's meal and rest break violations.[8] Moreover, Defendant's own records produced in discovery reflect the uniform,

---

[6] The cases Defendant relies on are distinguishable. In *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, the meal break claims were premised on plaintiffs' theory that defendant's policy violated California law because it did not require defendant to secure on-duty meal period agreements, which is not Plaintiffs' claim here. *See* 289 F.R.D. 526, 540 (N.D. Cal. 2012). In *Dilts v. Penske Logistics, LLC*, plaintiff delivery drivers merely argued that defendants failed to incorporate meal breaks into their pre-determined delivery schedules, not that they were prohibited or discouraged from taking meal breaks, and thus had no evidence of a common policy that resulted in missed meal breaks. 315 F.R.D. 591, 595 (S.D. Cal. 2016). In *Kimoto v. McDonald's Corps.*, 2008 WL 4690536, at *6–7 (C.D. Cal. 2008), commonality was not met where the plaintiff's theory that workers were too busy to receive a meaningful opportunity for a break was not uniform across managers and locations. Here, Defendant's company-wide performance metrics and enforcement of those metrics caused the underreporting.

[7] Defendant's critique of Plaintiff Carroll's interrogatory response misunderstands his claim; Plaintiff Carroll clearly stated that he typically could take his first meal break in a shift but typically was not provided a second meal break in a shift lasting more than 10 hours. (Ex. 58, ECF No. 336–15 at 69–70.)

[8] Ex. 64, McCarthy Dep. 84:21-88:18, ECF No. 347-2 at 9-13 (explaining that the demands of the job effectively forced Plaintiff to miss meal breaks); Ex. 64, Mendez Dep. 78:24-79:13, ECF No. 347-2 at 26-27 (explaining that Plaintiff missed her meal breaks because recording her actual work time during the missed break would have increased her minimum source unit per hour

company-wide assignment strategies and minimum performance expectations that resulted in the meal and rest break claims. (*See* Pls.' Am. Mot., ECF. 355 at 5–11 (citing Ex. 19, ECF No. 334-7 at 3; Ex. 37, ECF No. 336-14 at 2; Ex. 32, ECF No. 334-12 at 2; Ex. 31, ECF No. 334-11 at 2; Ex. 59, ECF No. 334-25 at 2; Exs. 53-54, Pls.' Discipline & Termination Documents, ECF No. 334-21 at 2, 5-6, 9, 12, 14, 17, 19, 22-23, 26, 30, 33, 36, 38-39, 43-44, 48-49, 53, 56, 58, 62, 66, 71, 74, 78, 80, 83, 86, 90 & ECF No. 334-22 at 2–47).) Regardless, at this juncture, the Court need only determine whether Plaintiffs have met their burden for class certification, not whether they prevail on liability. *See Shook*, 386 F.3d at 971.

### 4. *Common Questions Predominate in Plaintiffs' Inaccurate Wage Statement, Waiting Time, and Unfair Competition Claims*

Plaintiffs do not dispute that their inaccurate wage statement, waiting time, and unfair competition claims are derivative of their overtime and missed meal and rest break claims. (*See* Pls.' Am. Mot., ECF No. 355 at 17–18.) The Court should also certify these claims. *See DeLuca v. Farmers Ins. Exchange*, 2018 WL 1981393, at *11 (N.D. Cal. Feb. 27, 2018).

Defendant opposes certification of Plaintiffs' inaccurate wage statement claim because Plaintiffs "failed" to submit an inaccurate wage statement to their motion, or "evidence of the inaccuracy." (Def.'s Am. Br., ECF No. 358 at 15.) Again, Plaintiffs will prove this claim through the common evidence supporting their overtime and meal and rest break claims because the underpayment of hours naturally results in inaccurate wage statements. *See Adoma*, 270 F.R.D. at 553. Moreover, Defendant also opposes certification of Plaintiffs' waiting time claim because Plaintiffs have not showed common evidence of Defendant's "willful" failure to pay employees all wages at the time of termination. (Def.'s Am. Br., ECF No. 358 at 15.) Plaintiffs will provide

---

expectation); Ex. 64, Ponce Dep. 101:23-102:3, ECF No. 347-2 at 35-36 (explaining that the amount of work Plaintiff needed to complete effectively forced her to miss meal breaks).

the same common evidence used in establishing their overtime claims as for this derivative claim – the common evidence that Defendant knew or should have known that Plaintiffs worked unpaid overtime hours. *See Adoma*, 270 F.R.D. at 553 (certifying waiting time claim under plaintiffs' theory that they will demonstrate willfulness by showing that defendants had at least constructive knowledge of their unpaid overtime).

### C. Typicality Is Met.

Defendant argues that Plaintiffs McCarthy and Ponce are not typical of the entire proposed class because they do not have arbitration agreements, while other proposed class members may be subject to an arbitration agreement. But, the existence of arbitration agreements is not a reason to deny class certification and may be addressed in reviewing the class definition. *See Espinosa v. Genesis Healthcare, Inc.*, 2021 WL 2497938, at *7 (C.D. Cal. Mar. 31, 2021) (reasoning that arbitration agreements concern "the breadth of certification" rather than a complete bar to certification); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Plaintiffs propose the following class definition[9]:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or another position with similar job duties in the State of California for Defendant KeyPoint Government Solutions Inc. at any time from March 8, 2014 to present and who has not signed an arbitration agreement prior to March 8, 2018.[10]

This factor supports class certification.

---

[9] Defendant's proposed definition of "any new employee in California from October 2015 through March 8, 2018" is overly broad, as a new employee who started work between those dates could have rejected Defendant's arbitration agreement. *See Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (finding that the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence the agreement(s)).

[10] This Court previously ruled that as of March 8, 2018, there was a pending action and that the California claims subsequently added to the action fall within the Pending Litigation Exception of Defendant's arbitration agreement, meaning that putative class members who signed an agreement on or after March 8, 2018 could pursue their claims in court. (*See* Order, ECF No. 294 at 8.)

12

### D. Superiority Is Met.

Defendant's arguments disputing superiority do not address Rule 23(b)(3)'s factors and should be rejected. A class action is superior in this case because class members have not expressed a desire to control the litigation individually, particularly those class members with low damages. (*See* Pls.' Am. Mot., ECF No. 355 at 21 (citing cases).) Defendant's suggestion that class members pursue their claims with the California Labor Commission is an invalid reason to deny class certification, considering any class member may pursue an individual action by requesting exclusion from the class. *See* Fed. R. Civ. P. 23(c)(3) (requiring that a class action judgment exclude individuals who requested exclusion); *see also DeLuca v. Farmers Ins. Exchange*, 2018 WL 1981393, at *12 (N.D. Cal. Feb. 27, 2018) ("Litigation by class action has long been recognized as a superior method of resolving wage and hour claims in California.") (quoting *Martino v. Ecolab, Inc.*, 2016 WL 614477, at *10 (N.D. Cal. Feb. 16, 2016)).

### E. Defendant Does Not Dispute Adequacy of the Rule 23 Class Representatives or of Class Counsel and Does Not Take Issue with the Proposed Class Notice

Defendant did not dispute Plaintiffs' adequacy, and thus, the Court should find that this factor supports class certification. The Court should also approve Plaintiffs' proposed class notice.

### CONCLUSION

Because Plaintiffs have satisfied the requirements of Federal Rule 23, the Court should certify the Rule 23 California state law class.

Dated: January 24, 2022

*s/ Rachhana T. Srey*
Rachhana T. Srey
Caroline Elizabeth Bressman
Reena I. Desai
H. Clara Coleman
Daniel S. Brome
NICHOLS KASTER, PLLP
80 South 8th Street
IDS Center, Suite 4700
Minneapolis, MN 55402
Phone: 612-256-3264
Fax: 612-338-4878
srey@nka.com
cbressman@nka.com
desai@nka.com
ccoleman@nka.com
dbrome@nka.com

Benjamin L. Davis, III
George E. Swegman
THE LAW OFFICES OF PETER T. NICHOLL
36 South Charles Street, Suite 1700
Baltimore, MD 21201
bdavis@nicholllaw.com
gswegman@nicholllaw.com

*Attorneys for Plaintiffs*

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

I hereby certify that on     January 24, 2022     , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

mphogan@littler.com
jkalk@littler.com
jharpole@littler.com
tcarroll@littler.com
dvankatwyk@littler.com
mgomez@littler.com
cchristensen@littler.com

              s/Rachhana T. Srey
              **Rachhana T. Srey**
              **Caroline E. Bressman**
              NICHOLS KASTER, PLLP
              4700 IDS Center, 80 South 8th Street
              Minneapolis, MN 55402
              Telephone: (612) 256-3200
              Facsimile: (612) 215-6870
              Email: srey@nka.com
              cbressman@nka.com