THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-cv-00550-WJM-NRN

RACHEL BRAYMAN, DANA
McCARTHY, AND ADRIANA PONCE,
Individually and on behalf of all other
similarly situated individuals,

Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS
INC., a Delaware corporation,

Defendant.

**PLAINTIFFS' AMENDED REPLY IN SUPPORT OF MOTION FOR FINAL CERTIFICATION**

**INTRODUCTION**

Defendant's opposition suggests that trial on an individual, rather than a collective basis, would be more efficient, less burdensome on a jury, and more judicially economic. Defendant could not be more wrong. The U.S. Supreme Court long ago recognized the benefits of the FLSA's collective action mechanism on the judicial system, i.e., the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court also recognized the benefits to the plaintiffs, i.e., "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* Yet, Defendant boldly asks this Court to strip the judicial system and Plaintiffs of these benefits, claiming that a representative trial will deny it due process. As this Circuit and many others have recognized, a representative trial does no such thing when Plaintiffs are

1

"similarly situated" as they are here. For this and the reasons stated in Plaintiffs' opening memorandum and opposition to Defendant's decertification motion, the Court should grant final FLSA certification.

## ARGUMENT

**A.     All Plaintiffs Commonly Allege They Were Not Paid for All of Their Hours Worked.**

All Plaintiffs allege the same thing: that they worked more hours than what they were paid and that KeyPoint's minimum performance metrics caused them to underreport their hours, denying them overtime pay as required by the FLSA.[1] (*See* Pls.' Am. Mot., ECF No. 356 at 11–21 (citing Ex. 2, Corp. Dep. 63:5-18, ECF No. 335-3 at 15; Ex. 3, Haabestad Dep. 27:14-22, ECF No. 335-4 at 26; Ex. 3, Egan Dep. 32:24-33:6, ECF No. 335-4 at 16-17; Ex. 10, ECF No. 334 at 8; Ex. 17, Pls.' Irog. Resps. No. 1, ECF No. 335-11 at 3, 10, 18, 25, 32, 39, 47, 54, 61, 68, 76, 84, 92, 99, 106, 114, 121, 128, 136, 144, 151, 158, 165, 172, 179, 187, 195, 202, 210, 217, 224, 232, 239, 246, 254, 262, 269, 276, 284, 291, 298, 305, 313, 321, 328, 336, 343, 350, 358, 366, 374, 381, 389, 397, 404, 412, 419, 427, 435, 443, 451, 458, 465, 472, 480, 487, 495, 502, 509, 516, 524, 532, 540, 548, 556, 564, 571, 579, 586, 593, 600, 608, 616, 623, 630, 638, 646, 653, 660, 667, 674, 682, 690, 698, 706, 713, 720, 728, 735, 743, 751, 759, 767, 775, 782, 789, 797, 805, 813, 820, 828, 836, 844, 852, 859, 867, 874, 881, 889, 896, 903, 910, 918, 925, 933, 941, 949, 957, 965, 972, 980, 987, 994, 1002, 1010, 1017, 1025, 1032, 1040, 1048, 1055, 1063, 1071, 1079, 1088, 1095, 1103, 1110, 1117, 1124, 1131, 1139, 1147, 1155, 1163, 1171, 1178, 1185, 1192, 1200, 1207, 1214, 1221, 1229, 1237, 1244, 1251, 1258, 1265, 1272, 1280, 1287, 1295, 1303, 1310, 1318,

---

[1] Defendant asserts that Plaintiffs misrepresent the number of Plaintiffs subject to discipline and termination in Exs. 53 and 54, filed at ECF Nos. 334–21 and 334–22. Plaintiffs' counsel has discovered an error with those exhibits and refers the Court to newly filed Exhibits 53, ECF No. 350-2 and Ex. 54, ECF No. 350-3 attached here which reflect at least 61 Plaintiffs disciplined and at least 41 Plaintiffs terminated for failing to meet performance expectations.

1326, 1334, 1341, 1349, 1356, 1364, 1372, 1379, 1387, 1395, 1402, 1409, 1417, 1424, 1431, 1438, 1445, 1452, 1459, 1467, 1475, 1483, 1490, 1497, 1505, 1514, 1522, 1529, 1536, 1544, 1552, 1559, 1566, 1573, 1581, 1588, 1596, 1603, 1610, 1617); Pls.' Am. Opp. to Decert. Mot., ECF No. 360 at 4–15 (citing Ex. 18, ECF No. 335-12 at 5; Ex. 28, ECF No. 334-10 at 2; Ex. 29, ECF No. 335-19 at 2; Ex. 30, ECF No. 335-20 at 2; Ex. 31, ECF No. 334-11 at 2; Ex. 32, ECF No. 334-12 at 2; Ex. 33, ECF No. 335-21 at 2; *see also* Exs. 34-39, ECF No. 334-13 at 2, ECF No. 335-22 at 4, ECF No. 335-23 at 2, ECF No. 335-24 at 2, ECF No. 335-25 at 2, ECF No. 335-26 at 2; Ex. 17, Pls. Irog. Resps. No. 1, ECF No. 335-11 at 187, 246, 398, 443, 472-73, 502, 509, 600, 630-31, 646, 698, 949, 1155-56, 1356-57, 1424-25, 1529-30, 1536, 1573-74 (multiple Plaintiffs alleging pressure to underreport overtime hours and common instructions from FMs that overtime requests would not be approved unless Plaintiffs exceeded minimum production expectation or that Plaintiffs' overtime requests were denied because Plaintiffs must complete regular workload within 40 hours).) Importantly, all Plaintiffs worked for Defendant as field investigators, performing the same duties, working similar schedules, and subject to that same common thing (minimum performance metrics) that drove their unpaid work.[2] (*See id.* (citing Ex. 1, ECF No. 335-2 at 2, 5, 8; Ex. 2, Corp. Dep. 77:18-78:4, ECF No. 335-3 at 16-17 (stating that there is nothing

---

[2] As previewed in Plaintiffs' Motion for Final Certification, *Oldershaw v. DaVita Healthcare Partners, Inc.* is inapposite because plaintiffs failed to present a theory that unified their claims across locations and across managers; rather, plaintiffs in that case posited a vague theory that defendant's budgeting of overtime suppressed accurate time recording. 2019 WL 427650, at *5–8 (D. Colo. Feb. 4, 2019). On the flip side, in this case, KeyPoint's uniform assignment of work strategy and minimum performance metrics caused off-the-clock work, unify their claims across locations and managers. Defendant's other cited cases, *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), *Avendano v. Averus, Inc.*, 2015 WL 1529354 (D. Colo. Mar. 31, 2014), and *West v. Verizon Commc'ns, Inc.*, 2009 WL 2999181 (M.D. Fla. July 29, 2009), are all inapposite because in those cases, unlike here, there were substantial factual disparities between the plaintiffs. (*See* Pls.' Am. Mot., ECF No. 356 at 4–21; Pls.' Am. Opp. to Def.'s Mot. for Decert., ECF No. 360 at 2–3.) Finally, the court in *Smith v. Micron Elec., Inc.* determined that plaintiffs failed to show a common policy permitting off-the-clock work where their evidence relied on a handful of instructions to not record more than a certain number of overtime hours untethered to any unifying thread. Here, all Plaintiffs testified that the minimum performance expectations drove their unpaid overtime. 2005 WL 5336571, at *2 (D. Id. Feb. 4, 2005).

individualized about the job description); Ex. 3, Pe Dep. 122:9-14, ECF No. 335-4 at 72, Ex. 3, Haabestad Dep. 27:14-22, ECF No. 335-4 at 26 (describing that the same job description is used for all investigator positions, regardless of government contract); Ex. 19, ECF No. 334-7 at 2-3; Ex. 17, Pls.' Irog. Resps. No. 2, ECF No. 335-11 at 5, 11-12, 20, 27, 34, 40-41, 48-49, 55-56, 63, 70, 78, 85-86, 94, 100-01, 109, 115-16, 122-23, 129-30, 138, 146, 153, 159-60, 167, 173-74, 181, 189, 197, 204, 211-12, 219, 226, 234, 240-41, 247-48, 255-56, 264, 270-71, 278, 286, 292-93, 300, 307, 315, 323, 330, 337-38, 345, 351-52, 360, 368, 376, 382-83, 391, 399-400, 405-06, 414, 421, 429, 437, 445, 453, 459-60, 467, 474, 482, 489, 496-97, 503-04, 511, 518, 525-26, 533-34, 541-42, 549-50, 558, 565-66, 572-73, 581, 587-88, 594-95, 601-02, 610, 617-18, 624-25, 632, 640, 648, 655, 662, 669, 675-76, 684-85, 692-93, 700, 708, 714-15, 721-22, 730, 737, 744-45, 753, 761, 768-69, 777, 784, 790-91, 798-99, 806-07, 815-16, 822, 830, 837-38, 846, 854-55, 860-61, 868-69, 875-76, 882-83, 891, 897-98, 905-06, 912, 920, 927, 934-35, 942-43, 951, 959, 966-67, 974-75, 982-83, 989, 996, 1003-04, 1012, 1019, 1027, 1033-34, 1042, 1049-50, 1056-57, 1065, 1073, 1081-82, 1089, 1096-97, 1105, 1111-12, 1118-19, 1126, 1133, 1141, 1149, 1157, 1165-66, 1172-73, 1179-80, 1187, 1193-94, 1202, 1209, 1215-16, 1223-24, 1231, 1239, 1246, 1253, 1260, 1267, 1274, 1282-83, 1289, 1297, 1304-05, 1311-12, 1320, 1328, 1335-36, 1342-43, 1351-52, 1358, 1366, 1373-74, 1380-81, 1388-89, 1397, 1404, 1410-11, 1419, 1426, 1433, 1439-40, 1447, 1454, 1461, 1469, 1477, 1485, 1491-92, 1498-99, 1507-08, 1516, 1524, 1531, 1538, 1546-47, 1554, 1561, 1567-68, 1575, 1583, 1589-90, 1597-98, 1605, 1612, 1618-19 (describing similar work schedules); Ex. 17, Pls.' Irog. Resps. No. 1, ECF No. 335-11 at 3, 10, 18, 25, 32, 39, 47, 54, 61, 68, 76, 84, 92, 99, 106, 114, 121, 128, 136, 144, 151, 158, 165, 172, 179, 187, 195, 202, 210, 217, 224, 232, 239, 246, 254, 262, 269, 276, 284, 291, 298, 305, 313, 321, 328, 336, 343, 350, 358, 366, 374, 381, 389, 397, 404, 412, 419, 427, 435, 443, 451, 458, 465, 472, 480, 487, 495,

4

502, 509, 516, 524, 532, 540, 548, 556, 564, 571, 579, 586, 593, 600, 608, 616, 623, 630, 638, 646, 653, 660, 667, 674, 682, 690, 698, 706, 713, 720, 728, 735, 743, 751, 759, 767, 775, 782, 789, 797, 805, 813, 820, 828, 836, 844, 852, 859, 867, 874, 881, 889, 896, 903, 910, 918, 925, 933, 941, 949, 957, 965, 972, 980, 987, 994, 1002, 1010, 1017, 1025, 1032, 1040, 1048, 1055, 1063, 1071, 1079, 1088, 1095, 1103, 1110, 1117, 1124, 1131, 1139, 1147, 1155, 1163, 1171, 1178, 1185, 1192, 1200, 1207, 1214, 1221, 1229, 1237, 1244, 1251, 1258, 1265, 1272, 1280, 1287, 1295, 1303, 1310, 1318, 1326, 1334, 1341, 1349, 1356, 1364, 1372, 1379, 1387, 1395, 1402, 1409, 1417, 1424, 1431, 1438, 1445, 1452, 1459, 1467, 1475, 1483, 1490, 1497, 1505, 1514, 1522, 1529, 1536, 1544, 1552, 1559, 1566, 1573, 1581, 1588, 1596, 1603, 1610, 1617 (stating similar reasons for working unpaid overtime hours).) Indeed, each Plaintiff identified the same reason for not recording their overtime hours. (*See* Ex. 17, Pls.' Irog. Resps. No. 1, ECF No. 335-11 at 3, 10, 18, 25, 32, 39, 47, 54, 61, 68, 76, 84, 92, 99, 106, 114, 121, 128, 136, 144, 151, 158, 165, 172, 179, 187, 195, 202, 210, 217, 224, 232, 239, 246, 254, 262, 269, 276, 284, 291, 298, 305, 313, 321, 328, 336, 343, 350, 358, 366, 374, 381, 389, 397, 404, 412, 419, 427, 435, 443, 451, 458, 465, 472, 480, 487, 495, 502, 509, 516, 524, 532, 540, 548, 556, 564, 571, 579, 586, 593, 600, 608, 616, 623, 630, 638, 646, 653, 660, 667, 674, 682, 690, 698, 706, 713, 720, 728, 735, 743, 751, 759, 767, 775, 782, 789, 797, 805, 813, 820, 828, 836, 844, 852, 859, 867, 874, 881, 889, 896, 903, 910, 918, 925, 933, 941, 949, 957, 965, 972, 980, 987, 994, 1002, 1010, 1017, 1025, 1032, 1040, 1048, 1055, 1063, 1071, 1079, 1088, 1095, 1103, 1110, 1117, 1124, 1131, 1139, 1147, 1155, 1163, 1171, 1178, 1185, 1192, 1200, 1207, 1214, 1221, 1229, 1237, 1244, 1251, 1258, 1265, 1272, 1280, 1287, 1295, 1303, 1310, 1318, 1326, 1334, 1341, 1349, 1356, 1364, 1372, 1379, 1387, 1395, 1402, 1409, 1417, 1424, 1431, 1438, 1445, 1452, 1459, 1467, 1475, 1483, 1490, 1497, 1505, 1514, 1522, 1529, 1536, 1544, 1552, 1559, 1566, 1573, 1581, 1588, 1596, 1603, 1610, 1617  (stating

they regularly worked unpaid overtime hours to complete their workload and to keep up with Defendant's unrealistic production expectations and job requirements).)

Defendant's opposition argues that Plaintiffs should not be permitted to proceed collectively because they have not proven that the common practice of imposing unrealistic performance metrics that resulted in off-the-clock work is *unlawful*. But, whether Defendant broke the law is not a question presently before this Court. Rather, the instant motion asks the Court to permit Plaintiffs to proceed to trial as a representative collective, not to decide the merits of their underlying claims. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1107 (10th Cir. 2001) (finding that district court abused direction in decertifying ADEA collective in part because the court made findings related to the merits of plaintiffs' individual claims rather than determining whether plaintiffs were similarly situated). Defendant ignores the pertinent "similarly situated" standard at this juncture, and the Court should accordingly reject Defendant's argument.

## B.     Trial Should Proceed on a Representative Basis.

### 1.     Representative Proof May Be Used to Establish Liability and Damages.

Because Plaintiffs are similarly situated in material ways as described above, their claims should be tried on a representative basis for both liability and damages.[3] Indeed, federal courts across the country have adopted the use of representative proof for liability and damages purposes. *See Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983) (confirming that not all injured employees need to testify to establish a prima facie case as a matter of just and reasonable inference); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1307 (10th Cir. 2014) (finding

---

[3] Defendant's note that it has not "conceded" that any representative proof of liability or damages exists in this lawsuit is irrelevant because if this Court concludes that Plaintiffs are in fact similarly situated (as it should), "the collective-action framework presumes that *similarly situated employees are representative of each other* and have the ability to proceed to trial collectively." *See Snively v. Peak Pressure Control, LLC*, 347 F. Supp. 3d 294, 298 (W.D. Tex. 2018) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017)) (emphasis in original).

that plaintiffs did not need to individualize proof of under-compensation after final certification and that the jury could reasonably rely on representative evidence to determine class-wide liability);[4] *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017), *cert. denied*, -- U.S.---, 138 S. Ct. 980 (2018) (relying on *Donovan* and *Garcia* and acknowledging that "[i]n FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted"); *Morgan v. Family Dollar*, 551 F.3d 1233, 1278-79 (11th Cir. 2008), *cert denied*, 130 S. Ct. 59 (2009) (holding that "[i]f anything, the *Mt. Clemens* line of cases affirms the general rule that not all employees have to testify to prove overtime violations"); *Reich v. S. New England Telecomm'cns Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) ("[I]t is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA."); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) ("It is not necessary for every single employee to testify in order to prove violations or recoup back wages. They testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations."); *McLaughlin v. Hot Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (finding that the non-testifying employees established a prima facie case that they had worked unreported hours through the testimony of five plaintiffs); *Donovan v. Bel-Loc Finer*, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would

---

[4] Defendant's attempt to distinguish *Donovan* and *Garcia* fail. (Def.'s Am. Opp'n, ECF No. 359 at 24-25.) First, *Donovan is not* a donning and doffing case as it claims. 725 F.2d at 84. Second, *Donovan* specifically rejects Defendant's suggestion that representative evidence is only appropriate in cases where the off-the-clock work is performed at one plant or facility or entails the same or similar tasks that took the same or similar time periods. Indeed, *Donovan* specifically noted, "[t]he [the defendant] asserts that the rule that the use of representative testimony can establish a pattern of violations is limited to situations where the employees leave a central location together at the beginning of a work day, work together during the day, and report back to the central location at the end of the day. This rule is not supported by caselaw." *Id.* at 86. Like here, *Donovan* and *Garcia* are both cases are off-the-clock cases where defendants failed to keep accurate records of all hours worked, where workers alleged they were not paid for all hours worked, where workers shared the same core job duties, and where despite variance in unpaid overtime hours, the courts found representative evidence for liability and damages appropriate.

thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens Pottery*).

Additionally, contrary to Defendant's claim, the FLSA's similarly situated standard does not require any plaintiff to have personal knowledge of any other plaintiff's personal work habits or work hours to proceed collectively. *Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 831 (W.D. Tex. 2015) (rejecting the defendant's position that testifying employees can only be "fairly representational" of non-testifying employees if the testifying employees have personal knowledge of the hours worked by the non-testifying employees).[5]

### 2. Plaintiffs' Trial Plan Does Not Prejudice or Violate Defendant's Due Process Rights.

Plaintiffs' trial plan in this case largely mirrors the approved FLSA collective trial plan in *Monroe v. FTS USA, LLC*—an off-the-clock case involving 296 cable installers who worked remotely in the field—which Defendant ignores. *See Monroe*, 860 F.3d at 389.[6] Like in *Monroe*,

---

[5] The *Clark* court correctly noted that "[a]ccepting the defendant's interpretation would mean in all FLSA collective actions where the plaintiff-employees worked alone or had limited contact with one another, all of the plaintiffs would be required to testify in order to establish hours worked, as none or few of them would have personal knowledge of each other's hours. That is not the law." *Id.*

[6] The *Monroe* plaintiffs withstood the defendants' wholesale attacks on the jury's verdict, the plaintiffs' trial methodology, and the FLSA's collective-action mechanism itself. The defendants appealed the plaintiffs' use of representative evidence to the Sixth Circuit, lost the appeal, *see Monroe v. FTS USA, LLC*, 815 F.3d 1000 (6th Cir. 2016), petitioned for *en banc* review, lost again, and ultimately sought a writ of certiorari to the U.S. Supreme Court, principally arguing review was warranted because of the Sixth Circuit's holding on representative litigation. *Monroe v. FTS USA, LLC*, No. 16-204, 2016 WL 4363500 (Aug. 12, 2016). On December 12, 2016, the Supreme Court granted the writ, vacated the judgment, and remanded the case back to the Sixth Circuit for further consideration in light of *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), which was decided after the Sixth Circuit's March 2, 2016 decision. *FTS USA, LLC v. Monroe*, 137 S. Ct. 590 (2016). After supplemental briefing on the impact of *Tyson*, the Sixth Circuit issued its second opinion on June 21, 2017, stating, "[u]pon reconsideration, we find that *Tyson* does not compel a different resolution; instead *Tyson*'s ratification of the *Mt. Clemens* legal framework and validation of the use of representative evidence support our original decision." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 393 (6th Cir. 2017). Thereafter, the defendants again filed a petition for rehearing *en banc*, which was again denied, and filed a second petition for writ of certiorari to the Supreme Court, which was also denied. Pet. For *En Banc* Rehearing, *Monroe v. FTS USA, LLC*, No. 14-6063 (6th Cir. July 3, 2017), ECF No. 79 & Order Denying Pet., *Monroe v. FTS USA, LLC*, No. 14-6063 (6th Cir. July 28, 2017), ECF No. 80.

here, Plaintiffs will present evidence from up to 25 testifying representative Plaintiffs (all of whom Defendant deposed) who will, among other topics, testify about their employment experiences as a field investigator, their unpaid overtime claims, complaints they made about their workload and Defendant's unrealistic metrics, and how many unrecorded hours they estimate working on average during a normal workweek.[7] Plaintiffs will also present other common evidence including evidence from other corporate and management witnesses and documentary and electronic evidence. And, while Plaintiffs believe that 25 testifying representative Plaintiffs is sufficient, if the Court believes otherwise, then it can exercise its managerial discretion and require Plaintiffs to call more, or conversely call fewer if, after hearing testimony from some, the Court determines that 25 is too many. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence.").[8] That Plaintiffs noted this Court's trial management discretion in their final certification motion does not "effectively concede[s] that no testimony is representative."

Further, that Plaintiffs worked varying amounts of unrecorded hours does not preclude representative proof despite Defendant's contention otherwise. (*See* Def.'s Am. Br., ECF No. 359

---

[7] Defendant suggests that Plaintiffs may only prove knowledge through direct evidence of complaints about working "off-the-clock," but knowledge may be inferred and the jury will be instructed about circumstantial evidence. *See Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 995 (W.D. Tenn. 2011) (squarely rejecting defendants' contention that decertification is warranted because the question of whether they had actual or constructive knowledge through general awareness of the types of practices that the plaintiffs allege were used to deny them overtime and defendants were free to present proof they deemed appropriate to support their position that they were unaware of any of the violations the plaintiffs allege).

[8] There is no requirement for the number or percentage of plaintiffs who must testimony in an FLSA collective, but rather, courts look to the quality of the testimony rather than the quantity. *Clark v. Centene Co. of Tex.*, 104 F. Supp. 3d 813, 831–32 (W.D. Tex. 2015) (finding that a court's focus is not on the number of testifying plaintiffs in isolation but rather whether the evidence is sufficient to show the amount and extent of uncompensated work as a matter of just and reasonable inference) (citing *Mt. Clemens*) (internal quotations omitted); *see also Takacs v. Hahn Auto Corp.*, 1999 WL 33127976, at *2 (S.D. Ohio Jan. 25, 1999) (stating that representativeness is a "function not of quantity but of quality") (citing *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991) and *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 68 (2d Cir. 1997)).

at 23–24.) And while Defendant relies on *Mt. Clemens* to support its position that hours cannot vary for a representative trial, the plaintiffs' unpaid time in *Mt. Clemens* did vary significantly, ranging from thirty seconds to eight minutes—a variance of 1500%. *Mt. Clemens Pottery Co. v. Anderson*, 149 F.2d 461, 461-62 (6th Cir. 1945). Here, the range Defendant highlights in its opposition varies by only 100%. (*See* Def.'s Am. Opp'n, ECF No. 359 at 7-8.)

What is more, a representative trial will not deprive Defendant of its due process rights because there is no right to cross examine every plaintiff in an FLSA collective action, Defendant will have the opportunity to cross-exam each of the testifying Plaintiffs about their claim for unpaid overtime hours and their hours worked, and Defendant may present evidence related to its common defense that Plaintiffs did not work unpaid overtime and that it did not know about any unpaid overtime hours for any Plaintiff. *See, e.g.*, *Monroe*, 860 F.3d at 404-405 (rejecting the defendants' claimed right to examine and raise defenses separately against each of the opt-in plaintiffs);[9] *see also Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 749 (6th Cir. 2019) (rejecting the defendant's argument that representative testimony violated its due process rights where the defendant was permitted to cross-examine every witness at trial and the court gave the defendant the freedom 'to call anyone whom [it] wanted to call to the stand').

---

[9] Despite involving one of the same defendants and the same compensation system, the *Monroe* court refused to follow the Seventh Circuit's decision in *Espenscheid v. DirectSat,* 705 F.3d 770 (7th Cir. 2013), a decision Defendant encourages this Court to follow. As previously explained, *Espenscheid* is inapposite, is worth very little outside the context in which it arose, and should not be followed. (*See* Pls.' Am. Opp'n to Decert., ECF No. 360 at 27.) Defendant also encourages this court to follow *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 934–35 (E.D. Ark. 2012), but that case is contrary to Tenth Circuit precedent, contrary to *Mt. Clemens*, and plainly poorly reasoned. To explain, there, the court ignored overwhelming case law precedent including *Donovan* and *Garcia* which all have held that not every plaintiff needs to testify in order to prove FLSA liability and that the FLSA only requires the plaintiffs to be similarly situated to one another, not for any of them to have personal knowledge of any other plaintiffs. *Id.* at 934. Moreover, the court improperly faulted the plaintiffs for the lack of accurate records, finding that because there were no accurate records, that necessarily meant that individualized inquiries were necessary from each plaintiff. But, as discussed, *Mt. Clemens* and its progeny hold otherwise.

10

### 3. The Jury Will Be Specifically Instructed to Decide Factual Questions Relevant to Liability and Damages.

After both parties complete their proof, the case will be submitted to the jury. Specifically, the jury will be asked the following or similar liability and damages questions with the guidance of specific instructions relating FLSA collective actions and representative evidence:

> 1. Have Plaintiffs met their burden to prove by preponderance of the evidence that they worked in excess of 40 hours in one or more weeks and were not paid compensation for all of those hours?
> 2. Have Plaintiffs met their burden to prove by a preponderance of the evidence that the Defendant knew or should have known that Plaintiffs were not paid overtime compensation for all hours worked over (40) in a week?
> 3. How many unrecorded hours did the following testifying representative plaintiffs work a week on average?
>
>    a. Testifying Plaintiff #1:_____ hours
>    b. Testifying Plaintiff #2:_____ hours
>
>    . . .
>
>    u. Testifying Plaintiff #25:____ hours

(*See* Ex. 57 at ECF No. 335-32 at 2-3 & Ex. 65, ECF No. 350-4 at 2 (exemplar jury instructions).)

### 4. Damages Will Be Calculated Post Trial by the Parties.

Assuming the liability questions are answered in the affirmative, the jury will answer the only factual question relevant to the damages calculus, i.e., the average number of unrecorded hours each testifying Plaintiff worked, enabling the parties to calculate damages post trial for all Plaintiffs, including non-testifying ones. *See Monroe*, 860 F.3d at 408–409, 414 (approving the estimated average approach used to calculate damages post trial where the jury determined the number of unrecorded hours worked by each testifying plaintiffs and that average was applied non-testifying plaintiffs); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 120 (D.D.C. 2016) (rejecting defendants' argument that the court's decision to remove the mathematic calculation of unpaid wages from the province of the jury because the calculation was based on a rote formula

and did not implicate the Seventh Amendment); *Clark*, 104 F. Supp. 3d at 833 (describing the court's post-trial calculation of the non-testifying plaintiffs' damages by using the average daily and weekly hours from the testifying plaintiffs).

Once the mathematical calculation for each testifying and non-testifying Plaintiff is complete, the parties will either file a stipulation asking the Court to enter judgment of the agreed amount or separately submit their calculations for the Court to review. *See Clark*, 104 F. Supp. 3d at 835 (ordering the parties to confer and attempt to agree upon the damages to which each of the non-testifying plaintiffs are entitled or to submit separate calculations and explanations if no agreement can be reached for the court to enter its final judgment setting forth its award of damages).[10]

## CONCLUSION

Plaintiffs have established that trial on a representative basis is appropriate in this case. Their motion should be granted.

Dated: January 24, 2022

---

[10] That Plaintiffs suggested in a footnote that the Court may ask a special master to be involved in the post-trial mathematical calculations does not warrant decertification.

*s/ Rachhana T. Srey*
Rachhana T. Srey
Caroline Elizabeth Bressman
Reena I. Desai
H. Clara Coleman
Daniel S. Brome
NICHOLS KASTER, PLLP
80 South 8th Street
IDS Center, Suite 4700
Minneapolis, MN 55402
Phone: 612-256-3264
Fax: 612-338-4878
srey@nka.com
cbressman@nka.com
desai@nka.com
ccoleman@nka.com
dbrome@nka.com

Benjamin L. Davis, III
George E. Swegman
THE LAW OFFICES OF PETER T. NICHOLL
36 South Charles Street, Suite 1700
Baltimore, MD 21201
bdavis@nicholllaw.com
gswegman@nicholllaw.com

*Attorneys for Plaintiffs*

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

I hereby certify that on  January 24, 2022  , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

mphogan@littler.com
jkalk@littler.com
jharpole@littler.com
tcarroll@littler.com
dvankatwyk@littler.com
mgomez@littler.com
cchristensen@littler.com

                            s/Rachhana T. Srey
                            Rachhana T. Srey
                            Caroline E. Bressman
                            NICHOLS KASTER, PLLP
                            4700 IDS Center, 80 South 8th Street
                            Minneapolis, MN 55402
                            Telephone: (612) 256-3200
                            Facsimile: (612) 215-6870
                            Email: srey@nka.com
                                            cbressman@nka.com

                            Attorneys for Plaintiffs