IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-cv-00550-WJM-NRN

RACHEL BRAYMAN, individually
and on behalf of all other similarly
situated individuals

        Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS,
INC., a Delaware corporation

        Defendant.

### DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S AMENDED REPLY IN SUPPORT OF ITS MOTION FOR DECERTIFICATION

Plaintiffs' opposition to Defendant KeyPoint Government Solutions, Inc.'s Motion for Decertification is factually misleading and legally deficient. Plaintiffs fail to establish the basic elements necessary for them to proceed collectively—they identify no unlawful policy (let alone one that applied commonly to all of them), they do not come close to establishing the existence of representative proof, and they offer no logistically feasible path forward for this Court to try their claims together. Instead, they assert that their subjective, unsubstantiated (and unverifiable) perceptions of a heavy workload establish unlawful activity by KeyPoint, a theory already rejected by this Court. *Oldershaw v. DaVita HealthCare Partners, Inc.*, No. 15-CV-01964-MSK-NYW, 2019 WL 427650, at *7 (D. Colo. Feb. 4, 2019). Plaintiffs also argue—incorrectly—that the lack of evidence of their alleged work hours simply flips the burden of proof to KeyPoint to **disprove** their claims at trial. In other words, Plaintiffs ask this Court to find that remote workers who

routinely chose to violate their employer's written policies and falsify timesheets may bring a collective action to recover for alleged unreported hours unique to each Plaintiff and that could only be "proved" through their self-serving testimony. Moreover, they propose a free-wheeling trial heavy on speculation and light on evidence with no due process in sight. Plaintiffs' theory runs contrary to the Fair Labor Standards Act's ("FLSA's") collective action mechanism, the FLSA itself, and KeyPoint's fundamental right to defend itself in litigation. The Court should grant KeyPoint's Motion for Decertification.

## I.      ARGUMENT

In determining whether Plaintiffs may proceed collectively, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). In this case, each factor weighs heavily in favor of decertification.

### A.    Plaintiffs' Disparate Employment Experiences Require Decertification.

Plaintiffs cannot demonstrate that their employment experiences were sufficiently similar to proceed collectively. Each Plaintiff alleges a period of unpaid time unique to his or her claim, incurred performing work tasks that are also unique. 1`Plaintiffs have failed to identify a common, unlawful policy or that KeyPoint knew of Plaintiffs' alleged unreported hours.

#### 1.    Plaintiffs Performed Varying Tasks for Varying Lengths of Time.

KeyPoint employed Plaintiffs as Field Investigators ("FIs") in 32 different states, and they were supervised by more than 100 different Field Managers ("FMs"). (Ex. F, ECF No. 332-6 at 2 (¶¶ 3-4).) Plaintiffs contend that differences in their employment experiences are immaterial. (ECF

2

No. 345 at 3-5.) They are wrong.

First, Plaintiffs' daily schedules varied greatly based on individual preference, childcare and family arrangements, and personal, non-work tasks. (*See*, *e.g.*, Ex. K, ECF No. 344-11 at 3 (72:8-23) (testifying that FIs could "schedule your entire day however you wanted," and take breaks for personal, non-work obligations); Ex. ZZ, ECF No. 346-8 at 3 (23:9-20) (testifying that her work schedule was flexible and varied greatly, which initially attracted her to the position due to her childcare situation); Ex. AAA, ECF No. 346-1 at 3 (38:4-15).) Plaintiffs' work tasks on any given work day – and at any given time during that work day – varied widely and may have included (or not) pulling records, conducting source or subject interviews, writing reports, and attending to administrative or training tasks. By Plaintiffs' own admissions, the time necessary to perform those tasks varied. (*E.g.,* Ex. BBB, ECF No. 346-2 at 8 (104:13-19) (a source interview may take as little as ten minutes); Ex. U, ECF No. 344-21 at 3-4 (49:17-50:5) (a source interview may take between twenty minutes and an hour depending on the circumstances); Ex. AAA, ECF No. 346-1 at 6 (78:9-12) (a subject interview may take between two and four hours); Ex. ZZ, ECF No. 346-8 at 4 (90:12-16) (a subject interview may take four hours).) The variation in daily work schedules and the time spent on each task distinguishes this case from the donning and doffing cases relied upon by Plaintiffs, such as *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1307 (10th Cir. 2014), and *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983). The plaintiffs in those cases alleged off-the-clock work performed at a plant or facility, and they alleged the same or similar tasks performed at the same time (pre- and post-shift) that took the same or virtually the same periods of time to accomplish for each individual employee. The circumstances at issue here could not be more different—varying tasks that took varying amounts of time to

3

complete, none of which Plaintiffs recorded.

Second, while Plaintiffs assail KeyPoint's "productivity expectations," Plaintiffs make no mention of the variety in those expectations. Each Plaintiff is assigned to one of six "Levels," and to either a metro or non-metro geographic area. KeyPoint's weekly source unit production expectations differ vastly for each Level and metro or non-metro geography:

| Level | Metro | Non-Metro |
|---|---|---|
| I | 17 | 15 |
| II | 19.5 | 17 |
| III | 22 | 19 |
| IV | 25.5 | 22 |
| V | 28.5 | 25 |
| VI | 30.5 | 26.5 |

(Ex. CCC, ECF No. 346-3 at 2 (¶ 3), 4-8.) Plaintiffs worked at all Levels and in fact, some were promoted from a lower to higher Level during their employment, evidencing that they could handle the productivity requirements. (Ex. DDD, ECF No. 346-4 at 4 (55:5-9) (Levels 1 & 2); Ex. I, ECF No. 344-9 at 3 (27:15-17) (Level 3); Ex. J, ECF No. 344-10 at 3 (21:20-23) (Level 4); Ex. B, ECF No. 344-2 at 5-6 (63:21-64:4) (Levels 5 & 6).) In other words, no Plaintiff experienced a single, corporate productivity expectation, but rather several different productivity expectations. Plaintiffs gloss over these material differences in each Plaintiff's employment experience.

Finally, each FM had discretion to approve overtime requests made by his or her team. (Ex. E, ECF No. 344-5 at 7 (48:17-20) ("[I]t's up to the manager's discretion on whether you approve [overtime] or not."); Ex. F, ECF No. 344-6 at 3-4 (40:4-41:4); Ex. G, ECF No. 344-7 at 6 (90:12-18).) Some FMs regularly approved overtime—Plaintiff Tyson Blair described a standing policy by one of his FMs to permit several hours of overtime per week. (Ex. BBB, ECF No. 346-2 at 3 (65:5-11), 4 (70:16-24): ECF No. 332-42 at 1-2.) This is yet another individualized aspect

4

of Plaintiffs' employment with KeyPoint.

### 2. Plaintiffs Identify No Unlawful Policy, Let Alone a Common One.

Plaintiffs also fail to tie their varying employment experiences together by showing an unlawful policy or practice at KeyPoint that applied to all. Plaintiffs must establish the existence of an **unlawful** policy that affected all of them such that their claims are fit for collective adjudication. *Avendano v. Averus, Inc.*, No. 14-CV-01614-CMA-MJW, 2015 WL 1529354, at *8 n.6 (D. Colo. Mar. 31, 2015) ("[T]he Court has not found a case in which a court granted conditional certification as to an 'arguably' unlawful policy; rather, Section 216(b) permits certification when a policy is unlawful."); *see also Ray v. Motel 6 Operating, Ltd. P'ship*, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996); *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 511 (M.D. La. 2005).

In opposition to KeyPoint's Motion, Plaintiffs finally crystalize the "policy" that they contend binds them: "Defendant's minimum performance expectations that negatively impact workers who report more overtime hours." (Dkt. 345 at 2.) Even if this statement were true, it is legally insufficient. It is entirely lawful and common for an employer to manage costs by managing overtime budgets and incentivizing workers to complete their work without overtime. *Oldershaw*, 2019 WL 427650, at *8; *Smith v. Micron Elec., Inc.*, No. CV-01-244-S-BLW, 2005 WL 5336571 (D. Idaho Feb. 4, 2005). Plaintiffs' cases are distinguishable as those include specific manager directives not to record all hours worked or evidence that managers altered timesheets to reduce overtime hours, none of which is present here. *See, e.g.*, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 402-403 (6th Cir. 2017); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 529 (S.D. Tex. 2008).

In contrast, it is undisputed that KeyPoint's policies uniformly required Plaintiffs to report

all hours worked, and Plaintiffs have entirely abandoned their earlier claim that KeyPoint improperly altered their timesheets. (*Compare* ECF No. 36 at 3 (Plaintiffs' reply brief in support of conditional certification alleging that timesheet alterations occurred) *with* ECF No. 335 (Plaintiffs' brief in support of final certification making no mention of timesheet alterations).) This case is far more similar to *Oldershaw*, and the same result (decertification) should issue here.

Relatedly, Plaintiffs' attempts to establish a "productive overtime" policy that encouraged off-the-clock work fall flat. KeyPoint has no such policy. (Ex. E, ECF No. 344-5 at 3-4 (34:12-35:11); *see also* Ex. XX, ECF No. 332-50 at 3-4 (100:25-101:2), 5-6 (104:22-105:2) ("[W]e do not have a productive overtime policy.").) Plaintiffs attack the deposition testimony of Regional Field Director Jacy Erling, who testified that no such policy exists, with one e-mail sent by him (which Plaintiffs chose not to ask him about during his deposition). (*See* ECF No. 345 at 8-9; Ex. EEE, ECF 346-5 at 2 ( ¶¶ 4-5.) If Plaintiffs had asked Mr. Erling about this e-mail, they would have learned that, on this specific occasion, he had received an overtime goal to manage through a particularly busy time with a significant backlog. (Ex. EEE, ECF 346-5 at 3 (¶ 8), 4-25. He attempted to address this significant backlog by completing cases in a cost-controlled manner. *Id.* Notably, the e-mail does **not** reflect that overtime requests would be rejected if not "productive," or that any employee would be disciplined if Mr. Erling's team exceeded its overtime target. (*Id.* at 3 (¶ 7.)) This e-mail reflects an isolated response to a severe backlog rather than a "productive overtime" policy at KeyPoint. Indeed, KeyPoint has clearly established that overtime is approved even when production expectations are not met. (*See* ECF Nos. 29-17 & 29-18 (examining data for opt-ins and finding that during 66% of the workweeks at issue, those opt-ins recorded overtime when they were **not** meeting their production expectation); *see also* Ex. CCC, ECF No. 346-3 at 4

6

(¶ 4), 9-18), attaching examples of FMs approving overtime unrelated to work producing source units.) Additionally, many Plaintiffs cannot identify a single instance in which their FM denied a request for overtime approval regardless of whether they had met their production expectations. (*E.g.*, Ex. BBB, ECF No. 346-2 at 5-6 (73:24-74:2); Ex. K, ECF No. 332-11 at 12-13 (75:25-76:6); Ex. DDD, ECF No. 346-4 at 3 (40:15-18).) In sum, Plaintiffs have not established that a single, unlawful policy applied to all of them such that their claims may be resolved collectively.

### 3. Plaintiffs Fail to Establish KeyPoint's Knowledge of Their Alleged Off-the-Clock Work.

KeyPoint established its lack of knowledge of Plaintiffs' alleged unreported hours in its Motion for Decertification. (ECF No. 332 at 12-14, 20-21.) In response, Plaintiffs simply manufacture evidence without record citations. Specifically, Plaintiffs assert that KeyPoint should have known of their off-the-clock work because of "time-stamped data showing the time at which field investigators completed the work." (ECF No. 345 at 11-12.) To support this assertion, Plaintiffs cite their **entire** brief in support of their Motion for Final FLSA Certification.[1] (*Id.*) Of course, Plaintiffs' brief is not evidence, and the record contains no support for the assertion that

---

[1] That is not the end of Plaintiffs' manufacturing and misrepresentation of evidence. As part of their opposition to the instant Motion, they point to exhibits referenced in their Motion for Final Certification to support the assertion that Plaintiffs were disciplined or terminated solely for missing their production expectations. That is not so. (*See* ECF No. 344 at p 9, n.1, identifying Plaintiffs' misrepresentation of the number of individuals disciplined and terminated and failing to identify that there were often additional reasons for the disciplines and termination). Plaintiffs also fail to admit that in deposition, several Plaintiffs contradicted the sworn interrogatory answers which are used to support their Motion for Final Certification and in opposition to the instant Motion for Decertification. *See, supra,* at pp. 8-9. Relatedly, Plaintiffs *generally* cite to their Exhibit 17 which contains over 1600 pages of discovery responses to support an allegation that FMs denied requests for overtime where it would not result in additional source units, an assertion belied by email production in this matter (*see, e.g., Ex. 2 to Ex. CCC*), and to support a vague assertion that there was a policy of not paying investigators for all overtime hours worked.  *See* ECF No. 335 at page 10, n.13 and page 7, n.6. Finally, Plaintiffs repeatedly make sweeping assertions of what "representative evidence will show" without **any** citation to record evidence. (*See, e.g.,* ECF No. 345 at 9 "[T]he evidence in this case demonstrates that Plaintiffs are similarly situated in their reasons for working unpaid overtime and that Plaintiffs' field managers advanced this companywide practice.") Such factual misrepresentations should not be considered by this Court.

timestamped data informed KeyPoint of when FIs performed their work.[2] In sum, KeyPoint had no way of knowing if or when Plaintiffs performed alleged off-the-clock work, and the Court must reject their efforts to fabricate evidence to the contrary.

**B.    Individualized Inquiries and Defenses Warrant Decertification**

As made clear in KeyPoint's initial Motion (ECF No. 332 at 21-25), to determine both liability and damages in this case will require 214 mini-trials and the adverse examination of every Plaintiff. No "representative proof" exists here. Because Plaintiffs have failed to prove the existence of a common, unlawful policy by KeyPoint, their claims rest entirely on each individual Plaintiff's testimony and individualized evidence regarding his or her personal work habits and whether his or her FM knew of alleged instances of off-the-clock work. The necessity of such individualized inquiries demonstrates that decertification is appropriate. *See*, *e.g.*, *Smith*, 404 F. Supp. 2d at 1150.

The variation in Plaintiffs' claimed hours, as well as in the tasks performed by Plaintiffs during those hours, explains why Plaintiffs are incapable of estimating their alleged overtime hours to any degree of certainty. Plaintiffs try to ignore this variation (*e.g.*, ECF No. 345 at 16-17), but the Court cannot do so, particularly when Plaintiffs abandon their own interrogatory answers in their depositions. As one example, Plaintiff Shaun Carman served a verified interrogatory answer

---

[2] Plaintiffs used case material tracking software that recorded the times at which Plaintiffs checked in and out materials relating to their work. (ECF No. 335 at 4.) However, in depositions, Plaintiffs **admitted** that these isolated timestamps do not indicate when they performed compensable work for KeyPoint. (*See*, *e.g.*, Ex. S, ECF No. 344-19 at 3-4 (89:23-90:20) (testifying that material check-in and check-out times do not correspond to her alleged hours worked); Ex. N, ECF No. 344-14 at 11 (116:3-20); Ex. T, ECF No. 344-20 at 3-4 ( 67:20-68:7); Ex. J, ECF No. 344-10 at 7 (91:9-14) (Q: "[J]ust because you checked in your cases late at night, it wouldn't necessarily mean that you were working straight through all the way to that time; is that correct?" A: "Right. Yes.").) Moreover, none of the vast amounts of production and assignment data produced by Defendant  provide timestamped information about when work was performed.

claiming that he worked 43-48 hours per week. However, he testified in his deposition there were weeks in which he did not work more than 40 hours. (Ex. FFF, ECF No. 346-6 at 3 (39:19-25).) Carman further testified that he reported his time accurately in 25% of the weeks in which KeyPoint employed him. (*Id.* at 5 (51:6-11).) Carman also testified that his work schedule varied from day to day. (*Id.* at 4 (48:1-7), 5 (51:5-10), 6 (54:16-17).) "[E]very day was different." (*Id.* at 7 (57:1-7).) Regarding his interrogatory answer, he said, "I guess maybe I didn't fill that out right." (*Id.* at 8 (59:9-18); *see also* Ex. GGG, ECF No. 346-7 at 3-10 (60:22-67:11); Ex. AA, ECF No. 332-27 at 18 (116:7-18) ("In my interrogatory it says I worked on Saturday, which is not the case. I actually worked Sunday for several hours and usually not on Saturday…"); Ex. LL, ECF No. 332-38 at 5 (76:22-25); Ex. AAA, ECF No. 346-1 at 4-5 (56:23-57:7); Ex. BBB, ECF No. 346-4 at 7 (94:1-8); Ex. ZZ, ECF No. 346-8 at 5-6 (134:11-135:10).) Plaintiffs cannot even ascertain their own alleged unreported hours, and yet somehow expect the Court or a jury to do so.

As discussed above, while representative proof may be feasible in cases that involve donning and doffing or other routine pre- and post-shift work activities, this case could not be more distinguishable. Plaintiffs did not perform shift work, did not work in the same facility, and were supervised by more than 100 different managers distributed across the country. Moreover, each instance of alleged unpaid overtime involves a unique task or set of tasks that take varying amounts of time to complete. On this record, Plaintiffs cannot meet the standard that they concede controls this question: Plaintiffs have not and cannot come forward with "sufficient evidence" to show the extent of their alleged unreported hours as a matter of "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 446 (2016) (endorsing representative proof of time spent donning and

doffing protective gear). Rather than address these deficiencies, Plaintiffs simply foist their burden of proof at trial upon KeyPoint, asserting that KeyPoint will bear "the lion's share of" the burden to disprove Plaintiffs' unpaid overtime claims. (ECF No. 345 at 15.) This is an inaccurate statement of the law. *See Oldershaw*, 2019 WL 427650, at *9 (discussing **Plaintiffs'** burden of proof).

Rather, cases like *Oldershaw*, 2019 WL 427650, at *9, *Espenschied*, 705 F.3d at 773, *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929 (E.D. Ark. 2012), make clear that cases such as this one (*i.e.*, requiring individualized inquiries of each Plaintiff) cannot proceed to trial as collective actions. Plaintiffs do not address *Douglas,* and their attempt to distinguish *Espenschied* is weak (ECF No. 345 at 18-20)—the trial plan submitted by Plaintiffs in this case offers no way around the 214 mini-trials necessary to determine liability and damages for each Plaintiff. They also emphasize that *Espenschied* involved a larger class than in this case. (*Id.*) However, this Court in *Oldershaw* reached the same result (decertification) as to a 70 member collective, less than half the size of the collective here. 2019 WL 427650, at *1. The size of the collective is clearly not dispositive—rather, where, as here, each Plaintiff must be examined and cross-examined to establish liability and damages, the case cannot proceed as a collective action.

### C.  Fairness and Procedural Considerations Require Decertification.

As established in KeyPoint's Opposition to Plaintiffs' Motion for final certification (ECF No. 344 at 21-22), Plaintiffs cannot proceed collectively in a way that affords KeyPoint due process. KeyPoint is entitled to defend itself against the claims asserted, and on this record, it cannot do so in any collective proceeding. *See*, *e.g.*, *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 371-73 (D.N.J. 1987); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 283-84 (N.D. Tex. 2008).

## IV.   CONCLUSION

Plaintiffs' disparate employment settings and claims for alleged unpaid time, the individualized inquiries as to liability and damages required in this action, as well as fairness and procedural considerations—including KeyPoint's fundamental right to due process—all mandate that the FLSA collective in this action must be decertified. The Court should grant KeyPoint's Motion to Decertify.

Dated: January 24, 2022

*s/Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Michelle L. Gomez
Thomas W. Carroll
Danielle VanKatwyk
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone:  303.629.6200
Facsimile:   303.629.0200
Email:  mphogan@littler.com
          jharpole@littler.com
          mgomez@littler.com
          tcarroll@littler.com
          dvankatwyk@littler.com

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN  55402
Tele:  (612) 313-7645
Fax:   (612) 677-3139
Email:  JKalk@littler.com
             CChristensen@littler.com

Matthew J. Ruza
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mruza@littler.com

Steven Kaplan
Brandon Mita
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011
Email: skaplan@littler.com
         bmita@littler.com

ATTORNEYS FOR DEFENDANT KEYPOINT
GOVERNMENT SOLUTIONS INC

12

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2022, a true and correct copy of the foregoing **DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S AMENDED REPLY IN SUPPORT OF ITS MOTION FOR DECERTIFICATION** was filed and served via CM/ECF on the following:

Rachhana T. Srey
Caroline Elizabeth Bressman
H. Clara Coleman
Reena I. Desai
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
srey@nka.com
cbressman@nka.com
ccolemanb@nka.com
rdesai@nka.com
Daniel S. Brome
Matthew Helland
NICHOLS KASTER, PLLP
234 Montgomery Street, Suite 810
San Francisco, CA 94104
dbrome@nka.com

Benjamin L. Davis, III
George E. Swegman
THE LAW OFFICES OF PETER T. NICHOLL
36 South Charles Street, Suite 1700
Baltimore, MD  21201
bdavis@nicholllaw.com
gswegman@nicholllaw.com

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE FLSA COLLECTIVE CLASS

                                                  *s/ Patricia Perez*
                                                  Patricia Perez

4857-1816-1162.1 / 097550-1001