**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 18-cv-0550-WJM-NRN

RACHEL BRAYMAN, DANA McCARTHY, and ADRIANA PONCE, individually and on behalf of all other similarly situated individuals,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC., a Delaware corporation,

      Defendant.

---

## ORDER ON PENDING MOTIONS

---

Plaintiffs Rachel Brayman, Dana McCarthy, and Adriana Ponce (collectively, "Plaintiffs") bring this action against Defendant KeyPoint Government Solutions, Inc. ("KeyPoint") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and violations of California law. (ECF No. 271.) Plaintiffs' FLSA and California law claims concern KeyPoint's alleged failure to properly compensate a certain class of employees for overtime hours worked, as well as other employment and wage violations. (*Id*. ¶¶ 44–75.)

This matter is before the Court on the following motions:

1.     KeyPoint's Motion to Clarify the Court's Order Denying its Motion to Compel Arbitration ("Motion to Clarify") (ECF No. 301);

2.     KeyPoint's Amended Motion for Decertification ("Motion to Decertify") (ECF No. 353);

3.     Plaintiffs' Amended Motion for Final Certification of the FLSA Collective ("Motion

to Certify Collective Action") (ECF No. 356); and

4.      Plaintiffs' Amended Motion for Rule 23 Class Certification ("Motion to Certify

Class Action") (ECF No. 355).

For the reasons explained below, the Motion to Clarify is granted in part and

denied in part, the Motion to Decertify is denied, and the Motion to Certify Collective

Action and the Motion to Certify Class Action are granted.

## I. BACKGROUND[1]

### A.      Factual Background

KeyPoint provides investigative services to federal government agencies,

including the Office of Personnel Management.  (ECF No. 353 at 4; ECF No. 356 at 4.)

Plaintiffs, who worked as field investigators ("FIs"), operated remotely from their homes

around the country and were classified as hourly, non-exempt employees.  (ECF No.

353 at 4; ECF No. 356 at 4, 11.)  The FIs work in geographic regions and are managed

by Field Managers ("FMs"), who oversee the performance of the FIs in their geographic

area.  (ECF No. 353 at 4; ECF No. 356 at 4.)  The FIs who are part of this lawsuit as

Plaintiffs worked in more than 32 different states and under the supervision of

approximately 111 different FMs.  (ECF No. 353 at 4.)

1.      FI Job Functions

As FIs, Plaintiffs performed the same core job tasks, including interviewing

subjects of an investigation, sources familiar with the subject, pulling records, and

producing reports of investigation.  (ECF No. 356 at 4.)  These investigative reports are

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  This factual summary is taken from the parties' briefs and supporting exhibits.

subject to quality review conducted by KeyPoint's centralized Review Department.  (*Id.* at 5.)

Work assignments for FIs are made by KeyPoint's logistics analysts.  (ECF No. 353 at 5; ECF No. 356 at 5.)  Each task has an associated "source unit" value, which would be credited to the FI upon completing the task.  (ECF No. 353 at 5; ECF No. 356 at 5.)  KeyPoint has assigned the same source unit value to each investigative task, which incorporates the "presumed amount of effort required to complete an item."  (ECF No. 356 at 10; ECF No. 335-7 at 5.)

The number of source units each FI is expected to complete in a given week is dependent on the number of hours he or she devotes to field work in that week, where he or she works, and his or her level.  (ECF No. 353 at 5.)  FIs are ranked Level 1 through 6 depending on their experience and are classified as "metro" or "non-metro" depending on their geographic location.  (ECF No. 356 at 9.)  For example, a Level I FI in a metropolitan area is expected to complete 17 source units during a workweek in which the FI recorded 40 field work hours (working at a rate of 0.425 source units per hour), and the task of conducting and compiling a report of a subject interview is work 3.5 source units.  (ECF No. 353 at 5.)  Because a metro Level I is expected to produce 0.425 source units per hour work, a FI may be listed as underperforming if he or she takes additional hours to complete source units.  (ECF No. 334-7 at 3.)

Pursuant to the Manual Assignment Guidelines, "[a]ll [FIs] should be assigned to 100% capacity of their 8[-]week average . . . ."  (ECF No. 356 at 5 (citing ECF No. 334 at 8).)  Because FIs work out of their homes and in the field, FIs individually determine when to perform their work assignments and how to organize their workday activities.

(ECF No. 353 at 5; ECF No. 356 at 6.)  Nonetheless, KeyPoint advised FIs that they should be working the "core days" of Monday through Friday.  (ECF No. 356 at 7 (citing ECF No. 334-3 at 3).)

FIs at each level are subject to the same three performance metrics: (1) productivity; (2) timeliness; and (3) quality.  (ECF No. 356 at 10; ECF No. 334-7 at 2.)

2.    KeyPoint's Training & Policies

After being hired, FIs typically undergo six weeks of training on KeyPoint policies and processes, including investigative techniques and best practices for time management and the organization of work.  (ECF No. 353 at 4.)  In training, KeyPoint instructs the FIs that all time worked must be recorded and that "submitting the[ir] timesheet . . . certifies that all entries are correct as entered and that all time is reported as required."  (*Id.* (citing ECF No. 332-4 at 69).)  This training is consistent with policies set forth in KeyPoint's Employee Handbook, which provides:

> As a reminder, each and every KeyPoint employee has an obligation to accurately record all time worked each and every day.  All overtime must be approved in advance and in writing by a manager and will be paid in accordance with federal and state law.  Each time employees sign their timecard it is verification that **all** information reported is complete and accurate.  Failing to record all time worked is **timecard fraud** and is reportable to government agencies as an integrity violation which could jeopardize any security clearance.
>
> Non-exempt employees are prohibited from working "off the clock" (i.e., without reporting the time worked).  When an employee receives his/her paycheck, he/she should verify immediately that working time was recorded accurately and that he/she was paid correctly for all hours worked[].
>
> When an employee works, he/she must report all time worked.  Non-exempt employees should not work any time that is not authorized by their supervisors.  Do not start work early, finish work late, work during a meal break, or perform

> any other extra or overtime work unless directed to do so.  If an employee has any questions about when or how many hours he/she is expected to work, he/she should contact his/her supervisor.
>
> It is a violation of our policy for anyone to instruct or encourage another employee to work "off the clock," to incorrectly report hours worked, or to alter another employee's time records.  If anyone directs or encourages an employee to incorrectly report his/her hours worked, or to alter another employee's time records, please report the incident immediately to the appropriate supervisor or to Human Resources.

(ECF No. 332-19 at 10–11 (emphasis in original).)

Moreover, FIs signed weekly timesheets certifying that "[m]y timesheet is a legal document.  By saving this timesheet I agree that I have accurately reported and recorded all hours worked.  Failure to do so and/or working overtime without proper authorization may result in discipline up to an including termination."  (ECF No. 332-22 at 2.)

3.   Plaintiffs' Allegations Regarding Overtime Hours and Performance Expectations

Plaintiffs allege that "[a]ll Plaintiffs worked unpaid overtime hours because of the same company-wide performance-based metric system, which encouraged or pressured Plaintiffs to underreport their hours" and that "they needed to work overtime hours to complete their regularly assigned heavy workload, including their reworks, and to meet unrealistic performance expectations."  (ECF No. 356 at 12.)  According to Plaintiffs, "the inverse relationship that existed between hours worked and productivity absent production of additional source units during the overtime hours incentivized investigators to underreport their time to achieve at least their minimum performance metrics."  (ECF No. 356 at 13 (collecting citations).)  Plaintiffs further represent that FMs

routinely denied requests for overtime approval unless the FIs could produce more source units during their overtime hours.  (*Id.* at 14 (collecting citations).)  Moreover, disciplinary records demonstrate that KeyPoint disciplined a number of Plaintiffs for failure to meet performance expectations.  (*See* ECF No. 350-2.)  Some of these Plaintiffs were terminated by KeyPoint for unsatisfactory performance.  (*See* ECF No. 350-3.)

Plaintiffs further allege that KeyPoint's heavy workload and unrealistic productivity expectations forced them to miss legally required meal periods and rest breaks.  (ECF No. 355 at 11 (collecting citations).)

**B.    Relevant Procedural History**

The Court presumes familiarity with the extensive procedural history of this action.  The Court will only outline the specific factual and procedural history relevant to resolving the motions at issue in this action.

Brayman filed this lawsuit on March 8, 2018.  (ECF No. 1.)  The original complaint included a FLSA collective action claim against KeyPoint based on KeyPoint's alleged failure to pay overtime wages.  (*Id.* at 5–6.)  The Court granted FLSA conditional collective action certification under 29 U.S.C. § 216(b) on November 1, 2018.  (ECF No. 69 at 17.)  As redefined by the Court on December 16, 2019, the FLSA collective action class is defined as:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or in other position with similar job duties, for Defendant KeyPoint Government Solutions, Inc. at any time from April 6, 2015 to September 18, 2019.

(ECF No. 217 at 10.)

On December 16, 2019, the Court issued an Order analyzing the arbitration

agreements signed by the FLSA opt-in plaintiffs.  (ECF No. 217.)  Based on a plain

reading of the arbitration agreements, the Court concluded that the putative FLSA

collective action members who worked as, or were hired to be, FIs as of March 8, 2018

(the day Brayman initiated the lawsuit) could not be forced to arbitrate their claims

individually and could instead join the collective action.  (*Id.* at 5–9.)  Currently, the

FLSA collective action consists of 214 opt-in plaintiffs.  (ECF No. 356 at 3.)

On August 9, 2020, Plaintiffs filed the First Amended Complaint, which, among

other things, added five causes of action arising under California statutes, regulations,

and/or administrative orders: failure to pay overtime wages; failure to provide accurate

itemized wage statements; failure to provide rest breaks and meal periods; failure to pay

"final wages" to those who have left KeyPoint's employ; and unfair competition, by

engaging in the acts and practices all of the previous claims.  (ECF No. 271 at 9–16.)

The First Amended Complaint also included a proposed Rule 23 class action,

defined as:

> All persons who worked as, or who were hired to be, a Field
> Investigator, Background Investigator, or another position
> with similar job duties, in the State of California for
> Defendant KeyPoint Government Solutions, Inc., at any time
> within four (4) years prior to the filing of Plaintiff[s']
> Complaint.

(*Id.* at 6.)  63 of the 214 Plaintiffs are also putative Rule 23 California class members.

(ECF No. 355 at 3.)

On July 23, 2020, KeyPoint filed a Motion to Compel Arbitration of California

State Law Claims and Strike Related Rule 23 Class Action Allegations ("Motion to

Compel") (ECF No. 278), which the Court denied on February 4, 2021 ("February 4,

2021 Order") (ECF No. 294).

On March 3, 2021, KeyPoint filed the Motion to Clarify.  (ECF No. 301.)  Plaintiffs responded on April 2, 2021 (ECF No. 313), and KeyPoint replied on April 15, 2021 (ECF No. 316).

On December 30, 2021, KeyPoint filed the Motion to Decertify.  (ECF No. 353.) Plaintiffs responded on January 14, 2022 (ECF No. 360), and KeyPoint replied on January 24, 2022 (ECF No. 364).

On December 31, 2021, Plaintiffs filed their Motion to Certify Collective Action and Motion to Certify Class Action.  (ECF Nos. 355, 356.)  KeyPoint responded to both motions on January 14, 2022 (ECF Nos. 358, 359), and Plaintiffs replied on January 24, 2022 (ECF Nos. 362, 363).

## II. MOTION TO CERTIFY COLLECTIVE ACTION (ECF No. 356) AND MOTION TO DECERTIFY (ECF No. 353)

**A.    Legal Standards**

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees.  *See* 29 U.S.C. §§ 206–07.  Under the statute, a covered employer must pay its employees for the time that it employs them; and the FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week.  *See id.* §§ 206(a), 207(a).  The required overtime compensation is one and one-half times an employee's "regular rate" of pay.  *Id.* § 207(e).  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

Section 216(b) of the FLSA authorizes private individuals to recover damages for

violations of minimum wage and overtime provisions.  It provides in relevant part that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA).

The Tenth Circuit has approved a two-step process in certifying a FLSA collective action: (1) a district court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated," which requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"; and (2) at the conclusion of discovery, the court then makes a second determination, utilizing a stricter standard to determine whether plaintiffs are "similarly situated."  *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001), *cert. denied* 536 U.S. 934 (2002) (internal citations omitted).

During this "second stage" analysis, a court reviews several factors, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Id.*  Plaintiffs bear the burden of establishing that they are similarly situated.  *Coldwell v. RiteCorp Env't Prop. Sols.*, 2017 WL 4856861, at *3 (D. Colo. July 20, 2017).

**B.     Analysis**

In the Motion to Certify Collective Action, Plaintiffs argue that the Court should grant final certification of the FLSA collective action.  (ECF No. 356.)  Conversely, in the Motion to Decertify KeyPoint moves to decertify the conditionally certified FLSA collective action.  (ECF No. 353.)  Given the substantial overlap in the parties' arguments in these motions, the Court considers the Motion to Certify Collective Action and Motion to Decertify together.

1.     Disparate Factual and Employment Settings of Individual Opt-In Plaintiffs

Plaintiffs argue that they are similarly situated to proceed to trial as a representative group because they were subject a uniform practice constituting an FLSA violation, namely, KeyPoint's failure to compensate FIs for all overtime worked. (ECF No. 356 at 23.)  Citing their interrogatory responses, Plaintiffs argue that "[t]his violation permeated the workforce nationwide—across geographic regions and managers—due to the common over-assignment of work strategy and minimum performance expectations that encouraged or pressured Plaintiffs to underreport their hours."  (Id. at 24 (collecting citations).)  Plaintiffs further contend that they shared the same job position and duties, and they performed their work subject to the same guidelines, directives, centralized assignment strategies, and minimum performance expectations.  (Id. at 25–26.)

By contrast, KeyPoint argues that "Plaintiffs' factual and employment settings vary widely such that their claims are unfit for collective adjudication," emphasizing that Plaintiffs worked remotely in more than 32 different states and were supervised by 111 different FMs.  (ECF No. 353 at 20.)  KeyPoint further contends that Plaintiffs have failed to establish the existence of an unlawful policy, given that "Plaintiffs consistently

testified that no KeyPoint manager instructed them to underreport their hours or to work hours without reporting the time" and instead have "offered a shifting variety of explanations for this belief [regarding an unlawful policy which] stem[s] from their individual employment experiences."  (*Id.* at 21–22.)  It further argues that "KeyPoint had no reason to believe that FIs worked off-the-clock, falsified their timesheets, or underreported their hours."  (*Id.* at 23.)

The Court recognizes that KeyPoint cites a number of cases in which courts have concluded that decertification of a FLSA collective action is appropriate in certain employment settings and contexts.  (ECF Nos. 353, 359.)  The Court has fully considered the factual circumstances and legal analysis set forth in those cases. However, after carefully reviewing the parties' arguments and exhibits cited thereto, as well as the specific factual circumstances of this case, the Court concludes that the material terms of Plaintiffs' employment, including the policies and practices to which they allegedly were uniformly subjected, weigh in favor of finding Plaintiffs are similarly situated for purposes of maintaining an FLSA collective action.

Although Plaintiffs worked in different geographic regions under the supervision of different FMs, they all held the same job title and worked under the same general supervision hierarchy.  (ECF No. 356 at 4–5.)  All were classified as non-exempt employees and were subject to the same pay provisions and performance standards. (*Id.* at 11.)  Furthermore, Plaintiffs, although working in far-removed and disparate locations, have provided consistent and corroborating statements attesting that— notwithstanding KeyPoint's official policies prohibiting Plaintiffs from underreporting their overtime hours—KeyPoint at different work locations uniformly required them to perform

job duties that could not easily be completed within 40 hours while at the same time requiring all overtime to be productive; and they further assert that KeyPoint had a consistent practice of penalizing Plaintiffs who failed to meet its performance expectations, thereby creating an environment that caused these Plaintiffs to feel pressured to underreport overtime.  (ECF No. 335-11 (collecting Plaintiffs' interrogatory responses regarding Plaintiffs' allegations); ECF No. 350-2 (collecting Plaintiffs' discipline records); ECF No. 350-3 (collecting Plaintiffs' termination records).)

In the Court's view, the close similarities in Plaintiffs' job functions, as well as the fact that a large number of Plaintiffs from around the country have asserted that KeyPoint maintained the same or substantially similar unwritten practice of pressuring them to engage in off-the-clock overtime work, weigh in favor of a determination that Plaintiffs are similarly situated under § 216(b).  *See, e.g.*, *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 539 (S.D. Tex. 2008) ("It simply cannot be that an employer may establish policies that create strong incentives for managers to encourage or allow employees to work off-the-clock, and avoid a FLSA collective action because a large number of employees at a number of different stores are affected."); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 471 (E.D. Va. 2014) (finding plaintiffs are similarly situated where plaintiffs indicated there was an unwritten practice of allowing off-the-clock work and that the written prohibitions were consistently violated and generally impacted the members of the class in a similar manner).

2.    Defenses that are Individual to Each Plaintiff

"The second factor inquires as to whether there exist defenses that need to be litigated on an individual basis."  *Lozoya v. All Phase Landscape Constr., Inc.*, 2014 WL 222104, at *3 (D. Colo. Jan. 21, 2014).

Broadly speaking, KeyPoint asserts that Plaintiffs have failed to establish existence of a single, nationwide, unlawful policy or practice, and that KeyPoint knew or should have known Plaintiffs were working overtime without compensation pursuant to the same purported nationwide policy. (ECF No. 359 at 15; ECF No. 353 at 21–23.) Moreover, KeyPoint argues that "individualized proof of Plaintiffs' alleged hours is required, making it impossible to resolve Plaintiffs' claims collectively." (ECF No. 353 at 24 ("Plaintiffs do not seek compensation for the same or even similar time periods, and Plaintiffs' damages are not susceptible to mechanical calculation.").) KeyPoint further contends that because no accurate records exist for the time Plaintiffs claim that they worked but failed to report, every Plaintiff "must be subject to adverse examination by KeyPoint, requiring 214 individual evidentiary hearings or 'mini trials.'" (*Id.* at 25.)

However, after considering KeyPoint's anticipated defenses, the Court is not convinced that KeyPoint's defenses as to the issue of liability are so individualized that collective adjudication of Plaintiffs' claims are truly unworkable. *See Lozoya*, 2014 WL 222104, at *3 (recognizing that "[f]actual defenses in an FLSA collective action will necessarily be individualized any time employees worked different schedules"). All of the Plaintiffs' claims rely on their assertion that KeyPoint maintained an unlawful policy or practice requiring them to work overtime for which they were not paid. KeyPoint will have the opportunity to present broad-based defenses on this topic that could defeat liability on a class-wide basis; as such, KeyPoint's defenses are not so individualized to the individual Plaintiffs' claims to warrant decertification. *See LaFleur*, 30 F. Supp. 3d at 474 (concluding defendant's defenses are not so individualized as to warrant decertification where all opt-in plaintiffs' claims rest on common questions of law and

similar facts regarding off-the-clock work all claims point to "substantial evidence of a single decision, policy, or plan" that affected all opt-in plaintiffs in the same way); *Falcon*, 580 F. Supp. 2d at 540 (determining whether defendant had actual or constructive knowledge of off-the-clock work can be adequately raised at a trial involving representative testimony).

Nor do potential differences in each Plaintiff's claim for potential damages require decertification of this action. After all, a collective action does not necessitate that "there be no differences among class members," and nor does it prohibit individualized inquiries "in connection with fashioning the specific relief or damages to be awarded to each class member." *LaFleur*, 30 F. Supp. 3d at 474; *see also Metcalfe v. Revention, Inc.*, 2012 WL 3930319, at *6 (S.D. Tex. Sept. 10, 2012) ("Whether individualized determinations are necessary to define the extent of Plaintiffs' damages, if any, does not weigh against efficiently establishing Defendants' class-wide liability.").

In sum, the Court is confident that KeyPoint will be able to raise its liability defenses in a collective forum, where it will be free to present evidence of its lawful employment policies and practices, to cross-examine representative Plaintiffs, and to call to the stand others with material testimony that helps its case. Therefore, the individualized defense factor of the decertification analysis weighs in favor of Plaintiffs and supports this Court's finding that certified class treatment of Plaintiffs' claims is appropriate.

3.     Procedural and Fairness Considerations

The FLSA's collective action has an important remedial purpose: "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose

from the same alleged activity." *Lozoya*, 2014 WL 222104, at *4.

KeyPoint argues that fairness and procedural considerations require decertification because "[o]n this record, KeyPoint cannot be subject to a collective determination of liability and damages in a way that also affords KeyPoint its right to due process." (ECF No. 359 at 21.) According to KeyPoint, a single trial will require the jury to "apprehend and evaluate substantial and disparate testimony relating to hundreds of individual plaintiffs." (*Id.* at 22.)

However, as explained above, the members of the collective share a common issue: whether KeyPoint failed to compensate FIs for all overtime worked. (ECF No. 356 at 23.) Certification would significantly reduce the costs of litigation to members of the class and entitle members of the class to have their claims heard in an efficient and cost-effective manner. Because of the modest amounts involved, it is likely that many of the Plaintiffs would be unable to afford the cost of pursuing their claims individually if the Court decertifies the FLSA collective action. Moreover, given the substantial similarity of the Plaintiffs' claims, it certainly would not be in the interest of judicial economy to require the claims to be adjudicated in 214 individual trials held in 214 separate federal court actions. *See Falcon*, 580 F. Supp. 2d at 541. Thus, the fairness and procedural considerations weigh against KeyPoint and weigh in favor of certification of the FLSA collective action.

Finally, although the Court recognizes that a trial on Plaintiffs' collective action claims may involve a large number of fact witnesses, the Court believes that this case will be manageable at trial. While not prejudging the matter, the Court is seriously considering bifurcating the liability and damages stages of the trial. *See Thiebes v.*

*Wal–Mart Stores, Inc.*, 2004 WL 1688544, at *1 (D. Or. July 26, 2004) (court bifurcated collective action involving allegations of unpaid overtime and off-the-clock work into separate liability and damages trials).  In such a scenario, the Court would allow Plaintiffs to present testimony from a representative sample of the named Plaintiffs, whom KeyPoint will be permitted to cross-examine and to rebut with testimony from its own witnesses.  *See Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 749 (6th Cir. 2019) (rejecting arguments that defendant's due process rights were violated through the use of representative testimony where defendant was permitted to cross-examine every witness at trial and could call its own witnesses).  *If* Plaintiffs prevail on their claims at the liability phase of such a proceeding, the Court will then consider how best to proceed with regard to determining the damages or other relief to which Plaintiffs, as the prevailing parties, will be entitled.

\* \* \* \*

For the reasons set forth above, the Court finds that final certification of the FLSA collective action is proper in this case.  As a result, the Court denies KeyPoint's Motion to Decertify, and grants Plaintiffs' Motion to Certify Collective Action.

### III. MOTION TO CERTIFY CLASS ACTION (ECF No. 355)

**A.     Legal Standards**

To certify a class, Plaintiffs must first meet all of four requirements outlined in Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Second, Plaintiffs must show that at least one of three conditions defined in Rule 23(b) is satisfied.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013); *see* Fed. R. Civ. P. 23(b).  As the parties seeking class certification, the plaintiff bears the burden of establishing that the requirements of Rule 23 are clearly met.  *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

Certification of a class lies within the discretionary powers of the trial court.  *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).  "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive.  Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (quoting *Monreal v. Potter,* 367 F.3d 1224, 1238 (10th Cir. 2004)).

## B.    Analysis

Plaintiffs seek to certify the following class for KeyPoint's failure to pay proper overtime compensation, failure to provide itemized wage statements, missed rest and meal breaks, waiting time, and unfair competition claims under California state law:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or another position with similar job duties, in the State of California for Defendant KeyPoint Government Solutions, Inc., at any time within four (4) years prior to the filing of Plaintiff[s'] Complaint.

(ECF No. 355 at 12.)  In addition to arguing that the Rule 23(a) requirements have been met, Plaintiffs invoke Rule 23(b)(3), which requires a showing that common issues

predominate over individualized issues and that a class action is the superior method for adjudicating the controversy.  (*Id.*)

      1.   <u>Numerosity</u>

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members individually is impracticable."  While the Tenth Circuit has recognized that there is "no set formula to determine if the class is so numerous that it should be so certified," *Trevizo*, 455 F.3d at 1162, the Court easily finds that numerosity has been established here.  As Plaintiffs point out, 63 of the 214 Plaintiffs who have opted into the FLSA collective action are also putative Rule 23 California class members, and there are more than 400 investigators who lived in California during the relevant time period.  (ECF No. 355.)  *See Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1081 (D. Colo. 2016) (finding allegation of approximately 140 class members satisfies the numerosity requirement).

      2.   <u>Commonality, Predominance, and Superiority</u>

To establish Rule 23(a) commonality, members of a putative class must "possess the same interest and suffer the same injury."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Falcon*, 457 U.S. at 157).  "This does not merely mean, however, that the plaintiffs have all suffered a violation of the same provision of law."  *Id.*  Rather, "[t]heir claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

For efficiency, the issue of commonality under Rule 23(a) is often considered together with requirement of predominance under Rule 23(b)(3).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.").  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.  Generally, the predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issue subject only to individualized proof."  *In re Am. Int'l Grp., Inc. Sec. Lit.*, 689 F.3d 229, 240 (2d Cir. 2012).  Moreover, under Rule 23(b)(3), Plaintiffs must show that the class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018).

Plaintiffs argue that their unpaid overtime, meal and rest break, waiting time penalty, itemized wage statement, and unfair competition claims are common to the class and will be proved through common evidence.  (ECF No. 355 at 14–18.)  For example, Plaintiffs contend that

> whether the class worked unpaid overtime as a result of KeyPoint's over-assignment of work and minimum performance expectations will be established through the testimony of representative Plaintiffs and their common evidence of hours worked in KeyPoint's software systems; whether KeyPoint knew or should have known about this unpaid overtime will be established through common evidence of Plaintiffs' complaints to [FMs] and Human

> Resources and the company's intentional over-assignment
> of work; and Plaintiffs' will prove that KeyPoint stood idly by
> and through common evidence that it did not compensate
> Plaintiffs for their unrecorded overtime hours.

(*Id.* at 14 (collecting citations to record).)  Plaintiffs likewise contend that they will establish their itemized wage statement claims and meal and rest break claims through KeyPoint's uniform wage statements and Plaintiffs' testimony, respectively.  (*Id.* at 16–17.)  Additionally, Plaintiffs argue these common issues predominate over individual issues because KeyPoint's purported unlawful policies are common to the class as a whole.  (*Id.* at 19–20.)

In response, KeyPoint argues that Plaintiffs "cannot show any common issue of liability for classwide resolution 'in one stroke,' or that predominates over individual issues."  (ECF No. 358 at 7.)  According to KeyPoint, Plaintiffs' claims are untenable because Plaintiffs' evidence fails to establish that KeyPoint had common unlawful policies requiring off-the-clock work or prohibiting Plaintiffs from taking required meal and rest breaks.  (*Id.* at 7–13.)  Instead, KeyPoint argues that Plaintiffs will be forced to establish liability on an individualized basis and that class certification is therefore not appropriate because individual inquiries will predominate.  (*Id.* at 7–13.)

It may well be that Plaintiffs will be unable to prevail on their California claims at trial.  However, at this stage of the litigation, the Court must confine itself to questions relating to whether common questions drive the resolution of Plaintiffs' claims, and as a consequence "accept[s] the substantive allegations of the complaint as true."  *Shook*, 386 F.3d at 968.

After fully considering the parties' arguments and evidence, as well as the case law cited by each side, the Court concludes that Plaintiffs have adequately established

that their claims depend upon common contentions that are of such a nature that they are capable of classwide resolution, and that such issues predominate over individual inquiries.  After all, the proposed class members' claims arise from the same alleged course of conduct, and raise common issues of law and fact.  *See Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability."); *see also Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1033 (Cal. 2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."); *Lewis v. Alert Ambulette Serv. Corp.,* 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (commonality requirement satisfied where all potential class members were alleged to have been harmed by common practice of defendants' failure to adequately pay for overtime hours and legal theory set forth in complaint was common to all class members).

To the extent that the jury determines that Plaintiffs have failed to establish the existence of the alleged unlawful policies, then all of the class members' claims would fail in unison.  The complexity of proof is a problem that Plaintiffs will have to address in presenting their case on the merits, but it does not negate predominance of the existence of central, common issues that will drive the resolution of liability as to all Plaintiffs.  *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (finding question of whether defendant had unofficial policy or practice requiring employees class-wide to work off-the-clock overtime hours was capable of classwide resolution

because if the answer to the question was "no," then class members were left with nothing in common and each would have to prove his or her claim individually).  For these reasons the Court finds that proceeding as a class action is the superior method for adjudicating Plaintiffs' claims for the same reasons set forth above in Part II.B.3.

3.    <u>Typicality and Adequate Representation</u>

To establish Rule 23(a)(3) typicality, "[t]he positions of the class representatives need not be identical to those of the other class members, so long as there is a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class."  *Decoteau v. Raemisch*, 304 F.R.D. 683, 689 (D. Colo. 2014).  The relevant inquiry regarding typicality is "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13.

Moreover, Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010); *see also Dukes*, 564 U.S. at 349 n.5 (explaining that the adequacy of representation inquiry is distinct from questions of typicality and commonality insofar as it "raises concerns about the competency of class counsel and conflicts of interest").

Plaintiffs contend that "Plaintiffs McCarthy and Ponce's claims are based on the same injuries borne out of the class members' claims" and that there is no conflict of

interest between the Plaintiffs and the class.  (ECF No. 355 at 18–19.)  As such,

Plaintiffs argue that the Named Plaintiffs are adequate class representatives and that

the Court should appoint Nichols Kaster, PLLP as class counsel pursuant to Federal

Rule of Civil Procedure 23(g).  (*Id.* at 19.)

      KeyPoint responds that Plaintiffs McCarthy and Ponce are not typical of the

entire proposed class because they do not have arbitration agreements.  (ECF No. 358

at 16 n.19.)  According to KeyPoint, the proposed class definition is overly broad as it

does not carve out employees with arbitration agreements.  (*Id.*)

      The Court agrees with KeyPoint that the class definition proposed by Plaintiffs is

overly broad in light of the Court's previous ruling that only Plaintiffs who signed their

arbitration agreements on or after March 8, 2018 are exempt from the requirement that

they arbitrate their claims.  (*See* ECF No. 294.)  However, in the Court's view, a

modification of the class definition—rather than concluding that the Rule 23 class action

fails on typicality grounds—is the appropriate remedy.  As such, the Court will certify a

Rule 23 class action defined as follows:

> All persons who worked as, or who were hired to be, a Field
> Investigator, Background Investigator, or another position
> with similar job duties in the State of California for Defendant
> KeyPoint Government Solutions Inc. at any time from March
> 8, 2014 to present and has not signed an arbitration
> agreement prior to March 8, 2018.

      Clearly, this amended class definition will be included by Plaintiffs in all future

proposed notices to and communications with putative class members.

      Moreover, the Court notes that KeyPoint does not meaningfully dispute the

adequacy of the proposed Rule 23 class representatives or Plaintiffs' counsel being

named class counsel.  Being aware of no conflict of interest and in light of the vigorous

representation of their claims by the Plaintiffs McCarthy and Ponce and Plaintiffs'

counsel to date, the Court will appoint Plaintiffs McCarthy and Ponce as class

representatives and will appoint Nichols Kaster, PLLP as class counsel.

* * * *

For the reasons set forth above, the Court finds that certification of the Rule 23

class action is appropriate.

## IV. MOTION TO CLARIFY

Although styled as a request for clarification, the Motion to Clarify effectively

seeks reconsideration of the Court's February 4, 2021 Order.[2]  Thus, the Court will

construe the Motion to Clarify as a motion for clarification and, in the alternative, for

reconsideration.

### A.    Legal Standards

District courts have broad discretion to reconsider their interlocutory rulings

before entry of judgment.  *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir.

2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory

orders.").  Thus, a court can alter its interlocutory orders even where the more stringent

requirements applicable to a motion to alter or amend a final judgment under Federal

Rule of Civil Procedure 59(e) or a motion for relief from judgment brought pursuant to

Rule 60(b) are not satisfied.  *See Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken*

*Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018).

"Notwithstanding the district court's broad discretion to alter its interlocutory

---

[2] The Court presumes familiarity with the contents of the February 4, 2021 Order.  (ECF No. 294.)

orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'"   *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)).   "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."   *Id.*   Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence."   *Id.*

**B.   Analysis**

In the Motion to Clarify, KeyPoint seeks clarification of the February 4, 2021 Order as to whether: (1) the Court had denied arbitration as to individuals whose claims against KeyPoint arise under California law only (*i.e.*, individuals with no federal claims); and (2) individuals with federal and California state law claims may bring their federal claims as part of the now-closed FLSA collective action.   (ECF No. 301 at 1.)

The Court has carefully reviewed its February 4, 2021 Order and the factual findings, legal analyses, and conclusions contained therein.   Although the need for further "clarification" of the Order is questionable, given the contentious lawyering thus far in the case, and the straightforward answers to Plaintiffs' questions, the Court will clarify the Order as follows.

1.   <u>Whether Individuals With Only California State Law Claims May Be Compelled to Arbitration</u>

KeyPoint argues that "[t]he [February 4, 2021] Order leaves open significant questions regarding absent members of the putative Rule 23 class" as "[t]he Court did not delineate between individuals with both federal and state law claims (such as

Named Plaintiff Ponce) and individuals with only state law claims" and that "[i]t is not clear whether the Court intended to address arbitration as to putative members of the Rule 23 class who have already declined the opportunity to particulate in this action and therefore have no actionable federal claim." (ECF No. 301 at 3.) In other words, KeyPoint seeks clarification as to whether putative Rule 23 class members from California who chose *not* to opt into the FLSA collective must proceed to arbitration rather than being included as a member of the putative Rule 23 class action. (*See id.*)[3]

Plaintiffs respond that "[w]hether or not a putative Rule 23 class member had previously decided to join this FLSA collective action has no bearing on the Court's Order that a current or purported class member to the currently pending 'proceeding' meets the Pending Litigation Exception." (ECF No. 313 at 7.) According to Plaintiffs, "[a]bsent any statute of limitations issues, an individual (including a Non-Opt-in California Plaintiff) who chose not to opt into this proceeding during the FLSA notice period still has an FLSA claim against [KeyPoint]." (*Id.* at 5.) The Court agrees.

The Pending Litigation Exception to the relevant arbitration agreements provides that "this Agreement does not apply to any class, collective, or other representative

---

[3] The Court takes umbrage at KeyPoint's suggestion that it failed to address nuances that the parties did not clearly present to the Court through its briefing on the Motion to Compel. In its Motion to Compel, KeyPoint moved to "compel the individual arbitration of claims under California law asserted in Plaintiffs' Amended Complaint by *thirty-one opt-in plaintiffs* who worked for KeyPoint in California" on the basis that "[t]he Arbitration Agreement exception does not apply *to the thirty-one individuals* subject to this motion, as all signed an Arbitration Agreement prior to January 13th, and they therefore must bring claims against KeyPoint under California state law in arbitration." (ECF No. 278 at 1 (emphasis added).)

Although KeyPoint also made broad statements that the Court should "strike Plaintiffs' Rule 23 class allegations with respect to all individuals subject to an Arbitration Agreement" (*see id.* at 2), it did not adequately develop specific arguments regarding the potential Rule 23 class members who declined to opt-in to the FLSA collective action. At any rate, KeyPoint's failure to properly raise such matters is of no moment, as it does not alter the Court's interpretation of the Pending Exception Limitation or Plaintiffs' ability to bring their California state law claims as a Rule 23 class.

action *proceeding* that is currently pending and to which you are a current or purported

class member as of the day this Agreement is signed by Employee."  (ECF No. 258-3 §

2 (emphasis added).)  Regardless of whether potential Rule 23 class members

affirmatively chose to opt into the FLSA collective action, the Court concludes that the

Rule 23 class members were still purported members of the collective action as of

March 8, 2018—the day that Brayman initiated the lawsuit—because they had the

opportunity to opt into the FLSA collective action.  As such, the Court concludes that the

putative Rule 23 class members from California who chose not to opt into the FLSA

collective need not proceed to arbitration and shall be considered as a member of the

Rule 23 class unless they opt out of the class.

Accordingly, this portion of the Motion is granted to the extent KeyPoint seeks

clarification of the Court's February 4, 2021 Order on this issue and is denied to the

extent it seeks reconsideration of same.

2.   <u>Whether Rule 23 Class Members May Add Claims to the Now-Closed
FLSA Collective Action</u>

KeyPoint contends that "[i]f the Court finds this action 'pending' as to individuals

who previously declined to participate [in the FLSA collective action], such that they may

bring state law claims in this action, it is similarly unclear whether this effectively 're-

opens' the now-closed FLSA collective [action]."  (ECF No. 301 at 6.)

In response, Plaintiffs argue that "[n]owhere in the Court's [February 4, 2021]

Order does the Court state or imply that it will effectively provide another FLSA opt-in

period for Non-Opt-in California Plaintiffs to now join" and points out that Plaintiffs have

not sought to have another FLSA notice and opt-in period.  (ECF No. 313 at 8.)  The

Court agrees.

Nowhere in the February 4, 2021 Order does the Court suggest that it would permit—and indeed, Plaintiffs have not requested—a second FLSA notice and opt-in period.  As such, because the Court finds that there is not a substantive dispute regarding the February 4, 2021 Order that requires clarification on this issue,[4] this portion of the Motion is denied.

* * * *

Accordingly, for the reasons set forth above, KeyPoint's Motion to Clarify is granted in part as set forth above and is denied in all other respects.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    KeyPoint's Motion to Clarify the Court's Order Denying its Motion to Compel Arbitration (ECF No. 301) is GRANTED IN PART to the extent it seeks clarification of the Court's February 4, 2021 Order and DENIED in all other respects;

2.    KeyPoint's Amended Motion for Decertification (ECF No. 353) is DENIED;

3.    Plaintiffs' Amended Motion for Final Certification of the FLSA Collective (ECF No. 356) is GRANTED;

4.    The Court CERTIFIES a FLSA Collective Action class defined as follows:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or in other position with similar job duties, for Defendant KeyPoint Government Solutions, Inc. at any time from April 6, 2015 to September 18, 2019.

---

[4] To the extent that the parties dispute whether individuals who chose not to join the FLSA collective may still assert individual FLSA claims against KeyPoint in separate proceedings (*see* ECF Nos. 313 at 5–6; ECF No. 316 at 4), the Court need not analyze this issue as it is neither ripe for consideration nor relevant to *this* action.

5.    Plaintiffs' Amended Motion for Rule 23 Class Certification (ECF No. 355) is

      GRANTED;

6.    The Court CERTIFIES a Rule 23 Class with the following definition:

          All persons who worked as, or who were hired to be, a Field
          Investigator, Background Investigator, or another position
          with similar job duties in the State of California for Defendant
          KeyPoint Government Solutions Inc. at any time from March
          8, 2014 to present and has not signed an arbitration
          agreement prior to March 8, 2018.

7.    Plaintiffs Dana McCarthy and Adriana Ponce are hereby APPROVED as Rule 23

      class representatives;

8.    Pursuant to Federal Rule of Civil Procedure 23(g), the Court APPOINTS Nichols

      Kaster, PLLP as class counsel; and

9.    Plaintiffs shall file a revised proposed Rule 23 class notice on or before **April 22,**

      **2022**;

10.   On or before **April 29, 2022**, the parties shall confer and file a joint statement

      regarding a proposed schedule for dissemination of the notice of the Rule 23

      class in accordance with Federal Rule of Civil Procedure 23(c)(2).


      Dated this 31st day of March, 2022.

                                        BY THE COURT:


                                        _____
                                        William J. Martinez
                                        United States District Judge