IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0550-WJM-NRN

RACHEL BRAYMAN,
DANA McCARTHY, and
ADRIANA PONCE, individually and on behalf of
all other similarly situated individuals,

    Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC., a Delaware corporation,

    Defendant.

---

**ORDER GRANTING DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION OF CALIFORNIA STATE LAW CLAIMS AND STRIKE RELATED RULE 23 CLASS ACTION ALLEGATIONS**

---

    Plaintiffs Rachel Brayman, Dana McCarthy, and Adriana Ponce (collectively, "Plaintiffs") bring this action against Defendant KeyPoint Government Solutions, Inc. ("KeyPoint") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and violations of California law.  (ECF No. 271.)  Plaintiffs' FLSA and California law claims concern KeyPoint's alleged failure to properly compensate a certain class of employees known as "Investigators" for overtime hours worked, as well as other employment and wage violations.  (*Id.* ¶¶ 44–75.)

    This matter is before the Court on KeyPoint's Motion to Compel Arbitration of California State Law Claims and Strike Related Rule 23 Class Action Allegations ("Motion"), filed on July 23, 2020.  (ECF No. 278.)  The Court previously issued an Order denying the Motion (ECF No. 294), which the Tenth Circuit Court of Appeals

reversed on appeal. (ECF No. 403.) For the reasons explained below, the Motion is granted.

## I. BACKGROUND

The Court presumes familiarity with the exhaustive procedural history of this action. The Court will only outline the specific factual and procedural history relevant to resolving this Motion.

Brayman filed this lawsuit on March 8, 2018. (ECF No. 1.) The original complaint included a FLSA collective action claim against KeyPoint based on KeyPoint's failure to pay overtime wages. (*Id.* at 5–6.) The Court granted FLSA conditional collective action certification under 29 U.S.C. § 216(b) on November 1, 2018. (ECF No. 69 at 17.) As redefined by the Court on December 16, 2019, the FLSA collective action class is defined as:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or in other position with similar job duties, for Defendant KeyPoint Government Solutions, Inc. at any time from April 6, 2015 to September 18, 2019.

(ECF No. 217 at 10.)

On December 16, 2019, the Court issued an order analyzing the arbitration agreements signed by the FLSA opt-in plaintiffs. (ECF No. 217.) The Court concluded based on a plain reading of the arbitration agreements that the putative FLSA collective action members who worked as, or were hired to be Investigators as of March 8, 2018 (the day Brayman initiated the lawsuit) could not be forced to arbitrate their claims individually and could instead join the collective action. (*Id.* at 5–9.)

On August 9, 2020, Plaintiffs filed the First Amended Complaint, which, among

2

other things, added five causes of action arising under California statutes, regulations, and/or administrative orders: failure to pay overtime wages; failure to provide accurate itemized wage statements; failure to provide rest breaks and meal periods; failure to pay "final wages" to those who have left KeyPoint's employ; and unfair competition, by engaging in the acts and practices all of the previous claims.  (ECF No. 271 at 9–16.)  The First Amended Complaint also included a proposed Rule 23 class action, defined as:

> All persons who worked as, or who were hired to be, a Field Investigator, Background Investigator, or another position with similar job duties, in the State of California for Defendant KeyPoint Government Solutions, Inc., at any time within four (4) years prior to the filing of Plaintiff[s'] Complaint.

(*Id.* at 6.)

KeyPoint filed the Motion on July 23, 2020.  (ECF No. 278.)  In the Motion, KeyPoint contends that 31 individuals who fall within the definition of the proposed Rule 23 class (the "California Plaintiffs") signed arbitration agreements before Plaintiffs filed the First Amended Complaint and therefore must arbitrate any California state law claims.[1]  (ECF No. 278 at 3–4.)  Plaintiffs responded on August 13, 2020 (ECF No. 280), and KeyPoint replied on August 27, 2020 (ECF No. 281).

Two clauses in the arbitration agreements are relevant to the Motion.  One is the "Arbitrator Decides Clause," which provides that "the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement."

---

[1] The Court notes that some of the 31 individuals named in the Motion have already been dismissed from the lawsuit.  (*Compare* ECF No. 278 at 4 *with* ECF Nos. 149, 269, 273, 274, and 292.)

3

(ECF No. 258-3 § 1.)  The second relevant clause is the "Pending Litigation Exception," which provides that "this Agreement does not apply to any class, collective, or other representative action proceeding that is currently pending and to which you are a current or purported class member as of the day this Agreement is signed by Employee."  (*Id.* at § 2.)

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA permits a party to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id*. § 4.  The Supreme Court has interpreted the FAA as "manifest[ing] a 'liberal federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)).  "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Nonetheless, "[n]o party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."  *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016).

Determining "whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination."  *Granite Rock Co. v. Int'l Bhd.*

4

*of Teamsters*, 561 U.S. 287, 296 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations incorporated).

## III. ANALYSIS

KeyPoint argues: (1) a plain reading of the arbitration agreements requires the arbitrator to decide whether the California Plaintiffs' state law claims are subject to arbitration; and (2) even if the Court were to reach this question itself, the arbitration agreements require the California Plaintiffs to bring the California state law claims, added in the First Amended Complaint, against KeyPoint in arbitration.  (ECF No. 278 at 2.)

Invoking the Arbitrator Decides Clause, KeyPoint contends that the arbitrator has the exclusive authority to decide whether the Pending Litigation Exception applies to the California state law claims and the California Rule 23 class.  (ECF No. 278 at 9.)

The Court has previously addressed KeyPoint's argument that the Arbitrator Decides Clause requires the arbitrator to determine whether the California Plaintiffs' claims are subject to arbitration.  In its Order dated December 16, 2019, the Court determined the following:

> An agreement would need to highly specific and explicit to convince the Court that the parties intended either that (a) arbitration would be the necessary gateway to invoking the Pending Litigation Exception (effectively making the Exception a farce), or (b) an arbitrator will resolve the parties' disputes about the meaning of the Court's prior orders.  The arbitration agreement at issue here falls well short of that standard.

5

> . . .
>
> For these reasons, the Court rejects KeyPoint's claim that it is up to individual arbitrators to decide the applicability of the Pending Litigation Exception in these circumstances. As it must be, this is a decision for only this Court to make.

(ECF No. 217 at 5–6.) In its Order dated February 4, 2021, the Court ruled the Motion "does not require that the Court deviate from [that] holding." (ECF No. 294 at 6.)

The Tenth Circuit, however, was "not persuaded by the [Court's] conclusion . . . ." (ECF No. 403 at 16.) Instead, for reasons that need not be recapitulated in this Order, the Tenth Circuit ruled to the contrary: "The Arbitrator Decides Clause gives the arbitrator and not the courts the exclusive authority to resolve disputes about the applicability of the agreement, so the arbitrator and not the courts must decide whether the Pending Litigation Exception would apply to the challenged California Plaintiffs." (*Id.* at 19.) This unequivocal language leaves but one possible outcome. In conformity with the Tenth Circuit's decision, the Court concludes that it must compel the California Plaintiffs subject to arbitration agreements to arbitrate their claims in that forum.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that KeyPoint's Motion to Compel Arbitration of California State Law Claims and Strike Related Rule 23 Class Action Allegations (ECF No. 278) is GRANTED. The Court further ORDERS the 31 California Plaintiffs who signed arbitration agreements to arbitrate their claims, consistent with the Arbitrator Decides Clause. The Court further STRIKES all allegations in the Amended Complaint (ECF No. 271) relating to the 31 California Plaintiffs who signed arbitration agreements.

6

Dated this 12th day of April, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge